JASON D. GUINASSO, ESQ. (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
500 Damonte Ranch Parkway, Suite 980
Reno, NV 89521
Telephone: (775) 853-8746
Facsimile: (775) 201-9611
jguinasso@hutchlegal.com
*Attorney for Rebekah Charleston*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON;<br><br>              Plaintiff,<br><br>      vs.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA;<br><br>              Defendants. | Case No.:<br><br>Dept. No.:<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMES NOW**, Plaintiff Rebekah Charleston, by and through her undersigned counsel of record, and hereby requests an order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null and void as preempted by federal law; and, a preliminary and permanent injunction be issued prohibiting the State of Nevada and all of its political subdivisions from continuing to implement, enforce, or put into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8).

/ / /

/ / /

/ / /

## I.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to Title 28 U.S.C. § 1331(2018) and Title 28 U.S.C. § 1343(3) (2018) in that the controversy arises under the United States Constitution and under 42 U.S.C. § 1983 (2018) and 28 U.S.C. § 2201 (2018) and 28 U.S.C. § 2202 (2018). This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988 (2018).

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) (2018); as Plaintiff has operated in, the subject offenses took place in, and a substantial amount of the decisions that are the subject of this civil action were made in this judicial district.

3.      An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201, and this Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

## II.

## PARTIES

4.      Plaintiff is a resident of the State of Texas.  Plaintiff has been directly impacted and harmed by the deprivation and violation of her federal rights under the United States Constitution by the actions of the State of Nevada and its officials under the color of state law by enacting Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), codifying the language authorizing legalized prostitution in licensed brothels in counties with populations less than seven hundred thousand (700,000) within the State of Nevada.

5.      Defendant, State of Nevada (the "State"), organized and existing under, and by virtue of, the laws of the United States of America, has violated and continues to violate the United States Constitution by enacting Nev. Rev. Stat.  201.354(1) and Nev. Rev. Stat. 244.345(8), and by codifying the language authorizing legalized prostitution in licensed

brothels in counties with populations less than seven hundred thousand (700,000) within the State of Nevada.

6.      Defendant, Legislature of the State of Nevada, is the legislative authority of this State and has violated and continues to violate the United States Constitution by enacting Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) without regard to the harm inflicted on Plaintiff and others like Plaintiff who have been illegally trafficked to Nevada to engage in prostitution, and by codifying the language authorizing legalized prostitution in licensed brothels in counties with populations less than seven hundred thousand (700,000) within the State of Nevada.

7.      Defendant, Steve Sisolak is the Governor of the State of Nevada and is named in this lawsuit in his official capacity only.

### III.

### GENERAL ALLEGATIONS

**A. 18 U.S.C. 2422(a) Clearly and Unambiguously was Enacted to Prevent Persons from Persuading, Inducing, Enticing, and/or Coercing any Person to Travel Across State Lines to Engage in Prostitution.**

8.      On June 25, 1910, the 61st United States Congress passed H.R. 12315, also known as "The Mann Act" (the "Act") (codified as 18 U.S.C. § 2422(a) (2018)), which criminalized the interstate or foreign commerce transport "of any woman or girl for prostitution, debauchery, or for any other immoral purpose." The primary intent was to combat prostitution, immorality, and human trafficking for the purposes of prostitution in the United States.

/ / /

/ / /

9.      C.F.R 22 § 40.24(b) (2018) sets forth the meaning of Prostitution as "engaging in promiscuous sexual intercourse for hire."[1]

10.     The Mann Act was amended in 1978, extending coverage to prohibit transportation for immoral purposes from "any woman or girl" to "any individual" and increased the penalties specified in the Act.

11.     The Mann Act was again substantially amended November 7, 1986. In addition to deleting the terms "debauchery" and "other immoral purpose," the new language criminalized coercion and enticement to "travel in interstate or foreign commerce … to engage in prostitution" and removed the requirement for transport on an interstate common carrier. The intent of the Act, specifically to combat prostitution and human trafficking for the purposes of prostitution, remained unchanged.  The current version specifically provides:

> Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

U.S.C. 18 § 2422(a).

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 499, 110 S. Ct. 2510, 2512, 110 L. Ed. 2d 455 (1990). An example of the Court utilizing the C.F.R. meaning of  "reasonable" to define the statutory requirement for what constitutes "reasonable cost" to be paid to healthcare providers.

**B. 18 U.S.C. 1591 Clearly and Unambiguously Was Enacted to Prevent Persons From Causing any Person in the Jurisdiction of the United States From Recruiting, Enticing, Harboring, Transporting, Providing, Obtaining, Advertising, Maintaining, Patronizing, or Soliciting by any Means, a Person to Engage in a Commercial Sex Act.**

12.     On October 28, 2000, the 106th Congress passed H.R. 3244, also known as the "Victims of Trafficking and Violence Protection Act of 2000" (the "TVPA") (codified as 22 U.S.C. § 7101-7114 (2018)), which criminalized human trafficking and related offenses as federal crimes with severe penalties attached and established several methods to prosecute traffickers.

13.     U.S.C. 22 § 7102(4) sets forth the meaning of Commercial Sex Act as "any sex act on account of which anything of value is given to or received by any person."

14.     The issue of trafficking in persons included those trafficked into the commercial sex industry, modern day slavery, and forced labor.

