GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar No. 10670
Email: jkp@fdlawlv.com
FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
Facsimile: (702) 382-9452
Attorneys for Proposed Defendants-Interveners
   Cash Processing Services, Inc. and
   Lance Gilman

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON,<br><br>        Plaintiff,<br><br>v.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA;<br><br>        Defendants, | Case No.: 3:19-cv-00107-MMD-WGC<br><br>**MOTION TO INTERVENE AS DEFENDANTS** |

COMES NOW the Proposed Defendants-Intervenors, CASH PROCESSING SERVICES, INC. doing business as the WORLD FAMOUS MUSTANG RANCH, and LANCE GILMAN, as Licensee, by and through their attorneys, GUS W. FLANGAS, ESQ. and JESSICA K. PETERSON, ESQ., of the FLANGAS DALACAS LAW GROUP, and for the reasons set forth herein, hereby moves this Court pursuant to FRCP 24, to Intervene as Defendants in the above-entitled action. The Proposed Defendants-Intervenors seek to intervene in this matter as of right pursuant to FRCP 24(a), or in the alternative, permissively, pursuant to FRCP 24(b). Pursuant to FRCP 24(c), the Proposed

1  Defendants-Intervenors have attached as **Exhibit** "A", a proposed Motion to Dismiss pursuant to
2  FRCP 12(b)(1) and FRCP 12(b)(6), which set forth the immediate defenses to the Plaintiff's action.
3       This Motion is based upon the Pleadings and Papers on file herein, the attached Points
4  and Authorities, and oral argument to be made by counsel at any Hearing of this matter.
5       DATED this _11th_ day of March, 2019.

*(signature)*

GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar NO. 10670
Email: Jkp@fdlawlv.com
**FLANGAS DALACAS LAW GROUP**
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
*Attorneys for Defendants-Intervenors*

## POINTS AND AUTHORITIES

### I.
### INTRODUCTION[1]

**A.   THE PROPOSED DEFENDANTS-Intervenors.**

The Proposed Defendant-Intervener, CASH PROCESSING SERVICES, INC., is a Nevada Corporation doing business as the WORLD FAMOUS MUSTANG RANCH (hereinafter the "Mustang Ranch"). The Mustang Ranch is a legal brothel in in Storey County, Nevada. The other Proposed Defendant-Intervener, LANCE GILMAN (hereinafter "Mr. Gilman"), is the Licensed Owner of the Mustang Ranch.

Mr. Gilman was a principal in and the Director of Marketing for the Tahoe Reno Industrial Center (hereinafter "TRI"). His company, Lance Gilman Commercial Real Estate Services was and

---

[1] See the Affidavit of Lance Gilman, attached hereto as **Exhibit** "B" for evidentiary support for the matters set forth in this Introduction.

- 2 -

has been since the inception of TRI, the exclusive broker for this industrial park. TRI is a massive 80,000 acre park that encompasses a 30,000 acre industrial complex approximately nine miles east of Reno, Nevada in Storey County, and is the largest industrial park of its kind in the United States. TRI presently has millions of Square Feet of Industrial space in use by over 160 different companies, with thousands of permanent and temporary jobs created in the coming years. Mr. Gilman has been instrumental in attracting to TRI, such nationally recognized firms as Tesla/Panasonic, SWITCH, Google, Blockchain, eBay, Wal-Mart, Tire Rack, Jet.com, Petsmart, and US Ordinance, to name a few. TRI has provided thousands of jobs for Northern Nevada and it is anticipated that it will generate 10,000 or more jobs for Northern Nevada and hundreds of millions of dollars in payroll annually at full build out. Mr. Gilman has been the face of TRI.

Mr. Gilman first arrived in Reno, Nevada in 1985, and became a principal in and exclusive broker for the 2,500 acre Double Diamond Ranch now known as the South Meadows Business Park, which is located in southern portion of Reno, Nevada. The South Meadows Business Park is an integrated single-family and multi-family residential, industrial, distribution and retail development, and through the extensive efforts of Mr. Gilman, the South Meadows Business Park landed the government arms contractor, Lockheed Martin as the anchor tenant.

