# EXHIBIT A

1 | GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
2 | Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
3 | Nevada Bar No. 10670
Email: jkp@fdlawlv.com
4 | FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
5 | Las Vegas, Nevada 89146
Telephone: (702) 307-9500
6 | Facsimile: (702) 382-9452
*Attorneys for Defendants-Interveners*
7

8 | **UNITED STATES DISTRICT COURT**

9 | **DISTRICT OF NEVADA**

10

| | |
|---|---|
| 11 REBEKAH CHARLESTON, | Case No.: 3:19-cv-00107-MMD-WGC |
| Plaintiff, | |
| 12 v. | |
| 13 | **DEFENDANTS-INTERVENERS'** |
| 14 STATE OF NEVADA; STEVE SISOLAK, | **MOTION TO DISMISS** |
| in his capacity as Governor of the State of | **PURSUANT TO FRCP 12(b)(1)** |
| 15 Nevada, and the LEGISLATURE OF THE | **AND FRCP 12(b)(6)** |
| STATE OF NEVADA; | |
| 16 Defendants, | |
| 17 | |
| CASH PROCESSING SERVICES, INC., a | |
| 18 Nevada Corporation dba the WORLD | |
| FAMOUS MUSTANG RANCH; LANCE | |
| 19 GILMAN, as Licensee, | |
| 20 Defendants-Interveners | |

21

22 | COMES NOW the Defendants-Interveners, CASH PROCESSING SERVICES, INC. doing

23 | business as the WORLD FAMOUS MUSTANG RANCH, and LANCE GILMAN, as Licensee, by and

24 | through their attorneys, GUS W. FLANGAS, ESQ., and JESSICA K. PETERSON, ESQ., of the

25 | FLANGAS DALACAS LAW GROUP, and hereby move this Court pursuant to FRCP 12(b)(1) and

26 | FRCP 12(b)(6) to dismiss the Plaintiff's Complaint.

27 | This Motion is based upon the Pleadings and Papers on file herein, the attached Points and

28 | . . . . .

1   Authorities, and oral argument to be made by counsel at any Hearing of this matter.

2       DATED this __11th__ day of March, 2019.

3

4

5                                                    GUS W. FLANGAS, ESQ.
                                                     Nevada Bar No. 004989
                                                     Email: gwf@fdlawlv.com
6                                                    JESSICA K. PETERSON, ESQ.
                                                     Nevada Bar NO. 10670
7                                                    Email: Jkp@fdlawlv.com
                                                     **FLANGAS DALACAS LAW GROUP**
8                                                    3275 South Jones Blvd., Suite 105
                                                     Las Vegas, Nevada 89146
9                                                    Telephone: (702) 307-9500
                                                     *Attorneys for Defendants-Interveners*
10

11                       **POINTS AND AUTHORITIES**

12                                  **I.**
                              **INTRODUCTION**
13

14       The Complaint before the Court, filed by the Plaintiff, REBEKAH CHARLESTON, is

15   essentially the Plaintiff's attorney's essay and personal position paper against prostitution thinly veiled

16   as a Court action against the Defendants.  After parsing though the many pages of the Plaintiff's

17   Counsel's "essay" on prostitution, it appears the Plaintiff is essentially alleging that Nevada's

18   Prostitution Statutes, which allow for legal prostitution in Nevada Counties with less than 700,000

19   thousand people are somehow causing her harm.  Although what happened to the Plaintiff is absolutely

20   horrendous, reprehensible, and utterly disgusting, the relief she is seeking in her Complaint from the

21   Court is not supported by any law or authority whatsoever.

22       In her Complaint, the Plaintiff is seeking to have the Court declare that Nevada's statutes

23   allowing for legalized prostitution are unconstitutional, and null and void as preempted by Federal law.

24   She is further seeking to have the Court enjoin Nevada and all of its political subdivisions from

25   implementing, enforcing, or putting into force and effect Nevada's laws on prostitution.  Lastly, she is

26   seeking an Order from the Court requiring Nevada to allocate to state funds on an annual basis to aid

27   people seeking an exit from the sex trade.

28       The gist of the Plaintiff's Complaint is that she was living on the streets as a runaway, and met

                                          - 2 -

1 | what appeared to be a "nice older boyfriend." She claims that she eventually realized his true intentions,
2 | which were to abuse and sexually exploit her. She claims this "boyfriend" traded her to another
3 | trafficker who then violently abused her while sexually exploiting her all across the country. In her
4 | Complaint, the Plaintiff claims one of the first stops her sex trafficker made with her was in Nevada,
5 | where this trafficker forced her to get a job at the "Moonlight Bunny Ranch Brothel." She further claims
6 | that this trafficker would send other similarly situated women to perform prostitution in Nevada brothels
7 | as punishment. She also claims that she was not permitted to turn down a sex buyer, none of the acts
8 | in which she engaged were consensual, she was a victim of serial rape for profit, she was raped and
9 | assaulted numerous times, she was not allowed to come and go as she pleased, and she witnessed other
10 | women like her being trafficked inside Nevada's legal brothels. She further set forth in her Complaint
11 | that the trafficker decided to move her to Las Vegas for greater profits in the illegal sex trade because
12 | Las Vegas is "a well-known destination for people who are in the market to buy women for sex. She
13 | claims in her Complaint that the advertising and marketing from legal brothels persuade and entice
14 | people to come travel from across the country and all over the world to purchase prostituted persons in
15 | Nevada. Without real documentation, the Plaintiff asserts that Nevada is the "state where there was and
16 | is the "greatest demand for prostitution whether legal or illegal."

17 | In her Complaint, the Plaintiff alleges that certain Federal Criminal Statutes were enacted to
18 | prevent persons from being trafficked, and Nevada's Statutes that allow for legal prostitution are
19 | therefore somehow in direct conflict with these Federal Criminal Statutes. The Federal Criminal
20 | Statutes upon which the Plaintiff is basing her claims are 18 U.S.C.A. § 2422(a) of the Mann Act, and
21 | 22 U.S.C. §§ 7101-7114 of the Trafficking Victims Protection Act (hereinafter the "TVPA").[1] Both are
22 | Federal Criminal Statutes that provide for fines and or imprisonment for trafficking in persons. Not
23 | mentioned in the Plaintiff's Complaint is that Nevada has an almost identical statute providing for fines
24 | and or imprisonment for trafficking in persons. See NRS 201.300.[2] In her complaint, the Plaintiff

[1] These statutes will often be referred to collectively as the "Federal Criminal Statutes."

[2] NRS 201.300 states in pertinent part:

1. A person who without physical force or the immediate threat of physical force, induces an adult

- 3 -

1  alleges that these Federal Criminal Statutes somehow preempt Nevada laws which allow for legal

2  prostitution. Neither of these statutes create privately enforceable rights or give rise to civil liability;

3  however, these statutes provide for criminal liability against the perpetrators. See United States v.

4  Rashkovski, 301 F.3d 1133, 1137 (9th Cir. 2002) ([I]t is the defendant's intent that forms the basis for

5  criminal liability, not the victims. The question under Section 2422(a) is whether [the defendant]

6  persuaded or enticed the women to travel intending them to engage in prostitution).

7       The Plaintiff's ultimate assertion is that legal prostitution in Nevada was responsible for her

8  heart-breaking and horrid situation of being a victim of trafficking. However, in her Complaint, she

9  downplays the role that illegal prostitution had in her horrific circumstances as a victim. In her

10 Complaint, she also downplays that Sections 2422(a) and 7101-7114 provide for significant repercussion

11 against individuals who engage in illegal trafficking (as does Nevada's similar statute). In addition, she

12 downplays Nevada's considerations for allowing legal prostitution.

13       The State of Nevada, alone among the states, permits the sale of sexual services in some of its

14 counties. Coyote Pub., Inc. v. Miller, 598 F.3d at 592, 596 (9th Cir. 2010). Nevada combines partial

15

16       to unlawfully become a prostitute or to continue to engage in prostitution, or to enter any place within
         this State in which prostitution is practiced, encouraged or allowed for the purpose of sexual conduct

17       or prostitution is guilty of pandering which is a category C felony and shall be punished as provided
         in NRS 193.130. This subsection does not apply to the customer of a prostitute.

18       2. A person:

19            (a) Is guilty of sex trafficking if the person:

20                 (1) Induces, causes, recruits, harbors, transports, provides, obtains or maintains a
         child to engage in prostitution, or to enter any place within this State in which prostitution is

21       practiced, encouraged or allowed for the purpose of sexual conduct or prostitution;

22                 (2) Induces, recruits, harbors, transports, provides, obtains or maintains a person
         by any means, knowing, or in reckless disregard of the fact, that threats, violence, force, intimidation,

23       fraud, duress or coercion will be used to cause the person to engage in prostitution, or to enter any
         place within this State in which prostitution is practiced, encouraged or allowed for the purpose of

24       sexual conduct or prostitution;

25                 (3) By threats, violence, force, intimidation, fraud, duress, coercion, by any device
         or scheme, or by abuse of any position of confidence or authority, or having legal charge, takes,

26       places, harbors, induces, causes, compels or procures a person to engage in prostitution, or to enter
         any place within this State in which prostitution is practiced, encouraged or allowed for the purpose

27       of sexual conduct or prostitution; or

28                 (4) Takes or detains a person with the intent to compel the person by force, violence, threats
         or duress to marry him or her or any other person.

