JASON D. GUINASSO, ESQ. (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
500 Damonte Ranch Parkway, Suite 980
Reno, NV 89521
Telephone: (775) 853-8746
Facsimile: (775) 201-9611
jguinasso@hutchlegal.com
*Attorney for Plaintiffs Rebekah Charleston*
*Angela Delgado-Williams; and*
*Leah Albright-Byrd*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON; ANGELA DELGADO-WILLIAMS; and LEAH ALBRIGHT-BYRD;<br><br>     Plaintiffs,<br><br>vs.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA;<br><br>     Defendants. | Case No.: 3:19-cv-00107-MMD-WGC<br><br><br>**PLAINTIFFS' OPPOSITION TO CASH PROCESSING SERVICES, INC. AND LANCE GILMAN'S MOTION TO INTERVENE AS DEFENDANT**<br>**(ECF No. 11)** |

Plaintiffs Rebekah Charleston, Angela DelGado-Williams, and Leah Albright-Byrd, by and through their attorneys, JASON D. GUINASSO, ESQ., and the law offices of HUTCHISON & STEFFEN, PLLC, hereby oppose the March 11, 2019, "Motion to Intervene as Defendants" filed by Cash Processing Services, Inc., doing business as The World Famous

Mustang Ranch and Lance Gilman (hereinafter collectively referred to as "Proposed Intervenors" or "Gilman") (ECF No. 11).[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Gilman represents legalized prostitution interests, interests that are legal only in the State of Nevada. The State will be defending its laws, during which litigation there will be evidence about the lives of women dragged in the brutal world of prostitution in Nevada through sex trafficking. Gilman, by contrast, is motivated by increasing his already substantial net worth regardless of the human cost. Oblivious to the cost of human suffering, Gilman's motion, tellingly frames the issue around Gilman's "financial" interests. Gilman's interests are certainly adequately represented by the state. His motion for intervention as a matter of right should be denied for that reason alone. But his presence in the action will also potentially intimidate witnesses and be disruptive, through the influence he openly boasts of in his motion. His motion for permissive intervention should also be denied.

In the opening pages of his Motion to Intervene, Gilman gratuitously boasts of his purported successful business ventures. Gilman's tone-deaf braggadocio is absolutely irrelevant to the Complaint filed in this action. For purposes of this action, Mr. Gilman is nothing more than a common pimp, who brokers in the bodies of exploited women from all over the country and the world to fulfil the sexual appetites of men who travel into interstate

---

[1] Cash Processing Services, Inc. and Lance Gilman had an exhibit attached to its Motion to Intervene as Defendants that was purported to be a Motion to Dismiss. The Motion to Dismiss will not be addressed unless and until this Court directs otherwise.

and foreign commerce to Nevada to buy sexual access to women's bodies—a practice commonly referred to as prostitution.

Under the cover of Nevada's law legalizing prostitution in certain counties, pimps like Mr. Gilman and the brothel he operates, persuade, induce, and entice men and women to travel in interstate commerce to engage in prostitution by advertising and marketing outside the State of Nevada through hundreds of websites, social media accounts, and other mass media. **See Exhibit 1 at PLTFS0001-PLTFS0017 (Examples of Advertising and Marketing at Mr. Gilman's brothel)**. The State's creation of an intrastate commercialized prostitution market in which Mr. Gilman's brothel operates exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), conflict with and violate the intent of federal law expressed in 18 U.S.C. 2422(a) and 18 U.S.C. 1591 and otherwise perpetuate the harm federal law was enacted to redress and prevent.