**C. Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) Directly Conflict With the Intent of Federal Law Expressed in 18 U.S.C. 2422(A) and 18 U.S.C. 1591 and Otherwise Perpetuate the Harm Federal Law was Enacted to Redress and Prevent.**

15.     The reason for vesting the power to regulate commerce in Congress was to insure uniformity of regulation against conflicting and discriminating state legislation. Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 227, 20 S. Ct. 96, 101, 44 L. Ed. 136 (1899).

16.     "The purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth v. Levine, 129 S. Ct. 1187, 1194-1195 (2009) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

17.     The Congressional intent of the federal law as expressed through the enactment of 18 U.S.C. 2422(a) is clear, certain, and unambiguous, *to wit*, to prevent persons from

persuading, inducing, enticing, and/or coercing any person to travel across state lines to engage in prostitution

18.    The Congressional intent of the federal law as expressed through the enactment of 18 U.S.C. 1591 was to ensure just and effective punishment of traffickers and to protect their victims.

19.    Nevada is the only state in the Union which allows commercialized prostitution.

20.    The State of Nevada has allowed brothel operation since the nineteenth century; however, the first officially sanctioned brothel was not in operation until 1971 when the Storey County Commission licensed the Mustang Ranch Brothel.

21.    Thereafter, the Nevada Legislature passed Assembly Bill 550, (Nev. Rev. Stat. 201.354(1)), authorizing prostitution or solicitation for prostitution in Nevada in designated brothels licensed by a county. State law presently allows counties of less than seven hundred thousand (700,000) residents to issue such licenses. Nev. Rev. Stat. 244.345(8).

22.    There are currently twenty-one (21) operational brothels, located throughout seven (7) Nevada counties (Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine).

23.    The State's creation of an intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), are in violation of and direct conflict with U.S.C. 18 § 2422(a) (2018). Wickard v. Filburn, 317 U.S. 111, 125, 63 S. Ct. 82, 89, 87 L. Ed. 122 (1942) (holding that Congress's power to regulate "commerce" extends to intrastate activities that have an "indirect effect" on trade, viz., home-grown wheat).

24.    Under the cover of Nevada law legalizing prostitution, brothels, brothel owners and operators, and the women bought and sold in brothels for sex, actively and intentionally

persuade, induce, entice, and coerce men and women to travel in interstate commerce to engage in prostitution by advertising and marketing brothels and the sale of people for sex to individuals outside the State of Nevada through hundreds of websites, social media accounts, and other mass media. **See Exhibit 1 at 0001-0102, (Examples of Advertising and Marketing)**. **See also** Exhibit 2 at 0103-0106, **(Harrison Jacobs,** *The owner of America's most famous brothel explains how he promotes a business that's illegal to advertise,* BUSINESS INSIDER **(Oct. 15, 2015, 6:28p.m.)**, https://www.businessinsider.com/dennis-hof-explains-how-he-promotes-a-business-that-is-illegal-to-advertise-2015-10.)[2]

25.  One former brothel owner explained to the "Business Insider" in detail how he promoted his brothel business nationally and internationally. Jacobs, *supra*.

26.  Clearly, based on the marketing, advertising and brothel owner's own admissions, participants in Nevada's legal brothel industry are, "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] … individual[s] to travel in interstate or foreign commerce… to engage in prostitution," in violation of federal law.

27.  Moreover, multiple brothel owners have brazenly spoken publicly of their efforts to recruit young adult virgins from across all states and/or countries to auction their virginities at their brothels. **See Exhibit 3 at 0107-0110, (Amy B. Wang,** *'It's My Decision': This Woman is Auctioning Off Her Virginity to Help Her Family,* THE WASHINGTON POST **(October 25, 2016),** https://www.washingtonpost.com/news/wonk/wp/2016/10/25/its-my-decision-this-woman-is-auctioning-off-her-virginity-to-help-her-family/?utm_term=.fc178e4 8287c.

28.  Brothel owners and operators in Nevada regularly and with impunity violate

---

[2] Many individuals sold for sex who are based in Nevada travel. Nearly fourteen percent (14%) of individuals who are sold for sex in Nevada have a home base within the State but advertise across multiple cities or other states. **See Exhibit 7 at Page 9, ¶ 3.**

federal law. For example, one brothel owner and manager would send prostituted women out-of-state to California, Illinois, Georgia, and South Carolina to see established sex buyers whose credit cards were processed at the brothels during the time the women were provisioned, though the sex acts occurred, and the buyers were out-of-state. The prostituted women were placed on airplanes to provision sex acts in the state and city where the out-of-state sex buyer was located. **See Exhibit 4 at 0111-0114, (Affidavit of Jane Doe Victim 1).**

29.     As another example, while traveling internationally to Puerto Rico and Ireland, one brothel owner would recruit women and conduct interviews for women he sought to recruit to his brothel. *Id.*

30.     Women at the other brothels were transported by brothel drivers to Lake Tahoe where they would cross into California where they were purchased for sex. When the brothel owner became aware of an investigation, drivers were instructed to drop the women off at the state border between Nevada and California and then the women would have to walk over the state line into California and get into a taxi to reach their destinations. *Id.*