Mr. Gilman has a long list of successes in retail businesses. Before the South Meadows Business Park, he started his professional career in San Diego, California, operating the San Diego Boatmart. His accomplishments in that industry included being Chairman of the prestigious San Diego Boat Show and a member of the National Speaker Circuit for the Boat Show Educational Series. He then worked as an agent for Grubb and Ellis, a major real estate brokerage in San Diego, California, where he managed major accounts, including the development of the Murphy Canyon Business Park, and assisted in the development of major shopping centers in San Diego County. In 1998, Mr. Gilman opened the first Harley Davidson motorcycle showroom and maintenance facility in Carson City, Nevada. He has received a number of awards such as the Reno Small Business Entrepreneur of the year in 2009, Reno Man of the Year in 2000 and the Development Award for Environmental Excellence in Development in 1997. In or around 2015, Governor Brian Sandoval personally presented Mr. Gilman and his two TRI partners, the EDAWN President's Award for

completing what the Governor called the "The Deal of the Century" in landing and closing the Tesla deal.

In the early 2000s, the leaders of Storey County needed to take fast action to bolster critically lacking tax revenues for the County, which was cash poor at the time. These leaders approached Mr. Gilman and requested him to open a brothel, which could immediately generate greatly needed tax revenues for the County until TRI could begin bringing in more companies and subsequently growing the tax base. As a result of these requests, Mr. Gilman built and opened up on his property, the Wild Horse brothel, a multimillion dollar facility, which eventually became the Wild Horse Adult Resort and Spa.

In or around 2003, to further bolster lagging tax revenues for Storey County, Mr. Gilman purchased the Mustang Ranch brothel buildings and trademark on Ebay from the Federal Government for $145,100. Because of its historic value, Mr. Gilman spent millions in moving the buildings to a location adjacent to the Wild Horse, and in upgrading the facility. This move included contracting a large heavy lift cargo helicopter to airlift a part of one of the Mustang Ranch's structures. In or around 2012, the Mustang Ranch expanded into the Wild Horse brothel building and today operates primarily out of that property.

The Mustang Ranch today sits in a short canyon outside of TRI and is surrounded by tall iron gates, a berm, and hundreds of trees and shrubs. It is a multifaceted operation, with an award winning steakhouse, gift shop with trademarked Mustang Ranch products, along with the traditional Mustang Ranch entertainment. There are vaulted ceilings, a stone fireplace, hundreds of thousands of dollars' worth of furnishings, decor, equipment, and artwork. It is a thriving business that contributes significantly to Storey County revenues through taxes, fees and assessments.

Because of the Mustang Ranch's close proximity to TRI, because of Mr. Gilman's involvement in TRI, and because Mr. Gilman highly values his reputation, he has taken great measures to operate a first class and extremely safe establishment that protects its employees and customers through thorough modern medical testing, extensive background checks of its employees, extensive cutting edge security on the premises, and adherence to strict policies and procedures, including but not limited to, obtaining proper medical clearances for the Mustang's brothel

employees. In addition, the facilities incorporate many modern design and operational features to ensure a high-quality, professional business operation that provides a safe environment for its employees and customers. The Mustang Ranch is also a great corporate citizen and annually donates tens of thousands of dollars in weekly food donations and staff time, to provide for the needy school children and elderly in Storey County.

### B. THE INSTANT ACTION.

The Complaint before the Court, filed by the Plaintiff, REBEKAH CHARLESTON, against the State of Nevada and Its Legislature, is essentially the Plaintiff's attorney's essay and personal position paper against prostitution thinly veiled as a Court action against the Defendants. After parsing though the many pages of the Plaintiff's Counsel's "essay" on prostitution, it appears the Plaintiff is essentially alleging that Nevada's Prostitution Statutes, which allow for legal prostitution in Nevada Counties with less than 700,000 thousand people are somehow causing her harm. Although what happened to the Plaintiff is absolutely horrendous, reprehensible, and utterly disgusting, the relief she is seeking in her Complaint from the Court is not supported by any law or authority whatsoever.