1  legalization of prostitution with stringent licensing and regulation, including health screenings for sex
2  workers, measures to protect sex workers from coercion, and-the aspect of Nevada law here
3  challenged-restrictions on advertising by legal brothels.  Id.

4      The sale of sexual services in Nevada is prohibited unless conducted in designated brothels
5  licensed by a county.  Id. citing NRS 201.354(1).  State law prohibits counties of more than 400,000
6  residents from issuing such licenses, Id. citing NRS 244.345(8), and counties with fewer than 400,000
7  residents are free to prohibit the sale of sexual services by local ordinance.  Id.  The upshot is that
8  licensed brothels do not operate in Clark County, which includes the city of Las Vegas, or in five of the
9  sixteen remaining counties in Nevada.  Id.

10     State law establishes a strict regulatory regimen governing brothels in the eleven counties that
11  choose to license them.  Id.  Sex workers are subject to mandatory health screening for sexually
12  transmitted diseases, including HIV, Id. citing NAC 441A.800-802, and brothel owners are liable for
13  damages resulting from exposure to HIV, Id. citing NRS 41.1397.  Condom use is mandatory, Id. citing
14  NRS 441A.805, and all brothels must so notify customers.  Id. citing NRS 441A.810.

15     Several statutory provisions are directed to preventing coercion of sex workers by the operators
16  of brothels and others.  Id. [NRS] 201.300 defines makes criminal "pandering," defined [sic] to include,
17  among other acts, inducing, persuading, encouraging, inveigling, or enticing a person to engage in the
18  sale of sexual services.  Id. citing NRS 201.300; see also NRS 201.360 (prohibiting "placing" a person
19  in a brothel). Detaining a person in a brothel because of debt is also forbidden. Id. citing NRS  201.330.
20  Section 201.320 makes it a crime to live from the earnings of a sex worker.  Id.

21     [Nevada] has adopted a nuanced approach to the sale of sexual services, grounded in part in
22  concern about the negative health and safety impacts of unregulated, illegal prostitution. Coyote Pub.,
23  Inc. v. Miller, 598 F.3d at 605.  By permitting some legal prostitution, Nevada has been able to subject
24  a portion of the market for paid sex to extensive regulation, while continuing severely to limit the
25  diffusion of sexual commodification through its banning of prostitution where by far most Nevadans live
26  (and where most outsiders visit), Clark County.  Id.

27     Nevada's choice to pursue its state interests by regulating advertising rather than the alternative
28  means of banning all prostitution directly is a unique one in this country, but not one without a

- 5 -

1 | well-developed policy basis: partial legalization and regulation serves Nevada's competing, substantial

2 | interests in preventing the spread of sexually transmitted disease and protecting sex workers from abuse.

3 | Coyote Pub., Inc. v. Miller, 598 F.3d at 610.

4 | To bring her Complaint and to invoke Federal Court jurisdiction, the Plaintiff is couching her

5 | suit as a civil rights violation pursuant to 42 U.S.C. § 1983, based on violations of Sections 2422(a) and

6 | 7101-7114. The Complaint ostensibly contains three causes of action, to wit: (1) "Violation of Civil

7 | Rights: 42 U.S.C. § 1983, Fourteenth Amendment State Created Danger;" (2) "Violation of Civil Rights:

8 | 42 U.S.C. § 1983, Fourteenth Amendment Deprivation of Federal Rights;" and (3)

9 | "Declaratory/Injunctive Relief-Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) Are

10 | Preempted by both the Mann Act (U.S.C. 18 § 2422(a)) and the TVPA (22 U.S.C. §§ 7101-7114) and

11 | are in violation of The Supremacy Clause of The U.S. Constitution."

12 | As will be shown below, there is no jurisdiction for the Court to even entertain the Plaintiff's

13 | case, and even if the Court were to somehow find there is jurisdiction, the Plaintiff's Complaint still

14 | fails to state any viable claims for relief.

15 |
## II.
### ARGUMENT

16 |

17 | **A.**     **LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1).**

18 | Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article

19 | III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v.

20 | Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Thus, federal

21 | courts have no power to consider claims for which they lack subject-matter jurisdiction. See

22 | Chen–Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir.1992). The court

23 | is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id.

24 | Federal courts are courts of limited jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221,

25 | 1225 (9th Cir.1989).

26 | A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to

27 | Federal Rule of Civil Procedure 12(b)(1). A federal court is presumed to lack jurisdiction in a particular

28 | case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221,

1    1225 (9th Cir.1989). When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should

2    consider the Rule 12(b)(1) motion first. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 84,

3    118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 575,

4    119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

5        The burden of establishing that a cause lies within this limited jurisdiction rests upon the party

6    asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct.

7    1673, 128 L.Ed.2d 391 (1994); see also Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495,

8    499 (9th Cir.2001). The defendant may either challenge jurisdiction on the face of the complaint or

9    provide extrinsic evidence demonstrating lack of jurisdiction on the facts of the case. White v. Lee, 227

10    F.3d 1214, 1242 (9th Cir.2000).

11        A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on

12    its face fails to allege facts sufficient to establish subject matter jurisdiction. See Savage v. Glendale

13    Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the

14    Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and

15    testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United

16    States, 850 F.2d 558, 560 (9th Cir. 1988). With a factual Rule 12(b)(1) attack, a court may look beyond

17    the complaint to matters of public record without having to convert the motion into one for summary

18    judgment. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) citing Gemtel Corp. v. Community

19    Redevelopment Agency, 23 F.3d 1542, 1544 n. 1 (9th Cir.1994)) (citing Mack v. South Bay Beer

20    Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir.1986)). [The court] also need not presume the truthfulness

21    of the plaintiffs' allegations. White v. Lee, 227 F.3d at 1242.

22        Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1),

23    the opposing party bears the burden of establishing the court's jurisdiction. See Chandler v. State Farm

24    Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). "[N]o presumptive truthfulness attaches to

25    plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

26    evaluating for itself the merits of jurisdictional claims." Thornhill Publ'g v. Gen. Tel. & Elec. Corp., 594

27    F.2d 730, 733 (9th Cir.1979).

28    . . . . .

1  **B.    THE COURT LACKS JURISDICTION TO CONSIDER THE PLAINTIFF'S CLAIMS.**

2

3        **1.    The Court Lacks Jurisdiction in This Matter Because the Plaintiff's Action Is Improperly Based upon Civil Rights Violations Pursuant to 42 U.S.C. § 1983; Therefore, the Court Should Grant the Motion to Dismiss the Plaintiff's Complaint Pursuant to FRCP 12(b)(1).**

4

5  The Plaintiff is asserting Federal Jurisdiction primarily based upon an alleged civil right

6  violations pursuant to 42 U.S.C. § 1983, which are grounded on certain Federal Criminal Statutes. At

7  the outset, it is important to note that "[Section] 1983 'is not itself a source of substantive rights,' but

8  merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490

9  U.S. 386, 393-94 (1989); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  The purpose of

10  Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their

11  federally guaranteed rights.  McDade v. West, 223 F.3d 1135, 1139 (9th Cir. 2000); see Wyatt v. Cole,

12  504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).  Section 1983 provides as follows:

13        Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected,

14        any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

15        shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

16

17  To state a claim under Section 1983, a plaintiff must allege that (1) the defendants acting under

18  color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." Gibson

19  v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986); see Anderson, 451 F.3d at 1067 citing West v.

20  Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); see Long v. Cty. Of Los Angeles, 442

21  F.3d 1178, 1185 (9th Cir. 2006).

22  Section 1983 can provide a cause of action against persons acting under color of state law who

23  have violated rights guaranteed by federal statutes. See Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002);

24  Blessing v. Freestone, 520 U.S. 329, 340-341 (1997); Cal. State Foster Parent Ass'n v.Wagner, 624 F.3d

25  974, 978-79 (9th Cir. 2010); Aloha Care v. Haw., Dep't of Human Servs., 572 F.3d 740, 745 (9th Cir.