As a consequence of the demand for the buying and selling of women for sex created by marketing efforts of Nevada brothels, like Mr. Gilman's, Nevada's illegal sex trade is estimated to be twice as large as other states and its commercial sex market, when adjusted for population, is by far the largest of any state. The State of Nevada has not only failed to enact and uphold federal law, but also allowed Nevadans and those sexually trafficked to Nevada to be exploited to become victims to this underregulated, exploitative industry, thus fostering the existence of a supply chain of organized sexual exploitation. Legal prostitution and sex trafficking are inextricably linked in Nevada as elsewhere in the world where prostitution is legal. Sex trafficking happens when and where there is a demand for prostitution. **See Exhibit 2 at PLTFS0018-PLTFS0066 (Seo-Young Cho, Axel Dreher, & Eric Neumeyer, Does Legalized Prostitution Increase Human Trafficking?, WORLD**

**DEVELOPMENT, at pg. 41, 67-82 (2012), https://eprints.lse.ac.uk/45198/1/Neumayer _Legalized_Prostitution_Increase_2012.pdf); See also Exhibit 3 at PLTFS0067-PLTFS0089 (Crysta N. Price, Terry D. Clark, & Julie Faller, Nevada's Online Commercial Sex Market, HUMAN TRAFFICKING INITIATIVE, CREIGHTON UNIVERSITY (2017), https://awakenreno.org/wp-content/uploads/2018/05/FINAL_Nevada_March2018.pdf); See also Exhibit 4 at PLTFS0090-PLTFS0097 (Melissa Farley, Trafficking for Prostitution: Making the Connections, AMERICAN PSYCHOLOGICAL ASSOCIATION (2007); See also Exhibit 5 at PLTFS0098-PLTFS0127 (Shapiro & Hughes, Decriminalized Prostitution: Impunity for Violence and Exploitation, UNIVERSITY OF RHODE ISLAND (2017). See also Exhibit 6 at PLTFS0128-PLTFS0180 (Research Report, Who Buys Sex? Understanding and Disrupting Illicit Market Demand, DEMAND ABOLITION (Nov., 2018), https://www.demandabolition.org/wp-content/uploads/2019/02/Who-Buys-Sex.pdf).**

On average, in jurisdictions with legal prostitution, there is a statistically significantly larger reported incidence of illegal sex trafficking. Id. As one expert put it, "wherever prostitution is legalized, trafficking to sex industry marketplaces in that region increases." Cho, *supra* at pg. 3 ¶2. The U.S. State Department's official government position is that, "prostitution is inherently harmful and dehumanizing and fuels trafficking in persons." **See Exhibit 7 at PLTFS0181-PLTFS0182 (U.S. DEPARTMENT OF STATE, TRAFFICKING IN PERSONS REPORT at pg. 27 (2007)).**[2] The links between legal and

---

[2] Case studies published by researchers Niklas Jakobsson and Andreas Kotsadam support a causal link between criminalizing buying sex and reduced human trafficking. Jakobsson and Kotsadam found that trafficking of persons for commercial sexual exploitation is least prevalent in countries where prostitution is illegal and most prevalent in countries where prostitution is legalized.

illegal prostitution in Nevada and the profound harms these cause all women are seen in other countries where legal prostitution exists such as the Netherlands and Australia. Wherever legal prostitution exists, sex trafficking increases. Farley, *supra* at page 3, ¶2-3.[3]

Nevada's legal brothels are estimated to generate more than seventy-five million dollars ($75,000,000) per year, while Las Vegas's illegal prostitution market alone is estimated to gross over five billion dollars ($5,000,000,000) per year. **See Exhibit 8 at PLTFS0183-PLTFS0188 (RONALD B. FLOWERS, PROSTITUTION IN THE DIGITAL AGE: SELLING SEX FROM THE SUITE TO THE STREET? at pg. 42-46 (Praeger 2011))**. Since the legalization of prostitution has been associated with increased sex trafficking, the most vulnerable people in the brothel industry are at increased risk for harm. Nevada's illegal sex trade is estimated to be twice as large as other states.[4] At least five thousand sixteen (5,016) individuals are sold for sex in an average month in Nevada. **See Exhibit 3 at Page 5, ¶ 2**. This circumstance is a direct result of the legal system used to induce, persuade, entice, and coerce individuals to enter into interstate and foreign commerce to engage in the purchase of human beings for sex. Legalized prostitution appears to have done nothing to stem victimization within the illicit sex trade; the data shows that prostituted persons in the illegal trade around licensed brothels are at a similar risk of having been trafficked as those in areas

---

[3] In 2005, a study focused on 11 European Union countries requested by the European Parliament's committee on Women's Rights and Gender Equality and performed by Transcrime found that stricter prostitution laws seem to produce fewer human trafficking victims.