31.     While pimped at a Nevada brothel, Deanne Salinger (a woman commonly referred to as "AirForce Amy") travelled with a sex buyer to Hawaii and to Mexico from Nevada to engage in prostitution. *Id.*

32.     As another example, The Moonlight Bunny Ranch brothel advertised a College Loan Match Funds Repayment Program "to recruit and entice more educated," "wholesome-looking" women to engage in prostitution at the brothel. Under this "program," the brothel management promised to match each dollar expended by the women towards repayment of student loans. This advertisement was specifically used to lure women from across the United States to engage in prostitution in the State of Nevada. *Id.*

33.     Men from other states and countries are often induced and enticed to travel across state lines to the State of Nevada to engage in prostitution through various marketing

campaigns like the "Get Your Grandpa Laid" contest hosted in conjunction with the nationally syndicated Howard Stern Radio Show. **See** Exhibit 5 at 0115-0116, (*Media Ramsey- Howard Stern Show- Get Grandpa Laid Contest 10/23/13* YOUTUBE **(October 23, 2013)**, https://www.youtube.com/watch?v=8sv3n2kBsuw**.**

34.    Brothels in Nevada would not likely be financially viable without the revenue generated by the efforts of brothel owners, operators and the women being bought and sold to persuade, induce, entice, or coerce individuals to travel in interstate or foreign commerce to engage in prostitution.

**C.    There is A Positive Correlation Between Legal Prostitution and Illegal Sex Trafficking Through Interstate and Foreign Commerce.**

35.    Legal prostitution and sex trafficking are inextricably linked in Nevada as elsewhere in the world where prostitution is legal.  Sex trafficking happens when and where there is a demand for prostitution. **See   Exhibit 6 at 0117-0165 (Seo-Young Cho, Axel Dreher, & Eric Neumeyer,** *Does Legalized Prostitution Increase Human Trafficking?***, WORLD DEVELOPMENT, at pg. 41, 67-82 (2012),** https://eprints.lse.ac.uk/45198/1/Neumayer     _Legalized_Prostitution_Increase_2012.pdf); **See** *also* **Exhibit 7 at 0166-0188 (Crysta N. Price, Terry D. Clark, & Julie Faller,** *Nevada's Online Commercial Sex Market***, HUMAN TRAFFICKING INITIATIVE, CREIGHTON UNIVERSITY (2017),** https://awakenreno.org/wp-content/uploads/2018/05/FINAL_Nevada_March2018.pdf;) **See** *also* **Exhibit 8 at 0189-0196 (Melissa Farley,** *Trafficking for Prostitution: Making the Connections***, AMERICAN PSYCHOLOGICAL ASSOCIATION (2007).**

36.    On average, in jurisdictions with legal prostitution, there is a statistically significant larger reported incidence of illegal sex trafficking. *Id*.   This circumstance is the result of the increased demand created by the legal sex market.  As one expert put it, "wherever

prostitution is legalized, trafficking to sex industry marketplaces in that region increases." Cho, *supra* at **pg. 3 ¶2.**

37.     The U.S. State Department has explained it is the official U.S. Government position that, "prostitution is inherently harmful and dehumanizing and fuels trafficking in persons." <u>See</u> **Exhibit 9 at 0197-0198 (U.S. DEPARTMENT OF STATE, TRAFFICKING IN PERSONS REPORT at pg. 27 (2007)).**

38.     In 2002, the President of the United States issued a National Security Directive declaring, "The United States Government opposes prostitution and any related activities, including pimping, pandering, or maintaining brothels," because these activities contribute to human trafficking.[3]

39.     The U.S. Justice Department has also named Las Vegas among the 17 most likely destinations for human trafficking.[4]

40.     The links between legal and illegal prostitution in Nevada and the profound harms caused by prostitution to all women are like those in other countries where legal prostitution exists such as the Netherlands and Australia. Wherever legal prostitution exists, sex trafficking increases. Farley, *supra* at **page 3, ¶2-3.**

41.     There is more online advertising for the sex trade in Nevada than in any other state.[5]

---

[3] National Security Presidential Directive – 22 (December 16, 2002).

[4] Sam Skolnik, *Do we have a human trafficking problem?,* LAS VEGAS SUN, (January 29, 2007).

[5] Melissa Farley, PROSTITUTION AND TRAFFICKING IN NEVADA: MAKING THE CONNECTIONS (Prostitution Research & Education, 2007).

42.     Nevada's illegal sex trade is estimated to be twice as large as other states.[6]

43.     According to a Creighton University Study of Nevada's on-line commercial sex market published in May of 2018, adjusted for population, Nevada's commercial sex market is by far the largest of any state.  **See Exhibit 7 at Page 6, ¶ 1**  This circumstance is a direct result of the legal system used to induce, persuade and entice individuals to enter into interstate and foreign commerce to engage in prostitution.

44.     At least five thousand sixteen (5,016) individuals are sold for sex in an average month in Nevada.   Nevada's number of prostituted persons per capita is sixty-three percent (63%) higher than the next highest state of New York and more than twice as many per capita as in California. **See Exhibit 7 at Page 5, ¶ 2**.