In her Complaint, the Plaintiff is seeking to have the Court declare that Nevada's statutes allowing for legalized prostitution are unconstitutional, and null and void as preempted by Federal law. She is further seeking to have the Court enjoin Nevada and all of its political subdivisions from implementing, enforcing, or putting into force and effect Nevada's laws on prostitution. Lastly, she is seeking an Order from the Court requiring Nevada to allocate to state funds on an annual basis to aid people seeking an exit from the sex trade.

The gist of the Plaintiff's Complaint is that she was living on the streets as a runaway, and met what appeared to be a "nice older boyfriend." She claims that she eventually realized his true intentions, which were to abuse and sexually exploit her. She claims this "boyfriend" traded her to another trafficker who then violently abused her while sexually exploiting her all across the country. In her Complaint, the Plaintiff claims one of the first stops her sex trafficker made with her was in Nevada, where this trafficker forced her to get a job at the "Moonlight Bunny Ranch Brothel." She further claims that this trafficker would send other similarly situated women to perform prostitution

in Nevada brothels as punishment. She also claims that she was not permitted to turn down a sex buyer, none of the acts in which she engaged were consensual, she was a victim of serial rape for profit, she was raped and assaulted numerous times, she was not allowed to come and go as she pleased, and she witnessed other women like her being trafficked inside Nevada's legal brothels. She further set forth in her Complaint that the trafficker decided to move her to Las Vegas for greater profits in the illegal sex trade because Las Vegas is "a well-known destination for people who are in the market to buy women for sex. She claims in her Complaint that the advertising and marketing from legal brothels persuade and entice people to come travel from across the country and all over the world to purchase prostituted persons in Nevada. Without real documentation, the Plaintiff asserts that Nevada is the "state where there was and is the "greatest demand for prostitution whether legal or illegal."

In her Complaint, the Plaintiff alleges that certain Federal Criminal Statutes were enacted to Prevent persons from being trafficked, and Nevada's Statutes that allow for legal prostitution are therefore somehow in direct conflict with these Federal Criminal Statutes. The Federal Criminal Statutes upon which the Plaintiff is basing her claims are 18 U.S.C.A. § 2422(a) of the Mann Act, and 22 U.S.C. §§ 7101-7114 of the Trafficking Victims Protection Act (hereinafter the "TVPA").[2] Both are Federal Criminal Statutes that provide for fines and or imprisonment for trafficking in persons. Not mentioned in the Plaintiff's Complaint is that Nevada has an almost identical statute providing for fines and or imprisonment for trafficking in persons. See NRS 201.300. In her complaint, the Plaintiff alleges that these Federal Criminal Statutes somehow preempt Nevada laws which allow for legal prostitution. Neither of these statutes create privately enforceable rights or give rise to civil liability; however, these statutes provide for criminal liability against the perpetrators. See United States v. Rashkovski, 301 F.3d 1133, 1137 (9th Cir. 2002) ([I]t is the defendant's intent that forms the basis for criminal liability, not the victims. The question under Section 2422(a) is whether [the defendant] persuaded or enticed the women to travel intending them to engage in prostitution).

---

[2] These statutes will often be referred to collectively as the "Federal Criminal Statutes."

To bring her Complaint and to invoke Federal Court jurisdiction, the Plaintiff is couching her suit as a civil rights violation pursuant to 42 U.S.C. § 1983, based on violations of Sections 2422(a) and 7101-7114. The Complaint ostensibly contains three causes of action, to wit: (1) "Violation of Civil Rights: 42 U.S.C. § 1983, Fourteenth Amendment State Created Danger;" (2) "Violation of Civil Rights: 42 U.S.C. § 1983, Fourteenth Amendment Deprivation of Federal Rights;" and (3) "Declaratory/Injunctive Relief-Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) Are Preempted by both the Mann Act (U.S.C. 18 § 2422(a)) and the TVPA (22 U.S.C. §§ 7101-7114) and are in violation of The Supremacy Clause of The U.S. Constitution."