26  2009).  Section 1983 can be used as a mechanism for enforcing the rights guaranteed by a particular

27  federal statute only if (1) the statute creates enforceable rights and (2) Congress has not foreclosed the

28  possibility of a § 1983 remedy for violations of the statute in question. See Blessing, 520 U.S. at 340-41;

- 8 -

1   Dittman v. California, 191 F.3d 1020, 1027-28 (9th Cir. 1999).

2      To determine whether the federal statute has created rights enforceable through § 1983, the court
3 considers whether the statute (1) is intended to benefit the class of which the plaintiff is a member; (2)
4 sets forth standards, clarifying the nature of the right, that make the right capable of enforcement by the
5 judiciary; and (3) is mandatory, rather than precatory, in nature. See Blessing, 520 U.S. at 340-41; Cal.
6 State Foster Parent Ass'n, 624 F.3d at 979.  "In carrying out this inquiry, [the court should] examine
7 whether particular statutory provisions create specific enforceable rights, rather than considering the
8 statute and purported rights on a more general level." Arnett, 114 F.3d at 138 (citing Blessing, 520 U.S.
9 at 341-42).  To determine whether the federal statute forecloses the possibility of a § 1983 action, the
10 court considers whether the statute contains (1) an express provision precluding a cause of action under
11 § 1983 or (2) "'a comprehensive enforcement scheme that is incompatible with individual enforcement
12 under section 1983.'" City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005) (quoting
13 Blessing, 520 U.S. at 341); Dittman, 191 F.3d at 1028. Where statutes contain provisions for criminal
14 penalties, citizen suits, judicial review, or even administrative proceedings alone, the Supreme Court has
15 found the remedial scheme sufficiently comprehensive to foreclose an independent § 1983 cause of
16 action. See Abrams, 544 U.S. at 121-22; see also Buckley, 66 F.3d at 191-92.

17      The Court should grant the Motion to Dismiss Pursuant to FRCP 12(b)(1) because (a) the
18 Plaintiff is asserting Federal Jurisdiction primarily based upon an alleged civil right violations pursuant
19 to Section 1983, which are grounded on violations of Federal Criminal Statutes, which do not afford the
20 Plaintiff any substantive rights; and (b) the State of Nevada is not a person for purposes of Section 1983
21 and its Legislature enjoys immunity from a Section 1983 action.

22      **a.**    **The Plaintiff's Section 1983 Actions Are Based upon Violations of Federal Criminal Statutes That Do Not Create Privately Enforceable Rights or Give Rise to Civil Liability; Therefore the Court Should Grant the Motion to Dismiss Pursuant to FRCP 12(b)(1) .**

25      Federal criminal statutes that provide for punishment by fine or imprisonment do not create
26 privately enforceable rights or give rise to civil liability. See, e.g., Aldabe v. Aldabe, 616 F.2d 1089,
27 1092 (9th Cir.1980) (per curiam) (finding no civil liability under criminal conspiracy statutes). The fact
28 that a federal statute has been violated and some person harmed does not automatically give rise to a

- 9 -

1  private right of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d

2  82 (1979). "Instead, the statute must either explicitly create a right of action or implicitly contain one."

3  Diaz v. Davis (In re Digimarc Corp. Derivative Litig.), 549 F.3d 1223, 1230 (9th Cir.2008). See e.g.,

4  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980) (holding that criminal statutes "provide no basis

5  for civil liability"); see also Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir.1999) (criminal

6  statutes do not generally provide a private cause of action nor basis for civil liability).

7      The Federal Criminal Statutes upon which the Plaintiff is basing her claims are 18 U.S.C.A. §

8  2422(a) of the Mann Act, and 22 U.S.C. §§ 7101-7114 of the Trafficking Victims Protection Act

9  (hereinafter the "TVPA"). Both are Federal Criminal Statutes. Section 2422(a) states:

10         Whoever knowingly persuades, induces, entices, or coerces any individual to travel in
          interstate or foreign commerce, or in any Territory or Possession of the United States,
11         to engage in prostitution, or in any sexual activity for which any person can be charged
          with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned
12         not more than 20 years, or both.

13  The clear language of Section 2422(a) undeniably provides for a fine and or imprisonment.[3]  Nowhere

14  in the four corners of the statute or any related statute, does the statute create privately enforceable rights

15  or give rise to civil liability.  As such, Section 2422(a) cannot be used a basis to support as a Section

16  1983 Action.

17      The purpose of Sections 7101-7114 of the TVPA is to combat trafficking in persons, a

18  contemporary manifestation of slavery whose victims are predominantly women and children, to ensure

19  just and **effective punishment of traffickers**, and to protect their victims.  See Section 7101(a).

20  (Emphasis added).  Section 7101 provides a lengthy narrative about it its purpose which deals with

21  human trafficking, involuntary servitude and slavery (mostly international) by threat, intimidation, and

22  or coercion.  See Section 7101.  It is focused on bringing perpetrators to justice.  See Section 7101(b)

23  (24).  There is nothing contained in the four corners of Sections 7101-7114 that concerns legal

24  prostitution or anything by the Federal Government to preempt the State's right to allow legal

25

26         [3] Under the rules of statutory construction, '[t]he plain meaning of the statute controls, and courts
27  will look no further, unless its application leads to unreasonable or impracticable results.'" United States
    v. Leyva, 282 F.3d 623, 625 (9th Cir.2002) (quoting United States v. Daas, 198 F.3d 1167, 1174 (9th
28  Cir.1999)).

1  prostitution within the state. As stated, Sections 7101-7114 are more concerned about enacting effective

2  punishment of traffickers and bringing perpetrators to justice. There is nothing contained in the four

3  corners of Sections 7101-7114 that create privately enforceable rights or give rise to civil liability.

4      Neither Section 2422(a) nor Sections 7101-7114 create specific privately enforceable rights or

5  give rise to civil liability. Further, Section 2422(a) contain provisions for criminal penalties and Sections

6  7101-7114 anticipates the same; therefore, there is a remedial scheme sufficiently comprehensive to

7  foreclose an independent Section 1983 cause of action. See Abrams, 544 U.S. at 121-22; see also

8  Buckley, 66 F.3d at 191-92. Because, the Federal Criminal Statutes upon which the Plaintiff is basing

9  her case cannot support a Section 1983, the Court is without jurisdiction to proceed; therefore, the Court

10  should grant the Motion to Dismiss pursuant to FRCP 12(b)(1).

11      **b.**    **The State of Nevada Is Not a Person for Purposes of a Section 1983 Action,**
12  **and the Nevada Legislature Enjoys Immunity from a Section 1983 Action; Therefore the Court Should Grant the Motion to Dismiss Pursuant to FRCP 12(b)(1).**

14      The Plaintiff has filed suit against the State of Nevada and it's Legislature. States are not persons

15  for purposes of § 1983. See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997); Will v.

16  Mich. Dep't of State Police, 491U.S. 58, 71 (1989); Jackson v. Barnes, 749 F.3d 755, 764 (9th Cir.

17  2014); Hale v. Arizona, 993 F.2d 1387, 1398 (9th Cir. 1993). Section 1983 claims against states,

18  therefore, are legally frivolous. See Jackson v.Arizona, 885 F.2d 639, 641 (9th Cir. 1989). State

19  Legislatures enjoy immunity from Section 1983 actions. See Supreme Court of Virginia v. Consumers

20  Union of U. S., Inc., 446 U.S. 719, 732–34, 100 S. Ct. 1967, 1974–75 (1980). In the Supreme Court of

21  Virginia case, the Court stated in pertinent part:

22      We have also recognized that state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In Tenney we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although Tenney involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief. In holding that § 1983 "does not create civil liability" for acts undertaken "in a field where legislators traditionally have power to act," id., at 379, 71 S.Ct., at 789, we did not distinguish between actions for damages and those for prospective relief. Indeed, we have recognized elsewhere that "a private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." Eastland v. United States

- 11 -

1   Servicemen's Fund, supra, at 503, 95 S.Ct., at 1821. Although the separation-of-powers
    doctrine justifies a broader privilege for Congressmen than for state legislators in
2   criminal actions, United States v. Gillock, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454
    (1980), we generally have equated the legislative immunity to which state legislators are
3   entitled under § 1983 to that accorded Congressmen under the Constitution. Eastland v.
    United States Servicemen's Fund, supra, 421 U.S., at 502-503, 505, 506, 95 S.Ct., at
4   1820-1821, 1822, 1823; Dombrowski v. Eastland, supra, 387 U.S., at 84-85, 87 S.Ct.,
    at 1427-1428; United States v. Johnson, 383 U.S. 169, 180, 86 S.Ct. 749, 755, 15
5   L.Ed.2d 681 (1966); Tenney v. Brandhove, supra, 341 U.S., at 377-379, 71 S.Ct., at
    788-789. . . .

6

7   Supreme Court of Virginia v. Consumers Union of U. S., Inc., 446 U.S. at 732–34, 100 S. Ct. at 1974–75

8   (1980).