[4] Melissa Farley, PROSTITUTION AND TRAFFICKING IN NEVADA: MAKING THE CONNECTIONS (Prostitution Research & Education, 2007).

without legal brothels. <u>**See** **Exhibit 3 Page 21, ¶4.**</u> Moreover, sex trafficking, as defined by the Trafficking Victims Protection Act, includes <u>all</u> pimping and sex buying.

In summary, Plaintiffs have asserted in their Complaint that, by disregarding federal law, the acts of Defendants in authorizing and perpetuating legalized commercial prostitution in the state, have directly and indirectly caused irreparable harm to Plaintiffs and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without protections from the inherent dangers federal law was enacted to prevent. Further, Plaintiffs submit that, because the brothel industry in Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to commit acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted and in violation of the Supremacy Clause of the U.S. Constitution.

Despite Mr. Gilman's pimping under the color of State law, this Court should deny Gilman's Motion to Intervene as of right because Defendants State of Nevada, et. al., will adequately protect Gilman's interests under the standards set forth by the U.S. Court of Appeals for the Ninth Circuit. The Ninth Circuit has taken an especially narrow view of allowing private citizens to intervene on the same side as governmental entities in defense of state and federal laws.

Fed. R. Civ. P. 24(a)(2)) provides that a court must permit a person who satisfies certain requirements to intervene as of right in a lawsuit "unless existing parties adequately represent [his] interest." In general, "if an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 892, 898 (9th Cir. 20ll); *accord Peruy v. Prop. I Official Proponents*, 587 F.3d 947, 95-51 (9th Cir. 2009) ("Where the

party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies."). This is especially true where an intervenor is seeking to join a lawsuit on the same side as a governmental entity. "In the absence of a **very compelling showing** to the contrary (emphasis added), it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quotation marks omitted and emphasis added); *accord Prete v. Bradbury*, 438 F3d 949,956 (9th Cir. 2006). An intervenor's failure to satisfy this requirement is fatal to [his] application." *Perry*, 587 F.3d at 950 (emphasis added).

Proposed Interveners are not entitled to intervention as of right under FRCP 24(a) because they have failed to establish that their interests are sufficiently different from the existing Defendants in defending the challenged constitutionally of Nevada state laws and related county ordinances. Because Gilman's objectives are ultimately the same as the current named Defendants, a presumption of adequacy of the State of Nevada's representation arises. In this regard, it is well-established that absent a very compelling showing to the contrary, the Nevada Attorney General is fully capable of adequately representing the current Defendants in their defense of Nevada's laws, including the specific constitutional and federal statutory challenges brought by Plaintiffs. Gilman has failed to make any compelling showing that Gilman's general interest in upholding state laws regulating prostitution cannot or will not be adequately represented by the Nevada Attorney General.

Finally, the Proposed Intervenors are not entitled to permissive intervention, which is rarely granted when the requirements for intervention as of right are not met. Only in an unusual case does a court, in its discretion, find reason to add additional parties to a lawsuit, given the attendant increase in expenditure of the parties' and the courts' time and resources,

particularly where, as here, the existing parties can already effectively litigate the dispute. The Court should deny the Motion to Intervene and allow the parties to proceed to resolution of Plaintiffs' claims in an efficient and expeditious manner. It should go without saying that the Proposed Intervenors can express their views in an amicus capacity.