45.     Legalized prostitution appears to have done nothing to stem victimization within the illicit sex trade—the data shows that prostituted persons in the illegal trade around licensed brothels are at a similar risk of having been trafficked as those in areas without legal brothels. **See Exhibit 7 Page 21, ¶4.**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] *Id.*

46.     Prostitution is modern day slavery.[7]  Like those subjected to slavery, the prostituted are subject to domination and to the arbitrary will of another person.   A woman in a Nevada legal brothel explained, "No one really enjoys being sold. It's like you sign a contract to be raped." <u>See</u> **Exhibit 10 at 0199-0211 (Melissa Farley,** ***Risks of Prostitution: When the Person Is the Product*** **3 Journal of the Association for Consumer Research (2017)),** https://www.journals.uchicago.edu/doi/full/10.1086/695670   citing (Farley 2007b, 34).

47.     Prostitution is inherently an act of sexual coercion, is a form of sexual violence and is integrally connected to sex trafficking, drug abuse, brutality, rape, and murder.

48.     Prostitution and sex trafficking are closely linked. There is no demand for sexually trafficked persons per se.[8]  Rather, it is the prostitution industry by which sexually trafficked persons are exploited. <u>See</u> 22 U.S.C.A. § 7101, (Purpose and Findings" of the

---

[7] U.S. Department of State, *What is Modern Slavery?,*  https://www.state.gov/j/tip/what/. The federal government explained:

> When an adult engages in a commercial sex act, such as prostitution, as the result of force, threats of force, fraud, coercion or any combination of such means, that person is a victim of trafficking. Under such circumstances, perpetrators involved in recruiting, harboring, enticing, transporting, providing, obtaining, patronizing, soliciting, or maintaining a person for that purpose are guilty of sex trafficking of an adult. Sex trafficking also may occur through a specific form of coercion whereby individuals are compelled to continue in prostitution through the use of unlawful "debt," purportedly incurred through their transportation, recruitment, or even their "sale"—which exploiters insist they must pay off before they can be free. Even if an adult initially consents to participate in prostitution it is irrelevant: if an adult, after consenting, is subsequently held in service through psychological manipulation or physical force, he or she is a trafficking victim and should receive benefits outlined in the Palermo Protocol and applicable domestic laws.

[8] Dorchen A. Leighholdt, *Prostitution and Trafficking in Women: An Intimate Relationship*, 2 JOURNAL OF TRAUMA PRACTICE 167, 167-168 (2003).

Trafficking Victims Protection Act) ("Many of these persons [sex trafficking victims] are trafficked into the international sex trade, often by force, fraud, or coercion. The sex industry has rapidly expanded over the past several decades. It involves sexual exploitation of persons, predominantly women and girls, involving activities related to prostitution…."). In fact, prostitution often satisfies the elements of trafficking.[9].

49.     Moreover, in most cases, the very act of prostitution should be considered sex trafficking since the exchange of money (or something of value) to obtain a sex act is an act of sexual coercion.[10]

/ / /

/ / /

/ / /

_____

[9] U.N. ESCOR, COMM'N ON HUMAN RIGHTS *Integration of the Human Rights of Women and a Gender Perspective, Report of the Special Rapporteur on the Human Rights Aspects of the Victims of Trafficking in Persons, Especially Women and Children*, ¶ 42 U.N. Doc. E/CN.4/2006/62 (Feb. 20, 2006) (Sigma Huda) ("For the most part, prostitution, as actually practiced in the world, usually does satisfy the elements of trafficking.")

[10] Melissa Farley, *Prostitution is Sexual Violence*, PSYCHIATRIC TIMES (October 1, 2004), http://www.psychiatrictimes .com/ sexual-offenses/prostitution-sexual-violence; Melissa Farley, Very Inconvenient Truths: Sex Buyers, Sexual Coercion, and Prostitution-Harm-Denial, THE HAMPTON INSTITUTE (February 26, 2016), http://www.hamptoninstitution.org/ capitalism-coercion-and-prostitution.html#.WBCyzJMrIRE; and Yael Mellul & Lise Bouvet, *Why France Is Adopting A New Law That Criminalizes The Clients, Not Prostitutes*, HUFF POST (April 7, 2016), http://www.huffingtonpost.com/yaelmellul/why-france-is-adopting-a-_b_9635988.html.  "In these transactions, the money coerces the sex rather than guaranteeing consent to it, making prostitution a practice of serial rape."

50.     According to a 2002 research study[11] of prostituted women in Chicago, nearly all prostituted persons studied had been "victimized by physical assaults". Raphael & Shapiro, *supra* at 18 (showing a table of "12 specific acts of violence [that] are those most frequently experienced by the respondents") ("in escort services, half of the women had ever been raped, and they were also subjected to other forms of violence, including slapping and being grabbed … Even women engaging in prostitution in their own residences – women many view as being in control – reported frequent violence, including 21% having been raped 10 or more times."). This level of violence, especially from the hands of sex buyers, speaks to the inherent danger of being a prostitute, with the most violent aspect of the job being the job itself, interacting with the customer.

51.     Survivors have described their experiences of prostitution as "paid rape," "pay-as-you-go rape," and "being raped for a living."[12] "Indeed, rape is the defining experience of prostitution: the fear of it, the daily hypervigilance required to prevent it, the crushing physical and psychological trauma experienced by victims when it inevitably occurs."[13]

/ / /

/ / /

/ / /

/ / /

---

[11] Raphael, Jody & Deborah L Shapiro, SISTERS SPEAK OUT: THE LIVES AND NEEDS OF PROSTITUTED WOMEN IN CHICAGO 13 (2002).