**C.     THE AFFECT OF THE INSTANT ACTION ON THE PROPOSED DEFENDANTS-INTERVENORS.**

Mr. Gilman has invested Tens of Millions of dollars into the Mustang Ranch. The business and facilities of the Mustang Ranch are worth Tens of Millions of dollars. In addition, the Mustang Ranch is a registered trademark and has significant value.

As stated, the Plaintiff is seeking to have the Court declare that Nevada's statutes allowing for legalized prostitution are unconstitutional, and null and void as preempted by Federal law. She is further seeking to have the Court enjoin Nevada and all of its political subdivisions from implementing, enforcing, or putting into force and effect Nevada's laws on prostitution. This would result in the complete shut down of the Mustang Ranch. The Proposed Defendants-Intervenors would completely lose their business. They would lose their business as a going concern, lose Tens of Millions of dollars they invested in their business, lose the value of their business, lose the profits generated by their business, and lose the usefulness of their valuable trademark, the Mustang Ranch.

Because of the loss that the Proposed Defendants-Intervenors will suffer should the Plaintiff prevail, the Proposed Defendants-Intervenors are seeking to intervene in this matter as of right pursuant to FRCP 24(a), or in the alternative, permissively, pursuant to FRCP 24(b).

. . . . .
. . . . .
. . . . .
. . . . .

# II.
# ARGUMENT

## A. THE PROPOSED DEFENDANTS-INTERVENORS SHOULD BE ENTITLED TO INTERVENTION AS OF RIGHT UNDER FRCP 24(a).

Under Federal Rule of Civil Procedure 24(a) ("Rule 24(a)"), a court must permit any party to intervene in a lawsuit who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed.R.Civ.P. 24(a)(2).

The rule is broadly construed in favor of intervention. See Cabazon Band of Mission Indians v. Wilson, 124 F.3d 1050, 1061 (9th Cir.1997). See Forest Conservation Council ("FCC") v. United States Forest Serv., 66 F.3d 1489, 1493 (9th Cir.1995) (In general, we construe Rule 24(a) liberally in favor of potential Intervenors). Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). [The Court] follow[s] the guidance of Rule 24 advisory committee notes that state that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822 citing Fed.R.Civ.P. 24 advisory committee's notes. See United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004) (Courts considering Rule 24(a) motions are "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention).

The Ninth Circuit employs four criteria to determine whether intervention under Rule 24(a) is appropriate: (1) the motion to intervene must be timely; (2) the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by

the existing parties. See Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir.2003). The burden falls on the applicant to show that all of the requirements for intervention have been met. See U.S. v. Alisal Water Corp., 370 F.3d at 919.

1. **This Motion to Intervene is Timely.**

The determination as to whether a motion to intervene is timely is left to the court's discretion. Dilks v. Aloha Airlines, 642 F.2d 1155, 1156 (9th Cir. 1981). Courts weigh three factors in determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir. 2002) (internal quotation marks omitted).

There is no dispute that this Motion is timely. It is being filed within two weeks of the filing date of the Complaint. The Defendant have not yet even filed an Answer and there has been no delay.

2. **The Proposed Defendants-Intervenors Have a Significantly Protectable Interest Related to the Property or Transaction That Is the Subject of this Action.**

"An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." U.S. v. City of Los Angeles, 288 F.3d 391, 398 (9th Cir.2002) (internal quotation marks omitted). This is "not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the interest test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process[.]" Id. It is construed "broadly in favor of proposed intervenors." See Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173, 1179 (9th Cir.2011). An applicant demonstrates a "significantly protectable interest" when "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 818.

Mr. Gilman has invested Tens of Millions of dollars into the Mustang Ranch. The business and facilities of the Mustang Ranch are worth Tens of Millions of dollars and there are also profits being generated by the business. In addition, the Mustang Ranch is a registered trademark and has

- 9 -

significant value. There is no question that legal investments, legal businesses, and legal property are protected interests under the law. As stated, should the Plaintiff succeed in her action, it would result in the complete shut down of the Mustang Ranch. The Proposed Defendants-Intervenors would completely lose their business and lose tens of millions of dollars in terms of investment funds. loss of a business as a going concern, loss of profits, and loss of the value of their trademark. Clearly, the Proposed Defendants-Intervenors have a significant protectable interest in this action.