9           Based upon the foregoing, the State of Nevada is not a person for purposes of Section 1983 and

10  the Nevada Legislature enjoys immunity from a Section1983 action.  As stated, Section 1983 can

11  provide a cause of action against persons acting under color of state law who have violated rights

12  guaranteed by federal statutes.  Because Nevada and its Legislature are not persons for purposes of a

13  Section 1983 action, and because the Plaintiff's action is based upon civil rights violations pursuant to

14  Section 1983, the Court has no jurisdiction.  Therefore, the Court should grant the Motion to Dismiss

15  pursuant to FRCP 12(b)(1).[4]

16          **2.      The Plaintiff Has Failed to Set Forth Any Real Violation of Sections 2422(a) and
                     7101-7114 by Either the State of Nevada or the Nevada Legislature; Therefore, Her**
17          **Complaint Should Be Dismissed Pursuant to FRCP 12(b)(1).**

18          The Plaintiff in her Complaint has failed to set forth any facts where neither the State of Nevada

19  nor its legislature violated any rights she has guaranteed by federal statutes.  Section 1983 can provide

20  a cause of action against persons acting under color of state law who have violated rights guaranteed by

21  federal statutes.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002); Blessing v. Freestone, 520 U.S.

22  at 340-341; Cal. State Foster Parent Ass'n v.Wagner, 624 F.3d at 978-79; Aloha Care v. Haw., Dep't

23  of Human Servs., 572 F.3d at 745.

24          In her Complaint, the Plaintiff alleges that as a result of legal brothels, the State of Nevada and

25  _____

26          [4]  The Defendant, Governor Steve Sisolak is only being sued in his official capacity, has no
    alleged factual connection to the enforcement of Nevada brothel statutes other than a general duty to
27  enforce Nevada; therefore, he is entitled to Eleventh Amendment immunity where his only connection
    to challenged California statute is a general duty to enforce Nevada law.  See Ass'n des Eleveurs de
28  Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 943 (9th Cir. 2013).

1   its Legislature are depriving the Plaintiff of rights afforded to her under the Federal Criminal Statutes
2   mentioned in her Complaint, and that "but for" the legalization of brothels her rights would not have
3   been deprived. First of all, the Federal Criminal Statutes do not afford the Plaintiff rights, rather they
4   prohibit the trafficking of individuals by others. By her own admission, the Plaintiff was trafficked all
5   over the United States in violation of the Federal Criminal Statutes, prior to being brought to Nevada.
6   As such, this makes the causal connection between legal brothels and the Federal Criminal Statutes even
7   more tenuous. Moreover, Nevada has an anti-trafficking statute that is similar to the Mann Act, which
8   has been on the books in at least some form since 1959. See NRS 201.300.

9        The injury alleged by Plaintiff in her complaint is the "depriv[ation] of the rights afforded to her
10   under the Federal Criminal Statutes. However, as stated above, these Federal Criminal Statutes do not
11   afford the Plaintiff rights, rather it is a criminal statute that **prohibits** individuals from engaging in
12   trafficking of persons. Therefore, it cannot be said that the so-called deprivation is caused by the
13   exercise of a privilege or right. Moreover, it cannot be said that the State of Nevada nor its Legislature
14   deprived the Plaintiff of her rights, because as stated above, the rights on which she complains are not
15   "rights" as that term is defined.

16        In this action, based upon the Plaintiff's allegations, it is patently clear that it was "her trafficker"
17   that committed the crimes against her in violation of the Federal Criminal Statutes. The Plaintiff then
18   somehow tries to bootstrap the crimes committed against her by "her trafficker" to Nevada having legal
19   prostitution. There is absolutely no nexus. If she ended up working in a legal brothel against her will,
20   it was "her trafficker" and possibly the brothel that committed the criminal acts against her, not the State
21   of Nevada nor its legislature. As stated, there are Federal and Nevada State criminal statues in place that
22   criminalize these types of actions and provide for fines and imprisonment for violations of these statutes.
23   Just because others act in a criminal manner and violate these statutes, their actions cannot be imputed
24   to Nevada nor its Legislature. The clear import is the Plaintiff has failed to show that Nevada or its
25   legislature has violated any of her rights guaranteed by federal statutes. She has only showed that others
26   unrelated to the State of Nevada violated her rights, specifically "her trafficker" and possibly a brothel.
27   Because the Plaintiff has failed to show on the face of her Complaint any violation of her rights
28   guaranteed by the Federal Criminal Statutes, a Section 1983 action cannot be brought against the State

1 | of Nevada or its Legislature. Therefore, the Court should grant the Motion to Dismiss pursuant to FRCP

2 | 12(b)(1).

3 | **3.   The Plaintiff Does Not Have Standing; Therefore, Her Complaint Should Be Dismissed Pursuant to FRCP 12(b)(1).**

4 |

5 | Standing is a critically important jurisdictional limitation, "an essential and unchanging part of

6 | the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560,

7 | 112 S.Ct. 2130 (1992). It is not subject to waiver; like subject matter jurisdiction generally, it must be

8 | considered by the federal courts even if the parties do not raise it. United States v. Hays, 515 U.S. 737,

9 | 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Plaintiffs bear the burden of establishing standing. Central

10 | Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir.2002).

11 | Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under

12 | Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure

13 | 12(b)(1), not Rule 12(b)(6). See, e.g., Bland v. Fessler, 88 F.3d 729, 732 n. 4 (9th Cir.1996) (citing

14 | Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542, 1544 n. 1 (9th Cir.1994)).

15 | Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and

16 | "Controversies." U.S. Const., Art. III, § 2. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157, 134

17 | S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014).   The doctrine of standing gives meaning to these

18 | constitutional limits by identify[ing] those disputes which are appropriately resolved through the judicial

19 | process. Id, citing Lujan, 504 U.S. at 560, 112 S.Ct. at 2130. The law of Article III standing, which is

20 | built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp

21 | the powers of the political branches. Susan B. Anthony List v. Driehaus, 573 U.S. at 157, 134 S. Ct. at

22 | 2341. The power of the Federal Judiciary may not be permitted to intrude upon the powers given to the

23 | other branches. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 ( 2016); See DaimlerChrysler Corp. v.

24 | Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854 (2006). The law of Article III standing ... serves to prevent the

25 | judicial process from being used to usurp the powers of the political branches. Spokeo, Inc. v. Robins,

26 | 136 S. Ct. at 1547 (2016).

27 | To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient

28 | "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the

1  injury "will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 573 U.S. at 157-

2  158, 134 S. Ct. at 2341 citing Lujan, supra, at 560–561, 112 S.Ct. 2130.

3      The party invoking federal jurisdiction bears the burden of establishing' standing." Susan B.

4  Anthony List v. Driehaus, 573 U.S. at 158, 134 S. Ct. at 2342. "[E]ach element must be supported in

5  the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner

6  and degree of evidence required at the successive stages of the litigation." Id. citing Lujan, supra, at 561,

7  112 S.Ct. 2130.

8      Injury in fact is the first and foremost of standing's three elements. See Spokeo, Inc. v. Robins,

9  136 S. Ct. at 1547 (2016). The injury-in-fact requirement helps to ensure that the plaintiff has a

10 "personal stake in the outcome of the controversy. See Susan B. Anthony List v. Driehaus, 573 U.S.

11 at 158, 134 S. Ct. at 2341 citing Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197 (1975). An injury

12 sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not

13 'conjectural' or 'hypothetical.' " Susan B. Anthony List v. Driehaus, 573 U.S. at 158, 134 S. Ct. at 2341

14 citing Lujan, supra, at 560, 112 S.Ct. 2130; Spokeo, Inc. v. Robins, 136 S. Ct. at 1548 (2016).

15     For an injury to be "particularized," it "must affect the plaintiff in a personal and individual

16 way." Spokeo, Inc. v. Robins, 136 S. Ct. at 1548 (2016). See Valley Forge Christian Coll. v. Americans

17 United for Separation of Church & State, Inc., 454 U.S. at 472, 102 S. Ct. at 758 (1982).

18     Particularization is necessary to establish injury in fact, but it is not sufficient. Spokeo, Inc. v.

19 Robins, 136 S. Ct. at 1548 (2016). An injury in fact must also be "concrete." Id. The U.S. Supreme

20 Court has made it clear time and time again that an injury in fact must be both concrete and

21 particularized. See Id. A "concrete" injury must be "de facto "; that is, it must actually exist. Id.

22     To establish standing, the Plaintiff must show that her injury is an "injury in fact," a sufficient

23 "causal connection between the injury and the conduct complained of," and a "likel[ihood]" that the

24 injury "will be redressed by a favorable decision." This she cannot do.