Importantly, the Court should also consider the chilling impact of allowing Gilman into this case on Plaintiffs, potential additional plaintiffs, and potential witnesses that Plaintiffs may call. Pimps who own brothels in the State of Nevada, like Mr. Gilman, are known to use and abuse the legal system to intimidate and bully anyone who would call into question the harms caused by the prostitution industry and the sordid illegal underside it invariably attracts. Indeed, Mr. Gilman has a history of using aggressive tactics to personally attack law enforcement, journalists, attorneys, and those who have been prostituted. **See Exhibit 9 at PLTFS0189-PLTFS0190 (Ray Hager, *Tahoe-Reno Industrial Center's Gilman has threatened Laxalt, used extortion-like tactics against him, Laxalt consultant says,* NEVADA NEWSMAKERS (SEPT. 18, 2018), https://www.nevadanewsmakers.com/RayHagar/article.asp?ID=227)**. **See also Exhibit 10 at PLTFS0191-PLTFS0192 (Press Release, Mustang Ranch statement regarding fed. anti-brothel lawsuit (Feb. 25, 2019). See also Exhibit 11 at PLTFS0193-PLTFS0213 (Daniel Rothberg, *In the county that claims Mark Twain, an irrelevant online publisher faces off with a powerful developer who is a journalist,* THE NEVADA INDEPENDENT (MAR. 17, 2019, 2:10A.M.), https://thenevadaindependent.com/article/in-the-county-that-claims-mark-twain-an-irreverent-online-publisher-faces-off-with-a-powerful-developer-over-who-is-a-journalist). See also Exhibit 12 at PLTFS0214-PLTFS0217 (Dennis Myers, *Shield?,* RENO NEWS & REVIEW (MAR. 14, 2019), https://www.newsreview.com/reno/shield/content?oid=27838696). See also Exhibit 13 at**

**PLTFS0218-PLTFS0223 (Marcella Corona, *Nevada judge rules online journalist must reveal sources, not protected by media shield,* Reno Gazette Journal (Mar. 7, 2019, 5:49p.m.), https://www.rgj.com/story/news/2019/03/07/nevada-judge-rules-online-sites-not-protected-media-shield-law/3091926002/).**

Just as common street pimps use fear and intimidation of their powerful position over those who would oppose them, Proposed Interveners are using their powerful position and considerable resources to send a message to Plaintiffs, other potential Plaintiffs, and would-be witnesses that any opposition to the Nevada brothel industry and the illegal sex trafficking that the industry invites to Nevada will be opposed with every and all the political, legal, and financial resources at the disposal of the Proposed Intervenors.

## II.    BACKGROUND

On February 25, 2019, Plaintiff REBEKAH CHARLESTON, a victim of sex trafficking who was trafficked through Nevada's legal brothel system, filed this present lawsuit against the STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA.  This lawsuit seeks an order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null, and void as preempted by federal law; and, a preliminary and permanent injunction be issued prohibiting the State of Nevada and all of its political subdivisions from continuing to implement, enforce, or put into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8). Additionally, this law suit also requests an order for the State to create and fund a "Nevada Sex Trade Exit Fund" to provide mental health services, rent assistance, job training, scholarships, and funding for medical treatments for women prostituted through Nevada's legal brothels.  Plaintiffs specifically argue that, "The

State's creation of an intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), are in violation of and direct conflict with U.S.C. 18 § 2422(a) (2018)."

Plaintiff Charleston was trafficked to Nevada and sent by her trafficker to "work" in a Nevada brothel. While in the brothel, Plaintiff Charleston was not permitted to turn down a sex buyer, was a victim of serial rape for profit, and suffered multiple violent rapes and assaults. Any money not taken by the brothel owners was surrendered to her trafficker. During the ten years Ms. Charleston was sexually exploited, mostly in Nevada, Ms. Charleston was also prostituted at multiple legal escort agencies in Las Vegas. Escort agencies in Las Vegas facilitate illegal prostitution to meet the high demand of people traveling to Nevada to purchase sex, most of whom incorrectly believe it is legal everywhere in the state. Legal escort agencies in Las Vegas are fronts for sex trafficking rings to operate. Las Vegas is a well-known destination for people who are in the market to buy women for sex. The advertising and marketing from legal brothels in places like Nye County and Lyon County persuade, induce and entice people to travel in from across the country and all over the world to purchase prostituted persons in Nevada.