[12] Rachel Moran, PAID FOR: MY JOURNEY THROUGH PROSTITUTION 112-113 (2013).

[13] Lisa Thompson, PROSTITUTED AND SEXUALLY TRAFFICKED PERSONS ARE RAPE VICTIMS, TOO (2016), HTTPS://WWW.SANE-SART.COM/PROSTITUTED-AND-SEXUALLY-TRAFFICKED-PERSONS-ARE-RAPE-VICTIMS-TOO/.

52.     Nevada's legal brothels are estimated to generate more than seventy-five million dollars ($75,000,000) per year, while Las Vegas's illegal prostitution market is estimated to gross over five billion dollars ($5,000,000,000) per year. **See Exhibit 11 at 0212-0217, (Ronald B. Flowers, Prostitution in the Digital Age: Selling Sex from the Suite to the Street? at pg. 42-46 (Praeger 2011))**.

53.     Since the legalization of prostitution has been associated with increased sex trafficking, the most vulnerable people in the brothel industry are at increased risk for harm.

54.     Decriminalization of prostitution does not prevent the violence and rape in prostitution, it assents to it. The State has an important government interest in preventing such violence; thus, it has an important government interest in preventing prostitution.

55.     More than thirteen percent (13%) of Nevada prostituted persons are advertised under the age of twenty-one (21).  **See Exhibit 7 at Page 13, ¶ 1**.

56.     More than one (1) out of every ten (10) prostituted persons in Nevada is too young to buy alcohol. These young individuals are almost twice as likely to travel in interstate and foreign commerce while being prostituted compared to those who are twenty-one (21) and older.  **See Exhibit 7 at Page 13, ¶ 2**.

57.     Many prostituted persons are advertised for their youth, regardless of their stated age. For example, phrases like "fresh meat," "brand new," and "daddy's little girl" are all used to connote the youth of prostituted persons. **See Exhibit 7 at Page 13, ¶ 3**.

58.     Youth is an important characteristic sought by sex buyers in Nevada. **See Exhibit 7 at Page 16, ¶ 1**.

59.     Evidence of the importance of youth to sex buyers in Nevada comes from the advertised prices of young prostituted persons. The data shows higher prices are charged for younger females in Nevada.  **See Exhibit 7 at Page 16, Graph 1**.

60.     The data put Nevada in the top ten (10) states in the country in terms of youth

of prostituted persons.  **See Exhibit 7 at Page 13, ¶ 4.**

61.    Thirty percent (30%) of individuals sold for sex in Nevada are based in other states, and another fourteen percent (14%) travel within the State. **See Exhibit 7 at Page 9, ¶ 2.**  Moreover, many of the women prostituted in Nevada brothels are not full-time residents of Nevada, which means that they are being transported in interstate or foreign commerce to Nevada to be bought and sold for sex in the brothels.  Many women prostituted in Nevada brothels travel from out-of-state and are bought and sold for sex in the brothels for short periods of time and then return to their domicile state or country.

62.    For example, in an interview with one media outlet one woman prostituted in a Nevada brothel admitted to residing in another state in the Midwest and commuting to Nevada. In the interview, the woman also admitted that men who pay to have sex with her live in other states and travel in interstate commerce to solicit prostitution.  **See Exhibit 12 at 0218-0227b** (**Alice Little,** ***A Week as a Legal Sex Working in Mound House, NV, on a $267,000 Salary*** **REFINERY 29 (Nov. 13, 2017, 1:40pm),** https://www.refinery29.com/money-diary-nevada-legal-sex-worker-salary; ***TMZ.com,*** ***Robert Kraft Courted By Nevada Prostitutes… It's Legal Here!!! (Feb. 23, 2019, 12:40am)*** https://www.tmz.com/2019/02/23/legal-prostitutes-robert-kraft-sheris-ranch-brothel/ ).

63.    Many of women prostituted in Nevada brothels are controlled by outside pimps: "Despite the fiction that they are "independent contractors," most so-called legal prostitutes have pimps — the state-sanctioned pimps who run the brothels and, in many cases, a second pimp who controls all other aspects of their lives (and takes the bulk of their legal earnings)."[14]  One federal court acknowledged this problem recently citing a study that found that pimps remained common and some assaults against prostituted women occurred within

[14] Herbert, Bob (2007-09-11). "Fantasies, Well Meant". The New York Times.

1  Nevada's legal brothels.   <u>Coyote Publishing, Inc. v. Miller</u>, 598 F. 3d 592, 596 fn2 (2010).

64.      Connections in the Reno/Tahoe area and between Las Vegas and southern California are regional hubs and stand out as particularly important travel routes for those entering and exiting interstate commerce to Nevada to engage in prostitution. **<u>See</u> Exhibit 7 at Page 21, ¶ 2.**

65.      California is by far the most important source of women who are being prostituted in Nevada from another state. Nearly fifty-five percent (55%) of prostituted women come from California, whereas Arizona, as the next most important source, supplies only about five percent (5%).  Over the course of a year, women who are being prostituted in Nevada come from every state in the Union and the District of Columbia. **<u>See</u> Exhibit 7 at Page 9, ¶ 2.**

66.      On October 3, 2018, the Lyon County Sheriff's Office conducted a series of brothel work card compliance checks, assisted by U.S. Immigration and Customs Enforcement officers, following a four (4) month internal audit of the inadequate prostitute registration practices executed by Lyon County staff. **<u>See</u> Exhibit 13 at 0228-0236, (LYON COUNTY SHERIFF'S OFFICE, INTERNAL AUDIT REPORT ON BROTHEL COMPLIANCE REQUIREMENTS (2018) ,** <u>http://media.graytvinc.com/documents/LCSO+Internal+Audit+Report+Brothels.pdf</u>).