### 3. The Proposed Defendants-Intervenors Are Situated Such That the Disposition of the Plaintiff's Action May Impair or Impede Their Ability to Protect That Interest.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee notes) (alteration omitted). There is no requirement that the party seeking to intervene show "an absolute certainty" that its interests will be impaired in support of its request. Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 900 (9th Cir. 2011).

As stated, the Proposed Defendants-Intervenors would be substantially affected more than just in a practical sense. Should the Plaintiff succeed in her action, it would result in the complete shut down of the Mustang Ranch. The Proposed Defendants-Intervenors would completely lose their business and lose tens of millions of dollars in terms of investment funds and loss of a business as a going concern. As such, disposition of the Plaintiff's action would impede the ability of the Proposed Defendants-Intervenors to protect their interests.

### 4. The Proposed Defendants-Intervenors' Interest Would Not Be Adequately Represented by the Existing Parties.

In determining whether a would-be intervener's interests will be adequately represented by an existing party, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822. The prospective intervenor bears the burden of demonstrating that the

existing parties may not adequately represent its interest. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822–23 citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir.1983). However, **the burden of showing inadequacy is "minimal"**(emphasis added), and the applicant need only show that representation of its interests by existing parties "may be" inadequate. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 823 citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630 (1972).

In assessing the adequacy of representation, the focus should be on the "subject of the action," not just the particular issues before the court at the time of the motion. Id. citing Sagebrush, 713 F.2d at 528. "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.' " Citizens for Balances Use, 647 F.3d at 898 (quoting Arakaki, 324 F.3d at 1086).

"If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises[,]" which can be rebutted by "a 'compelling showing' of inadequacy of representation." Citizens for Balances Use, 647 F.3d at 898 (quoting Arakaki, 324 F.3d at 1086). The Ninth Circuit has held the presumption of adequacy may be overcome where the intervenors have "more narrow, parochial interests" than the existing party, or where "the applicant asserts a personal interest that does not belong to the general public." Forest Conservation Council v. U.S. Forest Service, 66 F.3d at 1499.

The Proposed Defendants-Intervenors have "more narrow, parochial interests" than the existing Parties and have personal interests that do not belong to the general public. The Proposed Defendants-Intervenors are owners of and licensees in the highly restricted and highly regulated business of operating a brothel. The interests of the Proposed Defendants-Intervenors are completely different than that of the Parties. In this action, the State of Nevada is mostly facing causes of action for injunctive relief that would completely invalidate certain statutes its legislature enacted, which legalized brothels in certain counties. It is uncertain whether the Defendants would even defend against invalidating the Nevada statutes complained of in the Plaintiff's Complaint.

On the other hand, the Proposed Defendants-Intervenors are not facing injunctive relief, they are facing the loss of their business as a going concern, loss of Tens of Millions of dollars they

invested in their business, loss of the value of their business, loss of profits generated by their business, and loss of the usefulness of their valuable trademark, the Mustang Ranch. In addition, because the interests of the Proposed Defendants-Intervenors are so different, there is no way of knowing of whether the State of Nevada will make or are even willing to make the arguments necessary to protect the Proposed Defendants-Intervenors.

Given that the burden is minimal for showing that the existing Parties may not adequately represent their interest and given that the Courts favor intervention, the Court should grant this Motion and allow the Proposed Defendants-Intervenors to intervene in this matter as of right pursuant to FRCP 24(a).