25     In her Complaint, the Plaintiff has failed to show an injury in fact. The Plaintiff is alleging that

26 because Nevada has legal brothels, it is causing her harm because it is exposing her and others to the

27 "dangers of sex trafficking." Her allegations are at most "conjectural" or "hypothetical," and certainly

28 do not satisfy Article III's requirement that an injury be "concrete and particularized." Although the

- 15 -

1 | Plaintiff suffered injury at the hands of "her trafficker" and possibly a brothel, the relief she is seeking
2 | in the instant action is not personal and individual. In other words, she is trying to say that Nevada's
3 | legal brothels are presently causing her harm by exposing her to the dangers of sex trafficking even
4 | though she has failed to properly allege that the danger is actual or imminent.

5 | In her Complaint, the Plaintiff alleges that she has been harmed by Nevada's statutes that allow
6 | for legalized prostitution in Nevada Counties with less than 700,000 people. However, from reading the
7 | Complaint, the harm done to the Plaintiff was by others unrelated to the Defendants, who violated the
8 | Federal Criminal Statutes. She has failed to allege specifically how Nevada legal brothel industry is
9 | causing her injury. It is patently clear that it was "her trafficker" that committed the crimes against her.
10 | The Plaintiff somehow tries to bootstrap the crimes committed against her by "her trafficker" to Nevada
11 | having legal prostitution. There is absolutely no nexus. If she ended up working in a legal brothel
12 | against her will, it was "her trafficker" and possibly the brothel that committed the criminal acts against
13 | her, not the State of Nevada nor its legislature. As stated, there are criminal statues in place that
14 | criminalize these types of actions and provide for fines and imprisonment for violations of these statutes.
15 | Just because others act in a criminal manner and violate these statutes, their actions cannot be imputed
16 | to Nevada nor its Legislature. In addition, there is no likelihood that the Plaintiff's perceived injury will
17 | be redressed by a favorable decision given that there are already criminal statutes in place guarding
18 | against trafficking in persons. By her own admission, the Plaintiff was trafficked all over the United
19 | States in violation of the Federal Criminal Statutes, prior to being brought to Nevada.

20 | Bearing in mind that the Plaintiff bears the burden of establishing' standing, it is more than
21 | evident the Plaintiff does not have the requisite standing to bring her action. Therefore, the Court should
22 | grant the Motion to Dismiss pursuant to FRCP 12(b)(1).

23 | **4.    The Plaintiff is Barred by the Applicable Statute of Limitations From Bringing Her Suit; Therefore, Her Complaint Should Be Dismissed Pursuant to FRCP 12(b)(1).**
24 |

25 | The Plaintiff's claims are barred by the statute of limitations. The Plaintiffs claims are brought
26 | pursuant to 42 U.S.C. § 1983. "Section 1983 does not contain its own statute of limitations." Butler v.
27 | Nat. Comm. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014). Federal courts therefore " 'apply
28 | the forum state's statute of limitations for personal injury actions, along with the forum state's law

1  regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with

2  federal law.' " Id. (quoting Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007). The

3  statute of limitations for filing a personal-injury action in Nevada is two years. NRS 11.190(4)(e).

4  Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which

5  is the basis of the action. TwoRivers v. Lewis, 14 F.3d 987, 991 (9th Cir. 1999) (citing Kimes v. Stone,

6  84 F.3d 1121, 1128 (9th Cir. 1996) ). Due-process violations are complete as soon as the complained-of

7  action occurs. Macri v. King County, 126 F.3d 1125, 1129 (9th Cir. 1997).

8      The Plaintiff admits in her complaint that she was prostituted across the country shortly after she

9  turned 18 and that it took her a decade to escape her trafficker. She further states that she is now 37

10  years old, living in Texas and has a six year old son and is the Executive Director of Valiant Hearts.

11  Therefore, it has been, at least, based on her own admissions, nine (9) years since Plaintiff got out of

12  the "lifestyle". As such, any claim that she may have had cannot be redressed by invalidating the statute

13  on which she complains. Moreover, any potential claim she may have had expired long ago. Therefore,

14  the Court should grant the Motion to Dismiss pursuant to FRCP 12(b)(1).

15  **C.   LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6).**

16      The court may dismiss a complaint for failing to state a claim upon which relief can be granted.

17  Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact

18  in the complaint are accepted as true and are construed in the light most favorable to the non-moving

19  party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to

20  dismiss, a complaint need not contain "detailed factual allegations," but merely asserting " 'labels and

21  conclusions' or 'a formulaic recitation of the elements of a cause of action' " is not sufficient. Ashcroft

22  v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

23  In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true,

24  to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that

25  the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation and internal quotation

26  marks omitted). In sum, at the motion to dismiss stage, "[t]he issue is not whether a plaintiff will

27  ultimately prevail but whether [he] is entitled to offer evidence to support the claims." Cervantes v. City

28  of San Diego, 5 F.3d 1273, 1274–75 (9th Cir. 1993). Dismissal is appropriate based either on the lack

1    of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.

2    Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

3        "As a general rule, a district court may not consider any material beyond the pleadings in ruling

4    on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation and

5    internal quotation marks omitted). If the district court relies on materials outside the pleadings submitted

6    by either party to the motion to dismiss, the motion must be treated as a Rule 56 motion for summary

7    judgment. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996); Fed. R. Civ. P. 12(d).  Where a

8    matter is considered under Rule 56, "[a]ll parties must be given a reasonable opportunity to present all

9    the material that is pertinent to the motion". Id.

10    **D.    THE PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION, BOTH OF WHICH
       ARE BASED UPON A VIOLATION OF § 1983, SHOULD BE DISMISSED PURSUANT
11     TO FRCP 12(b)(6).**

12        The Plaintiff in her First and Second Causes of Action is asserting violations of her Civil Rights

13    pursuant to Section 1983.  The gist of the Plaintiff's First Cause of Action pursuant to Section  1983 is

14    that Nevada has somehow disregarded Federal law by allowing legalized commercial prostitution in

15    Nevada, which in turn has "created a danger that has led to irreparable harm to Plaintiff and other

16    victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without

17    protections from the inherent dangers the federal law was enacted to protect."  The Plaintiff further

18    alleges that "she has suffered and continues to suffer actual, continual, and potential injury to her health

19    and safety."  Interestingly, this Cause of Action fails to note which Federal Law Nevada has allegedly

20    disregarded.  From the context of the rest of the Complaint, it appears the Plaintiff is alleging that

21    Nevada violated U.S.C. 18 § 2422(a) of the Mann Act, and the TVPA (22 U.S.C. §§ 7101-7114).  It also

22    appears from her pleading under this cause of action, that the Plaintiff is making a claim for damages;

23    however, she fails to specify any that she has incurred.

24        The gist of the Plaintiff's Second Cause of Action pursuant to Section 1983 is roughly the same

25    as her First Cause of Action.  The Plaintiff is alleging that Nevada has somehow "disregarded the United

26    States Code," and have somehow deprived her and other similarly situated "Jane Doe victims" of their

27    federal right provided to them under Sections 2422(a) and 7101-7114.  The Plaintiff is further alleging

28    that NRS 201.354(1) and NRS 244.345(8), and any County Ordinances enacted thereunder are

1 unconstitutional because they violate the Mann Act.   Interestingly, NRS 201.354 is a statute that
2 provides penalties for engaging in illegal prostitution.

3      Even assuming the allegations in her Complaint are true and construing them in the light most
4 favorable to her, the Plaintiff has failed to state a claim upon which relief can be granted.  She has failed
5 to proffer a cognizable legal theory or even plead sufficient facts to support a cognizable legal theory.[5]

6      As stated above, "[Section] 1983 'is not itself a source of substantive rights,' but merely provides
7 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. at 393-94;
8 Anderson v. Warner, 451 F.3d at 1067. The purpose of § 1983 is to deter state actors from using the
9 badge of their authority to deprive individuals of their federally guaranteed rights. McDade v. West, 223
10 F.3d at 1139; see Wyatt v. Cole, 504 U.S. at 161, 112 S.Ct. at (1992).  To state a claim under § 1983,
11 a plaintiff must allege that (1) the defendants acting under color of state law (2) deprived plaintiffs of
12 rights secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d at 1338; see
13 Anderson, 451 F.3d at 1067 citing West v. Atkins, 487 U.S. at 48; see Long v. Cty. Of Los Angeles, 442
14 F.3d at 1185. Section 1983 can provide a cause of action against persons acting under color of state law
15 who have violated rights guaranteed by federal statutes. See Gonzaga Univ. v. Doe, 536 U.S. at 279;
16 Blessing v. Freestone, 520 U.S. at 340-341; Cal. State Foster Parent Ass'n v.Wagner, 624 F.3d at 978-
17 79; Aloha Care v. Haw., Dep't of Human Servs., 572 F.3d at 745.  The Federal Statutes upon which the
18 Plaintiff is relying for her Section 1983 action are criminal statutes which provide for criminal fines and
19 or imprisonment.