Plaintiff Charleston was sexually trafficked for more than ten (10) years before she finally escaped when federal authorities became involved. Plaintiff Charleston argues in her complaint that the practice of legalized prostitution in Nevada is regressive, oppressive, and has predatory dependence on economically vulnerable persons. She is asking the Court to redress the harms inflicted upon her and countless others, and to put an end to the purported the legal loopholes created by the conflict between federal and state laws allowing traffickers to profit from the exploitation and industrialization of women's bodies.

As a result of the media attention that arose from Plaintiff Charleston initiating her lawsuit, dozens of women came forward because they had also been trafficked in Nevada. To date, two of these women have joined in this present lawsuit as of March 18, 2019.

Plaintiff ANGELA DELGADO-WILLIAMS, was sex trafficked through a sex trafficking ring guised as a legal escort service. While a victim of sex trafficking, Ms. Delgado-Williams was sent by her trafficker from Las Vegas, Nevada, to large cities all over the nation such as Chicago, Illinois and Boston, Massachusetts, and was sold for sex. In dealing with sex buyers in Las Vegas, most of the sex buyers incorrectly believed that prostitution was legal in all of Nevada, and the escort service took advantage of this misconception. Ms. Delgado-Williams most frequently interacted with sex buyers who traveled to Nevada for the sole purpose of purchasing women for sex, whether it was for a "newly divorced party," a "bachelor "party," or a corporate CEO wishing to privately cheat on his wife, the sex buyers traveled across state lines to purchase sex from victims of sex trafficking. Any money Ms. Delgado-Williams received from sex buyers was sent to her trafficker. The sex trafficking ring guised as a legal escort service was successfully and strategically planted in Las Vegas, Nevada to intercept prostitution tourists planning to travel from Las Vegas, Nevada to the near city of Pahrump, Nevada or Crystal, Nevada where the closest legal brothels were located.

Plaintiff, LEAH ALBRIGHT-BYRD, who is a victim of sex trafficking was trafficked through Nevada's illegal sex trade. Ms. Albright-Byrd was the young age of 14 when she became a victim of sex trafficking. Ms. Albright-Byrd was exploited by her traffickers and was trafficked from the Bay Area in California to Reno and Las Vegas to make money off the prostitution tourism demand in Nevada. Ms. Albright-Byrd most frequently witnessed sex buyers have the misconception that prostitution was legal in Reno and Las Vegas, Nevada.

Notably, Ms. Albright-Byrd was under the gross misconception that prostitution and sex trafficking was legal in Nevada. Nevada was a regular location for Ms. Albright-Byrd to be sex trafficked. No matter where else her traffickers would take her, they would always return to Nevada to sell Ms. Albright-Byrd and others similarly situated to her because Nevada is the state where there was and is the greatest demand for prostitution whether legal or illegal.

Ms. Charleston, Ms. Delgado-Williams and Ms. Albright-Byrd have been irreparably harmed. By disregarding federal law, the acts of Defendants State of Nevada, et al., including, but not limited to, authorizing a legalized commercial prostitution market to operate in the State, have created the danger that has led to the irreparable harm suffered by the Plaintiffs and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution (i.e., serial rape, sexual servitude, sexual and physical assault, psychological trauma, bodily injury, and risk of sexually transmitted diseases) without protections from the inherent dangers federal law was enacted to prevent. Further, Plaintiffs submit that, because the brothel industry in Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to buy people for acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted and in violation of the Supremacy Clause of the U.S. Constitution.

### III.   ARGUMENT

Proposed Intervenors have failed to establish that they are entitled to intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). Therefore, the Court should deny the Motion to Intervene and allow the parties to proceed to resolution of Plaintiffs' claims in an efficient and expeditious manner, without allowing Proposed Intervenors business interests to enter into the

lawsuit and potentially intimidate and harass Plaintiffs, potential additional plaintiffs, and witnesses.

**A. <u>Cash Processing Services, Inc. and Lance Gilman are Not Entitled to Intervention as of Right</u>**

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), the movant must claim "an interest relating to the property or transaction that is the subject of the action, and [that the movant] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In the Ninth Circuit, a party seeking to intervene as of right under Rule 24(a)(2) must meet four requirements: (1) the movant must timely move to intervene; (2) the movant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the movant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), as amended (May 13, 2003). "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted). Failure to satisfy any one of the requirements is fatal to the application. <u>See California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency</u>, 792 F.2d 779, 781 (9th Cir.1986).