67.      The subject inadequate practices include: US immigration law violations, foreign country human trafficking indicators, fraudulent statements, issuance of work cards prior to completing criminal history background checks, and inability to validate out-of-state, U.S., and other foreign national documents to determine identity.

68.      In a statement following the investigations, Sheriff Al McNeil of the Lyon County Sheriff's Office noted, "the discovery of U.S. immigration law violations in our legal brothel system is extremely alarming. The ability to coerce, exploit, and traffic non-U.S.

citizens into Lyon County by foreign criminal enterprises is going to be difficult to detect and deter by our limited capabilities and resources of foreign born applicants."

69.     An audit of the Applications for Brothel Work Permits of Lyon County, NV, discovered that one hundred sixty-eight (168) out of two hundred forty-one (241) applicants for prostitute work cards reside in a state other than Nevada and must travel in interstate commerce, from their state of residence to Nevada, to engage in prostitution at the brothels. *Id.*

70.     Thirty-seven (37) of the women registered for prostitute work cards from Lyon County in 2017-2018 alone have traveled in foreign commerce, from their international permanent residence to Nevada, to engage in prostitution at the brothels. *Id.*

71.     The United Nations Office on Drugs and Crime released a document on Human Trafficking Indicators that lists thirty-six (36) general indicators and twelve (12) sexual exploitation indicators. **See Exhibit 14 0237-0239, (UNITED NATIONS OFFICE ON DRUGS AND CRIME, HUMAN TRAFFICKING INDICATORS),** https://www.unodc.org /pdf/HT_indicators_E_LOWRES.pdf). According to the Lyon County Sheriff's report, many of these indicators were observed during this audit and, therefore, require further investigation. *Id.*

72.     The federal government acknowledges the link between prostitution and trafficking in women and children, as a form of modern day slavery. **See Exhibit 15 at 0240-0241, (U.S. DEPARTMENT OF STATE, THE LINK BETWEEN PROSTITUTION AND SEX TRAFFICKING (November 24, 2004),** https://2001-2009.state.gov/r/pa/ei/rls/38790.htm).

73.     The women who have been trafficked through Nevada's legal brothel market have been subject to the deprivation of rights, privileges, and immunities secured by the Constitution and Plaintiff hereby submits this action pursuant to 42 U.S.C. § 1983.

/ / /

**D.      Plaintiff Rebekah Charleston Was a Victim of Sex Trafficking and Was Forced to Travel Within Nevada and In Interstate Commerce Across State Lines to Engage in Prostitution at Nevada Brothels, Under the Guise of Being a "Willing" Prostitute**.

74.      Plaintiff Rebekah Charleston has been directly harmed as a result of Nevada's statute allowing counties of less than seven hundred thousand (700,000) people to license brothels and regulate prostitution.

75.      Plaintiff was born in Texas. After living on the streets homeless as a runaway, she found solace in the arms of a person who seemed to be a nice older boyfriend. However, soon after, Plaintiff realized the true intentions this boyfriend had for her, which was to abuse and sexually exploit her. Soon thereafter, he trafficked Plaintiff for purposes of commercial sexual exploitation. A short time later, Plaintiff was traded to another trafficker who would violently abuse her while sexually exploiting her all across the country.

76.      One of the first stops Plaintiff's sex trafficker made was to the State of Nevada, where her trafficker forced her to "get a job" at The Moonlight Bunny Ranch brothel.

77.      Plaintiff's sex trafficker would send Plaintiff and others similarly situated to perform prostitution in the Nevada brothels as a form of punishment.

78.      Plaintiff was not permitted to turn down a sex buyer. None of the acts in which she engaged being consensual, she was a victim of serial rape for profit.

79.      The violence Plaintiff was subjected to at the hands of men who bought her was severe and dehumanizing. Plaintiff was violently raped and assaulted numerous times.

80.      Plaintiff was not permitted to come and go as she pleased.

81.      Plaintiff witnessed countless other women who, like her, were being trafficked inside Nevada's legal brothels.

82.      Plaintiff was sexually trafficked at the brothel until her trafficker decided to move her to Las Vegas for greater profits in the illegal sex trade.

83.     Las Vegas is a well-known destination for people who are in the market to buy women for sex. The advertising and marketing from legal brothels in places like Nye County and Lyon County persuade, induce and entice people to travel in from across the country and all over the world to purchase prostituted persons in Nevada.

84.     Plaintiff was sexually trafficked for more than ten (10) years before she finally escaped when federal authorities became involved.