B. **IN THE ALTERNATIVE, THE PROPOSED DEFENDANTS-INTERVENORS SHOULD BE ENTITLED TO PERMISSIVE INTERVENTION PURSUANT TO FRCP 24(b).**

Under Federal Rule of Civil Procedure 24(b) ("Rule 24(b)"), a court may grant permissive intervention where (1) the applicant shows independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action share a common question of law of fact. See Freedom from Religion Foundation, Inc. v. Geithner, 644 F.3d 836, 843 (9th Cir.2011). In exercising its discretion on an application for permissive intervention, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998). See Orange v. Air Cal., 799 F.2d 535, 539 (9th Cir.1986) ("Permissive intervention is committed to the broad discretion of the district court."); Spangler v. Pasadena City Board of Educ., 552 F.2d 1326, 1329 (9th Cir.1977) (identifying nonexclusive discretionary factors that the district court may consider when deciding whether to grant permissive intervention). In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties. Donnelly v. Glickman, 159 F.3d at 412; See Fed.R.Civ.P. 24(b)(2) (so providing). The Court liberally construes motions for permissive intervention. See Abassi v. Immigration & Naturalization Serv., 305 F.3d 1028, 1031–32 (9th Cir.2002).

In the instant case, the Proposed Defendants-Intervenors have independent grounds for jurisdiction because their important property interests are at stake. These property interests include their investments in their business, the value of their business, profits generated by their business, and the value of their trademark, all of which will be completely extinguished should the Plaintiff prevail in her action. Thus, they clearly have standing.[3]

There is no question that this motion is timely. It is being filed within 2 weeks of the filing date of the Plaintiff's Complaint. This request for intervention clearly will not unduly delay the main action and will not unfairly prejudice the existing parties.

Lastly, the Proposed Defendants-Intervenors defense and the main action share a common question of law of fact. There is no question that the main issue is the Plaintiff's quest in her Complaint to have the Court invalidate Nevada's statutes on brothels which would in turn extinguish the Proposed Defendants-Intervenors' investments in their business, the value of their business, profits generated by their business, and the value of their trademark.

Given that the Courts favor intervention, the Court should grant the Defendants-Intervenors' Motion for Permissive Intervention pursuant to FRCP 24(b).

## III.
## CONCLUSION

Based upon the foregoing, given that the burden is minimal for showing that the existing Parties may not adequately represent their interest and given that the Courts favor intervention, the Proposed Defendants-Intervenors respectfully request that the Court grant this Motion and allow the Proposed Defendants-Intervenors to intervene in this matter as of right pursuant to FRCP 24(a). In

. . . . .

. . . . .

. . . . .

---

[3] To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-158, 134 S. Ct. at 2334, 2341 citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130 (1992).

1 | the alternative, the Proposed Defendants-Intervenors respectfully request that the Court grant the
2 | Defendants-Intervenors' Motion for Permissive Intervention pursuant to FRCP 24(b).

Respectfully submitted this 11th day of March, 2019.

/s/ Gus W. Flangas
GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar No. 10670
Email: jkp@fdlawlv.com
FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
Facsimile: (702) 382-9452
*Attorneys for Defendants-Intervenors*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the FLANGAS DALACAS LAW GROUP, and that on this 11th day of March, 2019, I served a true and correct copy of the attached document as follows:

__X__ By U.S. Mail on all parties in said action, by placing a true copy thereof enclosed in a sealed envelope in a designate are for outgoing mail, addressed as set forth below at the Flangas Dalacas Law Group, mail placed in that designated area is given the correct amount of postage and is deposited that same date in the ordinary course of business, in a United States mailbox in the City of Las Vegas, County of Clark, Nevada.

Jason D. Guinasso, Esq.
Hutchison & Steffan, PLLC
500 Damonte Ranch Pkwy., Suite 980
Reno, NV 89521
jguinasso@hutchlegal.com
Attorney for Plaintiff

State of Nevada
Steve Sisolak, Governor of State of Nevada
Legislature of State of Nevada
c/o Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701

Steve Sisolak, Governor of State of Nevada
c/o State Capitol Building
101 N. Carson St.
Carson City, NV 89701

Legislature of the State of Nevada
c/o Brenda J. Erdoes, Legislative Counsel
Bureau - Legal Division
Legislative Building
401 S. Carson St.
Carson City, NV 89701

/s/ Loren Reynolds
an employee of the Flangas Dalacas Law Group