20     **1.**    **The Plaintiff Cannot Rely on the Federal Criminal Statutes to Support her Section**
             **1983 Action; Therefore, the Court Should Grant the Motion to Dismiss the**
21              **Plaintiff's Complaint Pursuant to FRCP 12(b)(6).**

22      As stated above, Federal criminal statutes that provide for punishment by fine or imprisonment
23 do not create privately enforceable rights or give rise to civil liability.  See, e.g., Aldabe v. Aldabe, 616
24 F.2d at 1092 (finding no civil liability under criminal conspiracy statutes).  The fact that a federal statute
25 has been violated and some person harmed does not automatically give rise to a private right of action."

26 ————————————

27     [5] Several of the concepts set forth above pertaining to the Motion to Dismiss pursuant to
28 FRCP 12(b)(1) are the same as those being set forth here pertaining to the Motion to Dismiss
pursuant to FRCP 12(b)(6).

1 | Touche Ross & Co. v. Redington, 442 U.S. at 568. "Instead, the statute must either explicitly create a

2 | right of action or implicitly contain one ." Diaz v. Davis (In re Digimarc Corp. Derivative Litig.), 549

3 | F.3d 1223, 1230 (9th Cir.2008). See e.g., Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980)

4 | (holding that criminal statutes "provide no basis for civil liability"); see also Ellis v. City of San Diego,

5 | 176 F.3d 1183, 1189 (9th Cir.1999) (criminal statutes do not generally provide a private cause of action

6 | nor basis for civil liability).

7 |  Even couching her claims as a civil rights violations pursuant to Section 1983 does not save the

8 | Plaintiff's Complaint from dismissal. See Gomes v. City of Los Angeles, No. 218CV08245FMOMAA,

9 | 2018 WL 4945691, at *2 (C.D. Cal. Oct. 10, 2018) (Moreover, even giving the Complaint its most

10 | liberal reading and interpreting it as a civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983")

11 | would not save this claim because 18 U.S.C. § 242 provides no civil remedy). See Aldabe v. Aldabe,

12 | 616 F.2d at 1092 (Dismissal is appropriate because 18 U.S.C. § 242 is a criminal provision that provides

13 | "no basis for civil liability").[6]

14 |  In the instant case, there is no question that Sections 2422(a) and 7101-7114 are criminal

15 | statutes. There is no question that Sections 2422(a) and 7101-7114 provide for fines and imprisonment

16 | for violating their provisions. There is no question that Sections 2422(a) and 7101-7114 do not create

17 | specific enforceable rights or give rise to civil liability. Because they are criminal statutes and create

18 | no specific enforceable rights nor give rise to civil liability, dismissal is warranted. See Gomes v. City

19 | of Los Angeles, supra. Moreover, because they provide for fines and imprisonment for violating their

20 | provisions, they are not proper for a Section 1983 action. See

21 | Abrams, 544 U.S. at 121-22 (Where statutes contain provisions for criminal penalties, citizen suits,

22 | judicial review, or even administrative proceedings alone, the Supreme Court has found the remedial

23 | scheme sufficiently comprehensive to foreclose an independent § 1983 cause of action); see also

24 | Buckley, 66 F.3d at 191-92. Therefore, the Court should dismiss the Plaintiff's Complaint pursuant to

25 | FRCP 12(b)(6).

26 | . . . . .

27 |

28 |  [6] This case is being cited for purposes of analogy.

- 20 -

2.      **The Ninth Circuit has Recognized Nevada's Right to Legalize Prostitution; Therefore, the Court Should Grant the Motion to Dismiss the Plaintiff's Complaint Pursuant to FRCP 12(b)(6).**

In Coyote Pub., Inc. v. Miller, the Ninth Circuit stated:

> The first derives from the degree of disfavor in which prostitution is held in our society, as reflected in law. In this respect, prostitution is sui generis. Forty-nine of the fifty states today prohibit all sales of sexual services. The federal government acknowledges the link between prostitution and trafficking in women and children, a form of modern day slavery. See U.S. Department of State, The Link Between Prostitution and Sex Trafficking (November 24, 2004). **And federal law prohibits the transportation of persons in interstate or foreign commerce for the purpose of prostitution or other illegal sexual activity. White Slave Traffic Act, 36 Stat. 825, 18 U.S.C. § 2421-2124 (1910). Although Nevada has opted for partial legalization**, Nevada too has taken significant steps to limit prostitution, including the total ban on the practice in by far the largest population center, the permission to other counties to ban the practice, and the advertising restrictions here at issue. (Emphasis added).

Coyote Pub., Inc. v. Miller, 598 F.3d at 600–01. In Coyote, the Court also stated:

> Nevada's choice to pursue its state interests by regulating advertising rather than the alternative means of banning all prostitution directly is a unique one in this country, but not one without a well-developed policy basis: partial legalization and regulation serves Nevada's competing, substantial interests in preventing the spread of sexually transmitted disease and protecting sex workers from abuse.

Coyote Pub., Inc. v. Miller, 598 F.3d at 610.

The clear import is that the Ninth Circuit looked at 18 U.S.C. § 2421-2124 (1910) (which is part of Mann Act), and in the same paragraph said Nevada has opted for partial legalization. In other words, by mentioning Section 2422 and acknowledging that federal law prohibits the transportation of persons in interstate or foreign commerce for the purpose of prostitution or other illegal sexual activity , in conjunction with Nevada's partial legalization of prostitution, the 9th Circuit recognized Nevada's right to have legalized prostitution. In addition, by stating that partial legalization and regulation serves Nevada's competing, substantial interests in preventing the spread of sexually transmitted disease and protecting sex workers from abuse, and is based upon "well-developed policy," the 9th Circuit again recognized Nevada's right to have legalized prostitution. Because the Ninth Circuit has recognized Nevada's right to have legalized prostitution, the Plaintiff's allegations in her Complaint thus, have no merit. Therefore, the Court should dismiss the Plaintiff's Complaint pursuant to FRCP 12(b)(6).

. . . . .

. . . . .

- 21 -

3.    **Pursuant to the Tenth Amendment of the United States Constitution, Nevada Can Legalize Prostitution as a Valid Exercise of Its Police Powers; Therefore, the Court Should Grant the Motion to Dismiss the Plaintiff's Complaint Pursuant to FRCP 12(b)(6).**

The Tenth Amendment states, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.    The Tenth Amendment confirms, all legislative power not conferred on Congress by the Constitution is reserved for the States. Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1466, 200 L. Ed. 2d 854 (2018). Absent from the list of conferred powers is the power to issue direct orders to the governments of the States. Id. The anticommandeering doctrine that emerged in New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120, and Printz v. United States, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914, simply represents the recognition of this limitation. Id.

A State can legalize or criminalize prostitution as a valid exercise of its police powers under the Tenth Amendment. See Erotic Serv. Provider Legal Educ. & Research Project v. Gascon, 880 F.3d 450, 460 (9th Cir.), amended, 881 F.3d 792 (9th Cir. 2018) (The Court held that "the criminalization of prostitution is a valid exercise of [the State's] police power and hence, the State may criminalize prostitution in the interest of the health, safety, and welfare of its citizens under the Tenth Amendment). Accordingly, it is left to the political branches to fix the boundary between those human interactions governed by market exchange and those not so governed. Id citing Coyote Pub., Inc. v. Miller, 598 F.3d at 604. Banning the commodification of sex is a substantial policy goal that all states but Nevada have chosen to adopt. Id citing Coyote Pub., Inc. v. Miller, 598 F.3d at 600-601.

Clearly, if it falls under the purview of the State to criminalize prostitution. It then follows that if a State can criminalize prostitution, a State may legalize and regulate prostitution. Therefore, if the State of Nevada can legalize or criminalize prostitution as a valid exercise of its police powers under the Tenth Amendment, the Court is precluded from overruling the State of Nevada and its Legislature in their decision to legalize prostitution in some of Nevada's Counties. Therefore, the Court should dismiss the Plaintiff's Complaint pursuant to FRCP 12(b)(6).

. . . . .

- 22 -

1   **E.   THE PLAINTIFF'S THIRD CAUSE OF ACTION FOR DECLARATORY/INJUNCTIVE
2       RELIEF IS BASED UPON A FAULTY PREMISE AND SHOULD THEREFORE, BE
        DISMISSED PURSUANT TO FRCP 12(b)(6).[7]**

3          "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted

4   unless the movant, by a clear showing, carries the burden of persuasion.' " Lopez v. Brewer, 680 F.3d

5   1068, 1072 (9th Cir.2012) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)). "A

6   [movant] seeking a preliminary injunction must establish that he is likely to succeed on the merits, that

7   he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

8   tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council,

9   555 U.S. 7, 20 (2008).  An order enjoining the enforcement of state laws would alter the status quo and

10  thus qualifies as a mandatory injunction. Tracy Rifle & Pistol LLC v. Harris, 118 F.Supp.3d 1182, 1194

11  (E.D. Cal. 2015).  Plaintiff must establish that the law and facts clearly favor its position, not simply that

12  it is likely to succeed on its claims.  See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015).