Here, the Court should not grant Cash Processing Services, Inc. and Lance Gilman's request to intervene herein because their alleged interests are adequately represented by existing acting government Defendants. The "most important factor" to determine whether a proposed intervenor is adequately represented by a present party to the action is "how the

[intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citations omitted). Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Id*. (citing *LULAC*, 131 F.3d at 1305).

Despite the Proposed Intervenors bald assertion that they have "more narrow, parochial interests" than the existing government Defendants, even "interpret[ing] the requirements broadly in favor of intervention," *Donnelly*, 159 F.3d at 409 (citation omitted), it is clear that their "ultimate objective" and the "ultimate objective" of the State of Nevada, et. al., is identical, to wit, to defend the legality and constitutionality Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the related ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels under Nevada law. The Proposed Intervenors' interest in defending the constitutionality of Nevada's laws creating an interstate and foreign prostitution market is not "meaningfully distinct" from the State's interest in defending the constitutionality of its statutes. Because Gilman's objectives are ultimately the same as the current named Defendants, a presumption of adequacy of the State of Nevada's representation applies.

In general, "if an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 892, 898 (9th Cir. 20ll); accord *Peruy v. Prop. I Official Proponents*, 587 F.3d 947, 95-51 (9th Cir. 2009) ("Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies."). This is especially true where an intervenor is seeking to join a lawsuit on the same side as a governmental entity. "In the absence of a very compelling showing to the contrary,

it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." Arakaki, 324 F.3d at 1086; accord *Prete v. Bradbury*, 438 F3d 949,956 (9th Cir. 2006).

Here, the Nevada Attorney General is fully capable of adequately representing the current Defendants in their defense of Nevada's laws, including with respect to the specific constitutional and federal statutory challenges brought by Plaintiffs. Proposed Intervenors have failed to make any compelling showing that their general interest in upholding state laws regulating prostitution cannot or will not be adequately represented by the Nevada Attorney General. Undoubtedly, the State of Nevada is capable, willing and able to make all of a proposed intervenor's arguments. Further, the Proposed Intervenors have failed to show that they will offer any necessary arguments and defenses that the State of Nevada would neglect. Even taking all of the Gilman's nonconclusory allegations as true, the State is abundantly capable and more than likely willing to make the Proposed Intervenors' arguments in support of the constitutionality of Nevada's pimp and brothel laws and will not neglect any elements necessary to the defense related thereto.

**B. <u>Cash Processing Services, Inc. and Lance Gilman Are Not Entitled to Permissive Intervention and Failed to Make any Compelling Showing to the Contrary</u>**

Federal Rule of Civil Procedure 24(b)(1)(B) states that on timely motion, the district court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. The applicant must show: (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). Even if the applicant satisfies the threshold

requirements, however, courts retain authority and discretion to deny permissive intervention. *Id*. In exercising its discretion to consider permissive intervention, the "court should consider whether intervention will unduly delay or prejudice the original parties, whether the applicant's interests are adequately represented by existing parties, and whether judicial economy favors intervention." *PEST Comm. v. Miller,* 648 F. Supp. 2d 1202, 1214 (D. Nev. 2009) (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989)).

Here, the Court should not grant Proposed Intervenors' request to intervene herein because their alleged interests are adequately represented by existing parties and intervention will likely cause delay and undue prejudice.

### 1. Cash Processing Services, Inc. and Lance Gilman Interests Are Adequately Represented.

Permissive intervention, like intervention of right, should be denied when the proposed intervenor's interests are adequately represented by existing parties. *PEST Committee*, 648 F. Supp. 2d at 1214; Venegas, 867 F.2d at 530 (quoting *State of Cal. v. Tahoe Regional Planning Agency*, 792 F.2d 775, 779 (9th Cir. 1986)) ("[A] court in deciding whether to permit intervention should evaluate whether the movant's interests are adequately represented by existing parties."). As set forth in detail above, Cash Processing Services, Inc., and Lance Gilman have not shown that the current Defendants will not adequately represent their interests. To the contrary, because the Nevada Attorney General will be representing an existing party in defense of the constitutionality of Nevada law, it is presumed that Cash Processing Services, Inc. and Lance Gilman's interests in that identical objective are adequately represented. Cash Processing Services, Inc., and Lance Gilman have not carried their burden of overcoming this presumption. Therefore, this Court should deny Cash Processing Services, Inc., and Lance Gilman's request for permissive intervention.