85.     Nevada was a regular location for Plaintiff to be sex trafficked. No matter where else her traffickers would take her, they would always return to Nevada to sell Plaintiff and others similarly situated to her because Nevada is the state where there was and is the greatest demand for prostitution whether legal or illegal.

**IV.**

**FIRST CAUSE OF ACTION**

**Violation of Civil Rights: 42 U.S.C. § 1983, Fourteenth Amendment**

**State Created Danger**

86.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

87.     By disregarding federal law, the acts of Defendants, including, but not limited to, authorizing a legalized commercial prostitution market to operate in the State, have created the danger that has led to irreparable harm to Plaintiff and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without protections from the inherent dangers the federal law was enacted to prevent.

88.     As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff has suffered and continues to suffer actual, continual, and potential injury to her health and safety.

/ / /

**<u>SECOND CAUSE OF ACTION</u>**

**Violation of Civil Rights: 42 U.S.C. § 1983, Fourteenth Amendment**

**Deprivation of Federal Rights**

89.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

Section 1983 of 42 U.S.C. provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

90.     As a direct result of Nevada State officials and lawmakers disregarding United States Code, the Plaintiff and similarly situated Jane Doe victims who have been prostituted in the State of Nevada from out-of-state, have been deprived of their federal rights which have been provided to them under the Mann Act (U.S.C. 18 § 2422(a)) and the TVPA (22 U.S.C. § 7101-7114).   The federal law is clear on its face in prohibiting traveling in interstate and foreign commerce to engage in the act of prostitution or human trafficking.  Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat.  244.345(8) unconstitutionally conflict with federal law and create an impermissible legal environment where brothels, brothel owners and operators, and women being bought and sold in brothels encourage, persuade and entice individuals into interstate and foreign commerce to engage in prostitution.

91.     The continued enactment of Nev. Rev. Stat.  201.354(1) and Nev. Rev. Stat. 244.345(8) and each and every county ordinance enacted under these statutes is unconstitutional.

92.     By enacting Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), Nevada has created and nurtured an industry that directly violates the Mann Act, and therefore,

the State of Nevada is the proximate cause of the continued frequent acts of the brothel owners,

and the women sold in the brothels who knowingly persuade, induce, entice, or coerce men

and women to travel in interstate or foreign commerce, or in any Territory or Possession of

the United States, to engage in prostitution and at times, human trafficking.

### THIRD CAUSE OF ACTION

**Declaratory/Injunctive Relief –**

**Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8)**

**Are Preempted by Both The Mann Act (U.S.C. 18 § 2422(a))**

**and the TVPA (22 U.S.C. § 7101-7114) and are in Violation of**

**The Supremacy Clause of The U.S. Constitution**

93.    Plaintiff realleges and incorporates by reference all prior and subsequent

paragraphs as if fully incorporated herein.

94.    On June 25, 1910, the 61st United States Congress passed H.R. 12315, also

known as "The Mann Act" (the "Act") (codified as 18 U.S.C. § 2422(a) (2018)), which

criminalized the interstate or foreign commerce transport of "any woman or girl for

prostitution, debauchery, or for any other immoral purpose."

95.    C.F.R. 22 § 40.24(b) sets forth the meaning of Prostitution as "engaging in

promiscuous sexual intercourse for hire."  The Mann Act specifically provides:

> Whoever knowingly persuades, induces, entices, or coerces any
> individual to travel in interstate or foreign commerce, or in any
> Territory or Possession of the United States, to engage in
> prostitution, or in any sexual activity for which any person can be
> charged with a criminal offense, or attempts to do so, shall be fined
> under this title or imprisoned not more than 20 years, or both.

U.S.C. 18 § 2422(a).

96.    The Congressional intent of the federal law as expressed through the enactment

of 18 U.S.C. 2422(a) is clear, certain, and unambiguous, *to wit*, to prevent persons from

persuading, inducing, enticing, and/or coercing any person to travel across state lines to engage in prostitution.

97.     On October 28, 2000, the 106th Congress passed H.R. 3244, also known as the "Victims of Trafficking and Violence Protection Act of 2000" (the "TVPA") (codified as 22 U.S.C. § 7101-7114), which criminalized human trafficking and related offenses as federal crimes with severe penalties attached and established several methods to prosecute traffickers.

98.     U.S.C. 22 § 7102(4) sets forth the meaning of Commercial Sex Act as "any sex act on account of which anything of value is given to or received by any person."

99.     The Congressional intent of the federal law as expressed through the enactment of 18 U.S.C. 1591 was to ensure just and effective punishment of traffickers and to protect their victims.

100.     There are three ways in which federal law will preempt state law: (1) Congress explicitly defines the extent to which its enactment preempts state law, or "express" preemption; (2) state law regulates conduct in a field that Congress intended federal government to occupy exclusively, or "field" preemption; and (3) state law actually conflicts with federal law, or "conflict" preemption. Motus v. Pfizer, Inc. 127 F. Supp.2d 1085, 1091 (Ca. C.D. 2000). Here, Nevada law is preempted by way of "conflict" with Federal law.

101.     Nevada's intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) are in direct conflict with and violation of U.S.C. 18 § 2422(a) and 22 U.S.C. § 7101-7114.