13         In her Complaint, the Plaintiff is seeking to have the Court declare that Nevada's statutes

14  allowing for legalized prostitution are unconstitutional, and null and void as preempted by Federal law.

15  She is further seeking to have the Court enjoin Nevada and all of its political subdivisions from

16  implementing, enforcing, or putting into force and effect Nevada's laws on prostitution.  Lastly, she is

17  seeking an Order from the Court requiring Nevada to allocate state funds on an annual basis to aid

18  people seeking an exit from the sex trade.  The entire basis of the Plaintiff's Third Cause of Action for

19  Declaratory/Injunctive Relief is that Nevada's statutes legalizing prostitution are preempted by Sections

20  2422(a) and 7101-7114, all of which are criminal statutes.  To support her claim, the Plaintiff is alleging

21  that Nevada's statutes on prostitution is preempted by way of "conflict" with Federal law.  This is simply

22  not the case and is a faulty premise upon which to base a claim; therefore, the Court should dismiss this

23  cause of action pursuant to FRCP 12(b)(6).  As will be shown below, the Plaintiff is unlikely to succeed

24  on the merits and is not likely to suffer irreparable harm in the absence of preliminary relief.

25  . . . . .

26  . . . . .

27  _____

28         [7] Arguments in this vein include arguments against the Plaintiff's request for Declaratory Relief.

1.    **The Plaintiff Is Unlikely to Succeed on the Merits Because Nevada's Laws on Prostitution Are Not Preempted by the Federal Criminal Statutes.**

a.    **The Law on Preemption.**

The preemption doctrine stems from the Supremacy Clause. <u>Valle del Sol Inc. v. Whiting</u>, 732 F.3d 1006, 1022 (9th Cir. 2013). It is a "fundamental principle of the Constitution [ ] that Congress has the power to preempt state law." <u>Id</u>. citing <u>Crosby v. Nat'l Foreign Trade Council</u>, 530 U.S. 363, 372, 120 S.Ct. 2288, 2293 (2000).

Analysis of a preemption claim "must be guided by two cornerstones of [the Supreme Court's] jurisprudence. <u>Valle del Sol Inc. v. Whiting</u>, 732 F.3d at 1023. First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.' <u>Id</u>. Second, '[i]n all pre-emption cases, and particularly in those in which Congress has legislated ... **in a field which the states have traditionally occupied, ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress**.' " <u>Id</u>. citing <u>Wyeth v. Levine</u>, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). (Emphasis added). <u>See Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra</u>, 870 F.3d 1140, 1146 (9th Cir. 2017), <u>cert</u>. denied sub nom. <u>Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Becerra</u>, No. 17-1285, 2019 WL 113077 (U.S. Jan. 7, 2019) (Where the federal statute contains an express preemption clause, [the Court] must determine the substance and scope of the clause and in so doing, [the Court] assumes "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress"). "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption. <u>Id</u>. citing <u>Altria Grp., Inc. v. Good</u>, 555 U.S. 70, 77, 129 S.Ct. 538, 543 (2008).

There are "three classes of preemption": express preemption, field preemption and conflict preemption. <u>Valle del Sol Inc. v. Whiting</u>, 732 F.3d at 1022. The first, express preemption, arises when the text of a federal statute explicitly manifests Congress's intent to displace state law." <u>Id</u>.; <u>see also</u> <u>Arizona v. United States</u>, 567 U.S. 387, 399-400, 132 S.Ct. 2492, 2500–01(2012).

Under the second, field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive

- 24 -

1  governance." Id. citing Arizona, 132 S.Ct. at 2501.  Field preemption can be "inferred from a framework

2  of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there

3  is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of

4  state laws on the same subject.' "  Valle del Sol Inc. v. Whiting, 732 F.3d at 1022–23.

5  　　　　　Third, "even if Congress has not occupied the field, state law is naturally preempted to the extent

6  of any conflict with a federal statute." Valle del Sol Inc. v. Whiting, 732 F.3d at 1023 citing Crosby, 530

7  U.S. at 372, 120 S.Ct. 2288.  Conflict preemption, in turn, has two forms: impossibility and obstacle

8  preemption. Id.  Courts find impossibility preemption "where it is impossible for a private party to

9  comply with both state and federal law." Id. Courts will find obstacle preemption where the challenged

10  state law "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives

11  of Congress.' "  Valle del Sol Inc. v. Whiting, 732 F.3d at 1023 citing Arizona, 132 S.Ct. at 2501.

12  　　　　　The first two classes of preemption clearly do not apply.  Without question, Sections 2422(a) and

13  7101-7114 contain no express preemption clause.   Also, nowhere in the text of any of the

14  aforementioned Statutes does it expressly state that it is Congress's intent to displace Nevada or any

15  other State's law as it pertains to prostitution.  Thus, "express preemption" clearly does not apply.  In

16  addition, there is nothing that even remotely indicates that the States are precluded from regulating

17  conduct in a field that Congress, acting within its proper authority, has determined must be regulated by

18  its exclusive governance, specifically, prostitution.  Thus, "field preemption" clearly does not apply.

19  The question then becomes as alleged by the Plaintiff, whether the "conflict preemption" applies.  The

20  short answer is "no."

21  　　　　　　　　b.　　**Nevada's Statutes Pertaining to Prostitution Are Not Preempted by Federal**
**Law Because They Are Not in Conflict with Any Applicable Federal Law;**
22  　　　　　　　　　　**Therefore, the Court Should Grant the Motion to Dismiss Pursuant to**
**FRCP 12(b)(6).**
23

24  　　　　　　　　　　I.　　**Because Regulating Prostitution Is a Historic Police Power of the**
**States, Nevada's Statutes on Prostitution Are Not Superceded by**
25  　　　　　　　　　　　　**Sections 2422(a) and 7101-7114, Because There Is No Clear and**
**Manifest Purpose of Congress; Therefore, the Court Should Grant**
26  　　　　　　　　　　　　**the Motion to Dismiss Pursuant to FRCP 12(b)(6).**

27  　　　　　As stated above, conflict preemption, in turn, has two forms: impossibility and obstacle

28  preemption. Id.  Courts find impossibility preemption "where it is impossible for a private party to

- 25 -

1    comply with both state and federal law." Id. Courts will find obstacle preemption where the challenged

2    state law "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives

3    of Congress.' " Valle del Sol Inc. v. Whiting, 732 F.3d at 1023 citing Arizona, 132 S.Ct. at 2501.

4           Obstacle preemption, which is a form of conflict preemption, occurs "where the challenged state

5    law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

6    Congress." Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra, 870 F.3d at 1153 citing

7    Arizona, 567 U.S. at 399–400, 132 S.Ct. at 2500-01. See Crosby v. Nat'l Foreign Trade Council, 530

8    U.S. at 373, 120 S.Ct. 2294 ("What is a sufficient obstacle is a matter of judgment, to be informed by

9    examining the federal statute as a whole and identifying its purpose and intended effects...."). As with

10   express preemption, courts "assume that 'the historic police powers of the States' are not superseded

11   'unless that was the clear and manifest purpose of Congress.' " Ass'n des Éleveurs de Canards et d'Oies

12   du Quebec v. Becerra, 870 F.3d at 1153 citing Arizona, 567 U.S. at 400, 132 S.Ct. 2501.

13          At the outset, regulation of prostitution is a historic power of the States. See Erotic Serv.

14   Provider Legal Educ. & Research Project v. Gascon, 880 F.3d 450, 460 (9th Cir.), amended, 881 F.3d

15   792 (9th Cir. 2018) (The Court held that "the criminalization of prostitution is a valid exercise of [the

16   State's] police power and hence, the State may criminalize prostitution in the interest of the health,

17   safety, and welfare of its citizens under the Tenth Amendment). Accordingly, it is left to the political

18   branches to fix the boundary between those human interactions governed by market exchange and those

19   not so governed. Id citing Coyote Pub., Inc. v. Miller, 598 F.3d at 604. Banning the commodification

20   of sex is a substantial policy goal that all states but Nevada have chosen to adopt. Id citing Coyote Pub.,

21   Inc. v. Miller, 598 F.3d at 600-601. See United States v. Roselli, 432 F.2d 879, 893 FN 21 (9th Cir.

22   1970) (The Mann Act's legislative history establishes that Congress' purpose was not to control local

23   immorality but rather to deny the use of interstate facilities to a traffic viewed as evil).