## 2.    Intervention Will Cause Undue Delay and Prejudice.

Even if threshold requirements were met, courts may deny permissive intervention if there is possible prejudice to the original parties to the litigation and if judicial economy will not be served by permitting the requested intervention. See Moore's Fed. Practice, 3d Ed., Sec. 24.10(1) (2003). Because the Nevada Attorney General's office adequately represents the general interests of Cash Processing Services, Inc., and Lance Gilman in this action, their intervention and participation will serve no purpose other than to raise extraneous issues that will increase the workload and costs for the Plaintiffs and the Court, potentially prejudicing Plaintiffs and delaying resolution of this litigation. Because Cash Processing Services, Inc., and Lance Gilman's intervention would adversely impact judicial economy and unduly delay this litigation, its request should be denied. *See PEST Comm.*, 648 F. Supp. 2d at 1214 (denying permissive intervention where adding intervenors "as parties would unnecessarily encumber the litigation").

Moreover, allowing Cash Processing Services, Inc., and Lance Gilman intervention will more than likely have a chilling impact on Plaintiffs, potential additional plaintiffs, and potential witnesses that Plaintiffs may call. Pimps who own brothels in the State of Nevada, like Mr. Gilman, are known to use their power, money, and the legal system to intimidate and bully anyone who would call into question the harms caused by the brothel industry and actors within that industry. This very real concern is clearly underscored and illustrated by Cash Processing Services, Inc., and Lance Gilman's lengthy description of the money, political power, and influence they claimed to have in their Motion to Intervene. . Indeed, Mr. Gilman has a history of using his money, political power, and influence to attack law enforcement, journalists, attorneys. and those who have been prostituted. **See Exhibit 7. See also Exhibit 8.  See also Exhibit 9**. **See also  Exhibit 10**. **See also Exhibit 11**.

Just as common street pimps use the fear and intimidation of their powerful position over those who would oppose them, Proposed Intervenors appear to be using their powerful position and considerable resources to send a more subtle message to Plaintiffs, and would-be witnesses that any opposition to the Nevada brothel industry and the illegal sex trafficking it attracts will be opposed with all the political, legal and financial resources Gilman's disposal. Therefore, Plaintiffs respectively submit that this Court should be mindful of this power dynamic and deny permissive intervention.

## IV. <u>CONCLUSION</u>

For the reasons stated above, this Court should deny Cash Processing Services, Inc. and Lance Gilman's Motion to Intervene.

DATED this 28th day of March, 2019.     HUTCHISON & STEFFEN, PLLC

By: /s/ *Jason D. Guinasso*
JASON D. GUINASSO, ESQ. (SBN# 8478)
*Attorney for Rebekah Charleston*

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

Gus W Flangas    gwf@fdlawlv.com, cjm@fdlawlv.com, lmr@fdlawlv.com

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, I caused the foregoing to be served by U.S. Mail on all parties in said action by placing a true and correct copy thereof enclosed in a sealed envelope designated for outgoing mail, addressed as set forth below:

| | |
|---|---|
| Steve Sisolak Governor of the State of Nevada<br>c/o State Capitol Building<br>101 N. Carson St.<br>Carson City, NV 89701 | State of Nevada<br>Steve Sisolak, Governor of State of Nevada<br>Legislature of the State of Nevada<br>c/o Nevada Attorney General<br>100 N. Carson St.<br>Carson City, NV 89701 |
| Legislature of the State of Nevada<br>c/o Brenda J. Erdoes, Legislative Counsel<br>Bureau- Legal Division<br>Legislative Building<br>401 S. Carson St.<br>Carson City, NV 89701 | Cash Processing Services, Inc. and Lance Gilman<br>Gus Flangas, Esq.<br>Jessica K. Peterson, Esq.<br>Flangas Dalacas Law Group<br>3275 South Jones Blvd., Suite 105<br>Las Vegas, NV 89146 |

Dated this        March 28, 2019.