102.     By disregarding federal law, the acts of Defendants, including, but not limited to authorizing a legalized commercial prostitution market to operate in the State, have created the danger that has led to irreparable harm to Plaintiff and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without protections from the

inherent dangers the federal law was enacted to prevent.

103.    Because the brothel industry in Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to commit acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted and in violation of the Supremacy Clause of the U.S. Constitution.

**V.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    For an Order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null and void as preempted by federal law;

B.    A preliminary and permanent injunction be issued prohibiting the State of Nevada and all of its political subdivisions from implementing, enforcing, or putting into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8);

C.    For an order requiring that: 1) the State allocate funds in an amount not less than Two Million Dollars ($2,000,000) per year to the State Contingency Account specifically for people seeking to exit the sex trade ("Nevada Sex Trade Exit Fund") and receive services such as mental health services, rent assistant, job training, scholarships, funding for childcare, medical treatments, tattoo removal, etc. 2) The Nevada Sex Trade Exit Fund require that all recipients of money from The Nevada Sex Trade Exit Fund provide proof of having been prostituted in Nevada through Nevada's legal brothels as a result of the enactment of Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345-(8); 3) Any person  who was ever in brothel ownership or brothel management is ineligible to receive funding from the Nevada Sex Trade Exit Fund; and 4)  The Nevada Sex Trade Exit Fund remain funded and running for ten (10)

years from the date Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) is declared null and void.

D.    For an award of reasonable attorneys' fees, costs, and litigation expenses plus interest accruing thereon, in their favor at the maximum rate allowed by law; and

E.    For such other relief as the Court or jury may deem just or equitable.

DATED this 25th  day of February, 2019.      HUTCHISON & STEFFEN, PLLC


By: /s/ *Jason D. Guinasso*
JASON D. GUINASSO, ESQ. (SBN# 8478)
*Attorney for Rebekah Charleston*

__VERIFICATION__

STATE OF *Texas* )

*Tarrant County* ) ss.

    I, Rebekah Charleston, being first duly sworn, under penalty of perjury, do hereby depose and say:

    I am the Plaintiff in this action and I have read the foregoing Complaint, know the contents of the Complaint and the matters stated therein are true of my own knowledge, except for those matters stated on information and belief, and, as to those matters, I believe them to be true.

DATED:  This 20th day of February, 2019.    _R. K. Charleston_

                                      Rebekah Charleston

SUBSCRIBED and SWORN to before me this 20 day of February, 2019.

_____
NOTARY PUBLIC

CHARLES CLEMONS
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-08-20
Notary ID # 1173647-3

**List of Exhibits**
**See Appendix to Plaintiff's Complaint for Declaratory and Injunctive Relief**

| Description | Vol No. | Page Nos. |
|---|---|---|
| Exhibit 1 - Examples of Advertising and Marketing | I | 0001-0102 |
| Exhibit 2 - Harrison Jacobs, The owner of America's most famous brothel explains how he promotes a business that's illegal to advertise, Business Insider (2015) | I | 0103-0106 |
| Exhibit 3 - Amy B. Wang, 'It's my decision': This woman is auctioning off her virginity to help her family, The Washington Post (2016) | I | 0107-0110 |
| Exhibit 4 - Affidavit of Jane Doe Victim 1 | I | 0111-0114 |
| Exhibit 5 - YouTube link of Howard Stern "Get My Grandpa Laid Contest" | I | 0115-0116 |
| Exhibit 6 - Seo-Young Cho, Axel Dreher & Eric Neumayer, *Does Legalized Prostitution Increase Human Trafficking?,* WORLD DEVELOPMENT (2012) | I | 0117-0165 |
| Exhibit 7 - Crysta N. Price, Terry D. Clark, & Julie Faller, Nevada's Online Commercial Sex Market, Human Trafficking Initiative, Creighton University (2017)) | I | 0166-0188 |
| Exhibit 8 - Melissa Farley, Trafficking for Prostitution: Making the Connections American Psychological Association (2007) | I | 0189-0196 |
| Exhibit 9 - U.S. DEPARTMENT OF STATE, TRAFFICKING IN PERSONS REPORT AT PG. 27 (2007) | I | 0197-0198 |
| Exhibit 10 - Melissa Farley, Risks of Prostitution: When the Person Is the Product 3 Journal of the Association for Consumer Research (2017) | I | 0199-0211 |
| Exhibit 11 - Ronald B. Flowers, Prostitution in the Digital Age: Selling Sex From the Suite to the Street? at pgs. 42-46 (Praeger 2011) | I | 0212-0217 |
| Exhibit 12 - Alice Little, A Week as a Legal Sex Working in Mound House, NV on a $267,000 Salary Refinery 29 (2017); TMZ.com, Robert Kraft Courted By Nevada Prostitutes… It's Legal Here!!! (Feb. 23, 2019, 12:40am) | I | 0218-0227b |

| **Description** | **Vol No.** | **Page Nos.** |
|---|---|---|
| Exhibit 13 – Lyon County Sheriff's Office, Internal Audit Report on Brothel Compliance Requirements (2018) | I | 0228-0236 |
| Exhibit 14 - United Nations Office on Drugs and Crime, Human Trafficking Indicators | I | 0237-0239 |
| Exhibit 15 - U.S. Department of State, The Link Between Prostitution and Sex Trafficking (November 24, 2004) | I | 0240-0241 |