24          Because regulation of prostitution is a historic police power of the States, it follows that

25   Nevada's statutes on prostitution are not superseded unless that was the clear and manifest purpose of

26   Congress. There is nothing present to even suggest that it was the clear and manifest purpose of

27   Congress to supercede Nevada's statutes on prostitution. See Coyote Pub., Inc. v. Miller, 598 F.3d at

28   600–01 (And federal law prohibits the transportation of persons in interstate or foreign commerce for

1  the purpose of prostitution or other illegal sexual activity. White Slave Traffic Act, 36 Stat. 825, 18

2  U.S.C. § 2421-2124 (1910). Although Nevada has opted for partial legalization, Nevada too has taken

3  significant steps to limit prostitution, including the total ban on the practice in by far the largest

4  population the permission to other counties to ban the practice, and the advertising restrictions here at

5  issue). The clear import is that the Ninth Circuit looked at 18 U.S.C. § 2421-2124 (1910) (which is part

6  of Mann Act), and in the same paragraph said Nevada has opted for partial legalization. In other words,

7  by mentioning Section 2422 and acknowledging that federal law prohibits the transportation of persons

8  in interstate or foreign commerce for the purpose of prostitution or other illegal sexual activity, in

9  conjunction with Nevada's partial legalization of prostitution, the 9th Circuit recognized Nevada's right

10  to have legalized prostitution. Because the 9th Circuit recognized Nevada's right to have legalized

11  prostitution, Nevada's law on prostitution are not preempted by the Criminal Statutes. Because

12  Nevada's law on prostitution are not preempted by the Criminal Statutes, there is no basis for the

13  Plaintiff's Cause of Action for Declaratory/Injunctive Relief. Therefore, the Court should dismiss the

14  Plaintiff's Complaint pursuant to FRCP 12(b)(6).

15        **ii.**    **Nevada's Statutes on Prostitution Do Not Stand as an Obstacle to**
**the Accomplishment and Execution of the Full Purposes and**
16                         **Objectives of Congress; Therefore, the Court Should Grant the**
**Motion to Dismiss Pursuant to FRCP 12(b)(1).**
17

18        The Federal Criminal Statutes upon which the Plaintiff is basing her claims are 18 U.S.C.A. §

19  2422(a) of the Mann Act, and 22 U.S.C. §§ 7101-7114 of the Trafficking Victims Protection Act

20  (hereinafter the "TVPA"). Both are Federal Criminal Statutes. Section 2422(a) states:

21              Whoever knowingly persuades, induces, entices, or coerces any individual to travel in
interstate or foreign commerce, or in any Territory or Possession of the United States,
22              **to engage in prostitution, or in any sexual activity for which any person can be**
**charged with a criminal offense**, or attempts to do so, shall be fined under this title or
23              imprisoned not more than 20 years, or both. (Emphasis added).

24        The purpose of Sections 7101-7114 of the TVPA is to combat trafficking in persons, a

25  contemporary manifestation of slavery whose victims are predominantly women and children, to ensure

26  just and **effective punishment of traffickers**, and to protect their victims. <u>See</u> Section 7101(a).

27  (Emphasis added)

28        The clear import of Sections 2422(a) and 7101-7114 is to combat illegal trafficking of persons.

1   This is not in conflict with Nevada laws on prostitution which merely allows for legal brothels in certain

2   Nevada counties.  Nevada statutes on prostitution certainly don't allow for trafficking of persons.

3   Moreover, Nevada has it own statute in effect that directly addresses trafficking and is similar to the

4   federal statutes.  See NRS 201.300 which states in pertinent part:

5

6

7

> 1. A person who without physical force or the immediate threat of physical force, induces an adult to unlawfully become a prostitute or to continue to engage in prostitution, or to enter any place within this State in which prostitution is practiced, encouraged or allowed for the purpose of sexual conduct or prostitution is guilty of pandering which is a category C felony and shall be punished as provided in NRS 193.130. This subsection does not apply to the customer of a prostitute.

8

9   Given that Nevada has a similar statute as the Federal Statutes that address trafficking, clearly, Nevada

10   laws on prostitution are not in conflict with the Federal Statutes.  Moreover, legal brothels in Nevada

11   can operate without violating the Federal Criminal Statutes.

12         In addition, it is assumed that the Plaintiff will focus on the "Whoever knowingly persuades,

13   induces, entices" language of Section 2422(a) to support her action and assert that anytime a legal

14   brothel talks to someone about working at a legal brothel, they are in violation of 2422(a).  Any assertion

15   of this type is a red herring.  The emphasized language of Section 2422(a) above, states: "to engage in

16   prostitution, or in any sexual activity for which any person can be charged with a criminal offense, . .

17   ."  The clear import of the emphasized language of Section 2422(a), especially the language stating, "for

18   which any person can be charged with a criminal offense," undeniably evinces an intent to criminalize

19   trafficking of persons to engage in prostitution where engaging in prostitution is a crime.[8]  Absent

20   coercion, Section 2422(a) would not apply to a legal brothel in Nevada.

21         Because Nevada's laws on prostitution are not in conflict with the Federal Criminal Statutes,

22   they are not preempted by the Criminal Statutes.  Because Nevada's law on prostitution are not

23   preempted by the Criminal Statutes, there is no basis for the Plaintiff's Cause of Action for

24   Declaratory/Injunctive Relief.  It is abundantly clear that Nevada's laws on prostitution are not in

25

26

27

28

[8] Under the rules of statutory construction, '[t]he plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results.'" United States v. Leyva, 282 F.3d 623, 625 (9th Cir.2002) (quoting United States v. Daas, 198 F.3d 1167, 1174 (9th Cir.1999)).

1  conflict with the Federal Criminal Statutes; Therefore, the Court should dismiss the Plaintiff's Complaint
2  pursuant to FRCP 12(b)(6).

3          **2.      The Plaintiff Is Unlikely to Suffer Irreparable Harm in the Absence of Preliminary**
           **Relief.**
4

5          "Speculative injury cannot be the basis for a finding of irreparable harm," In re Excel
6  Innovations, Inc., 502 F.3d 1086, 1098 (9th Cir. 2007). [W]here a movant fails to establish irreparable
7  harm, courts have denied the motion without considering the remaining three factors.  Skinvisible
8  Pharm., Inc. v. Sunless Beauty, Ltd., No. 2:11-CV-1591 JCM CWH, 2012 WL 1032549, at *2 (D. Nev.
9  Mar. 27, 2012); See, e.g., Reuters Ltd. v. United Press Intern., Inc., 903 F.2d 904, 907 (2d Cir.1990).
10 To establish irreparable harm for purposes of a preliminary injunction, a plaintiff must show some
11 "immediate threatened harm." Caribbean Marine Services Co., Inc. V. Baldrige, 844 F.2d 668, 674 (9th
12 Cir. 1988).  A threat of harm is not "imminent," if it is based upon remote possibilities or mere
13 speculation. Caribbean Marine Services Co. v. Baldridge, 844 F.2d 668, 675 (9th Cir.1988).

14         In the instant case, the Plaintiff's Complaint is only speculative and too remote.  Her only claim
15 of harm is that Nevada laws on prostitution have created a danger that has led to irreparable harm to the
16 Plaintiff and other victims of sex trafficking by exposing them to the dangers of sex trafficking and
17 prostitution without protections from the inherent danger the Federal Criminal Statutes were enacted to
18 prevent.  The Plaintiff lives in Texas and is alleging harm because Nevada has laws that allow for legal
19 prostitution.  Any harm she may suffer all the way in Texas is not only completely speculative, it is also
20 highly unlikely and far too remote.  Because the Plaintiff is not suffering irreparable harm, and
21 injunction simply cannot issue.  Therefore, the Court should dismiss the Plaintiff's Complaint pursuant
22 to FRCP 12(b)(6).

23         **3.      The Plaintiff's Request for Order from the Court Requiring Nevada to Allocate**
           **State Funds on an Annual Basis to Aid People Seeking an Exit from the Sex Trade**
24         **Is Without Merit.**

25         There is no law to which the Plaintiff can point that would allow the Court to compel the state
26 to allocate state funds on an annual basis to aid people seeking an exit from the sex trade.  Moreover,
27 Nevada already has a statute that creates a Contingency Account for Victims of Human Trafficking in
28 the State General Fund. See NRS 217.530.  Therefore, the Plaintiff's request is legally untenable.

- 29 -

**III.**
**CONCLUSION**

Based upon the foregoing, the Court lacks jurisdiction to consider the Plaintiff's action.  Even if the Court were to somehow determine there is jurisdiction to hear the Plaintiff's action, the Plaintiff has also failed to state a claim upon which relief can be granted. Therefore, the Plaintiff's Complaint should be dismissed pursuant to FRCP 12(b)(1) and or FRCP 12(b)(6).  In addition, the Court should award the Defendants-Interveners their attorney's fees and costs.

Respectfully submitted this _11th_ day of March, 2019.

GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar No. 10670
Email: jkp@fdlawlv.com
FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone:  (702) 307-9500
Facsimile: (702) 382-9452
*Attorneys for Defendants-Interveners*