/s/ A. Otutaha
Employee of Hutchison & Steffen, PLLC

**List of Exhibits**

**SEE APPENDIX TO PLAINTIFFS' OPPOSITION TO CASH PROCESSING SERVICES, INC. AND LANCE GILMAN'S MOTION TO INTERVENE AS DEFENDANTS**

| Description | Volume Number | Bates Range |
|---|---|---|
| Exhibit 1-Examples of Advertising and Marketing at Mr. Gilman's brothel | I | PLTFS0001-PLTFS0017 |
| Exhibit 2-Seo-Young Cho, Axel Dreher, & Eric Neumeyer, Does Legalized Prostitution Increase Human Trafficking?, WORLD DEVELOPMENT, at pg. 41, 67-82 (2012), https://eprints.lse.ac.uk/45198/1/Neumayer_Legalized_Prostitution_Increase_2012.pdf | I | PLTFS0018-PLTFS0066 |
| Exhibit 3- Crysta N. Price, Terry D. Clark, & Julie Faller, Nevada's Online Commercial Sex Market, HUMAN TRAFFICKING INITIATIVE, CREIGHTON UNIVERSITY (2017), https://awakenreno.org/wp-content/uploads/2018/05/FINAL_Nevada_March2018.pdf | I | PLTFS0067-PLTFS0089 |
| Exhibit 4-Melissa Farley, Trafficking for Prostitution: Making the Connections, AMERICAN PSYCHOLOGICAL ASSOCIATION (2007) | I | PLTFS0090-PLTFS0097 |
| Exhibit 5-Shapiro & Hughes, Decriminalized Prostitution: Impunity for Violence and Exploitation, UNIVERSITY OF RHODE ISLAND (2017) | I | PLTFS0098-PLTFS0127 |
| Exhibit 6-Research Report, Who Buys Sex? Understanding and Disrupting Illicit Market Demand, Demand Abolition (Nov., 2018) | I | PLTFS0128-PLTFS0180 |
| Exhibit 7-U.S. DEPARTMENT OF STATE, TRAFFICKING IN PERSONS REPORT at pg. 27 (2007 | I | PLTFS0181-PLTFS0182 |
| EXHIBIT 8-RONALD B. FLOWERS, PROSTITUTION IN THE DIGITAL AGE: SELLING SEX FROM THE SUITE TO THE STREET? at pg. 42-46 (Praeger 2011) | I | PLTFS0183-PLTFS0188 |
| Exhibit 9-Ray Hager, *Tahoe-Reno Industrial Center's Gilman has threatened Laxalt, used extortion-like tactics against him, Laxalt consultant says,* NEVADA NEWSMAKERS (SEPT. 18, 2018) | I | PLTFS0189-PLTFS0190 |
| Exhibit 10-Press Release, Mustang Ranch statement regarding fed. anti-brothel lawsuit (Feb. 25, 2019) | I | PLTFS0191-PLTFS0192 |

| | | |
|---|---|---|
| Exhibit 11-Daniel Rothberg, *In the county that claims Mark Twain, an irrelevant online publisher faces off with a powerful developer who is a journalist,* THE NEVADA INDEPENDENT (MAR. 17, 2019, 2:10A.M.) | **I** | PLTFS0193-PLTFS0213 |
| Exhibit 12-Dennis Myers, *Shield?*, RENO NEWS & REVIEW (MAR. 14, 2019) | **I** | PLTFS0214-PLTFS0217 |
| Exhibit 13-Marcella Corona, *Nevada judge rules online journalist must reveal sources, not protected by media shield,* RENO GAZETTE JOURNAL (MAR. 7, 2019, 5:49P.M.) | **I** | PLTFS0218-PLTFS0223 |