AARON D. FORD
  Attorney General
GREGORY L. ZUNINO (Bar No. 4805)
  Deputy Solicitor General
100 North Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1237
Fax: (775) 684-1108
Email: GZunino@ag.nv.gov

*Attorneys for Defendants*
*State of Nevada and Governor Steve Sisolak*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REBEKAH CHARLESTON,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA.,<br><br>    Defendants. | Case No. 3:19-cv-00107-MMD-WGC<br><br>**MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**(DOC 12)** |

Defendants, STATE OF NEVADA and STEVE SISOLAK, in his capacity as Governor of the State of Nevada (the State), through counsel, AARON D. FORD, Attorney General, and GREGORY L. ZUNINO, Deputy Solicitor General, move to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

DATED: April 3, 2019.

                              AARON D. FORD
                              Attorney General

                              By:/s/ Gregory L. Zunino
                                GREGORY L. ZUNINO
                                Deputy Solicitor General, (Bar No. 4805)
                                100 N. Carson Street
                                Carson City, Nevada 89701
                                (775) 684-1237
                                GZunino@ag.nv.gov
                                *Attorneys for Defendant*
                                *State of Nevada, Steve Sisolak*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In a bid to draw this Court into a policy debate about the merits of legalized prostitution, Plaintiffs' counsel has filed a lawsuit against the State of Nevada and its Governor, the Honorable Steve Sisolak, who has been sued in his official capacity. The alleged grounds for the suit are 42 U.S.C. § 1983; the federal Mann Act, codified at 18 U.S.C. §§ 2421–2424 (Mann Act); the Victims of Trafficking and Violence Protection Act of 2000, codified at 22 U.S.C. §§ 7101–7114 (TVPA); and the Supremacy Clause of the U.S. Constitution.

If Congress desired to criminalize prostitution, it could easily do so. But it has not. Lacking express language from either the Mann Act or the TVPA to support their attempt to ban brothels, Plaintiffs' complaint relies on a nebulous theory of Congressional intent and conflict preemption. There is no conflict, however. The illegal conduct alleged by Plaintiffs is illegal under both Nevada and federal laws that criminalize sex trafficking.

Plaintiffs' three claims for relief also fail for the following reasons: (1) under Federal Rule of Civil Procedure 12(b)(1), because they are not justiciable; (2) under the Eleventh Amendment to the U.S. Constitution, because the State is immune from suit; and (3) under Rule 12(b)(6), because Nevada law does not stand as an obstacle to Congress' purpose in either the Mann Act or the TVPA.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs are Rebekah Charleston, Angela Delgado-Williams, and Leah Albright-Byrd. ECF No. 12 at ¶¶4-6. Defendants are the State of Nevada, the Nevada Legislature, and Govenor Steve Sisolak, in his official capacity. *Id.* at ¶¶7-9. Plaintiffs pled causes of action for "state created danger" in violation of the Fourteenth Amendment under 42 USC 1983, "deprivation of federal rights" in violation of the Fourteenth Amendment under 42 USC 1983, and "declaratory/injunctive" relief because they believe Nevada Revised Statutes 201.354(1) and 244.345(8) are preempted by the federal Mann Act and Trafficking Victims Protection Act. *Id.* at pp. 35-36.

### A. Named Plaintiffs Make No Allegations of Imminent Injury.

#### 1. Rebekah Charleston

Charleston is a resident of Texas. *Id*. at ¶4. She alleges that a private individual, described as a "sex trafficker," caused her through coercion, force, and threats of force to work at a brothel located in Nevada. *Id*. at ¶¶77-78. Charleston then alleges her trafficker moved her to Las Vegas where she was forced to work in an illegal sex trading organization. *Id*. at ¶¶84-86. Charleston alleges she was a victim of sex trafficking by a private individual for 10 years, but she then escaped "when federal authorities became involved." *Id*. at ¶88.

#### 2. Angela Delgado-Williams

Delgado-Williams is a resident of Texas. *Id*. at ¶5. She alleges that several private individuals described as sex traffickers compelled her to engage in sexual acts for money through coercion, force, and threats of force. *See e.g. Id*. at ¶¶107-08, 127, 129, and 160. Unlike Ms. Charleston, Ms. Delgado-Williams only appears to have participated in illegal prostitution in Houston, Dallas, Chicago, Los Angeles, Boston, and Las Vegas. *Id*. at ¶¶92-110, 141, and 149, 156, and 160-65.

#### 3. Leah Albright-Byrd

Albright-Byrd is a resident of Texas. *Id*. at ¶6. She alleges that a private individual caused her to engage in illegal prostitution through coercion, force, and threats of force in Reno, Nevada. *Id*. at ¶¶182-85. Ms. Albright-Byrd then alleges she was coerced to work illegally in Las Vegas and cities in California. *Id*. at ¶¶186-94. Ms. Albright-Boyd alleges she escaped from her sex trafficker many years ago. *Id*. ¶¶207-08.

### B. Federal Laws Criminalizes Sex Trafficking, but Allows States to Decide Whether Prostitution Should Be Criminalized.

Plaintiffs cite to 3 federal statutes in their amended complaint. These statutes are the Mann Act (18 USC §2422(a)), Victims of Trafficking and Violation Protection Act of 2000 (22 USC §§7101-7114), and 18 USC §1591. ECF No. 12 at pp. 4-5. These are federal laws that outlaw sex trafficking.

/ / /

The section of the Mann Act cited by Plaintiffs provides as follows:

> (a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 USC §2422(a). The Mann Act is not inconsistent with Nevada law, since it only applies to conduct "for which any person can be charged with a criminal offense." *Id*.

Plaintiffs do not cite any particular provision of the TVPA, but rather the entirety of that act. ECF No. 12 at ¶14. The TVPA, generally, is system of federal laws that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *U.S. v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) (citing 22 USC §7101(b)(1) and 7101(b)(2), (4), (9), (11)).

Plainiffs also cite to another federal statute, 18 USC §1591. This statute criminalizes sex trafficking of children and using "force, fraud, or coercion" to cause a victim to engage in a commercial sex act. *U.S. v. Todd*, 627 F.3d 329, 336 (9th Cir. 2010) (Smith, J., concurring).

### C. Nevada Takes an Agnostic Approach to Legal Prostitution.

Plaintiffs allege that Nevada created a market for sex trafficking to flourish because Nevada affirmatively authorizes prostitution. Plaintiffs further allege that the Nevada legislature "authoriz[ed] prostitution or solilicitation for prostitution in Nevada in designated brothels licensed by county." *Id*. at ¶23 (citing NRS 244.345(8)). Plaintiff then concludes that "[Nevada] creat[ed]…an intrastate commercialized prostitution market…" ECF No. 12 at ¶25. Nevada, however, like the federal government, takes no affirmative position on the criminality of prostitution. It leaves that decision up to counties whose population meets certain requirements.

Plaintiffs' allegations are not consistent with the text of the relevant Nevada law, Nevada Revised Statute 244.345(8), which provides:

///

> In a county whose population is 700,000 or more, the license board shall not grant any license to a petitioner for the purpose of operating a house of ill fame or repute or any other business employing any person for the purpose of prostitution.

NRS §244.345(8). Plaintiffs also cite to Nevada Revised Statute 201.354(1). *Id*. at ¶25. This criminal statute provides that "[i]t is unlawful for any person to engage in prostitution or solicitation therefore, except in a licensed house of prostitution." NRS §201.354(1).

Nevada law, like federal law, prohbits sex trafficking anywhere in the state. Nevada Revised Statute 201.300(2)(a)(1) criminalizes "induc[ing], recruit[ing], harbor[ing], transport[ing], obtain[ing], maintain[ing] a child to engage in prostition" in "any place" within Nevada. *See* NRS §201.300(2)(a)(1). Nevada Revised Statute 201.300(2)(a)(2) criminalizes causing "a person" to engage in prostitution "in any place" by means of "threats, violence, force, intimidation, fraud, duress, or coercion." NRS 201.300(2)(a)(2). Further, another section of Chapter 201 criminalizes faciliting sex trafficking. NRS §201.301.

In sum, Nevada outlaws the very activity that is the subject of Plaintiffs' amended complaint: sex trafficking.

**D. Plaintiffs' Exhibits Support Their Policy Argument to Ban LegalizedProstitution, but They Do Not Show Wrongdoing by the State.**

Plaintiffs allege that " Nevada advertises as a sex tourism state…" ECF No. 201. However, Plaintiffs' exhibits to their complaint belie this allegation. Exhibit 1 to Plaintiffs' amended complaint (*Id*. at 12-8, pp. 0001-102) consists of advertisements by private entities, which have no nexus to the State. The same is true of Exhibits 2 and 5, which are an article concerning the activities of a private individual, the late Dennis Hof, and a youtube video. *Id*. at 12-8, pp. 104-06 and 115-16.

Plaintiffs also attach an affidavit of Jane Doe 1. *Id*. at 12-8, pp. 112-14. In this affidavit, the affiant details asserted violations of California law pertaining to prostitution by persons associated with the late Mr. Hof. *Id*. Plaintiffs never explain how this allegation

///

concerning alleged illegal activities of a private individual have anything to do with the State or even these particular Plaintiffs.

Finally, Plaintiffs attach a number of articles exploring whether there is a connection between legalized prostitution wherever it is practiced and increases in sex trafficking. *See generally* Exhibits 6-12 and 14-15. But Plaintiffs never allege factual allegations demonstrating a nexus between these articles and their allegations against the State. The only relevance these articles could have is to an outright federal ban on legalized prostitution, which Plaintiffs concede is not federal law.

## III.   STANDARD OF REVIEW

### A.   Facial Attack Under Federal Rule of Civil Procedure 12(B)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject matter jurisdiction, the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

### B.   Failure to State a Claim Upon Which Relief Can Be Granted Under Federal Rule Of Civil Procedure 12(B)(6).

A motion to dismiss for failure to state a claim must be granted when the plaintiff fails to plead a cognizable legal theory, or fails to plead sufficient facts to support such a legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To avoid dismissal, a complaint must include enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

/ / /

Though the facts of the First Amended Complaint must be accepted as true, this Court must ignore unsupported conclusions, unwarranted inferences, and sweeping legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. The Court can consider matters of which it may take judicial notice and documents referenced in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (judicial notice does not convert a motion to dismiss to one for summary judgment); *Johnson v. Federal Home Loan Mortg. Corp*, 793 F.3d 1005, 1007 (9th Cir. 2015) (considering documents incorporated by reference does not convert a motion to dismiss to one for summary judgment).

## IV. ARGUMENT

### A. This Court Should Dismiss All Claims Under Rule 12(B)(1) Because Plaintiffs' Amended Complaint Is Not Justiciable.

This Court only has power to hear "cases or controversies." *See* U.S. Const. art. III, §2, cl. 1. A case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). An actual case or controversy exists when a plaintiff establishes standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is a question of law. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002).

Here, Plaintiffs pled three claims for relief, but really have only one theory. Plaintiffs allege that because prostitution is not outlawed statewide, private individuals, through physical force, coercion, or inducement, caused Plaintiffs to engage in prostitution in Nevada. ECF No. 12 at ¶¶211, 214, and 218-226. Contrary to the requirements of justiciability, Plaintiffs lack standing to seek injunctive relief and declaratory relief.

To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S.

167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). For prospective injunctive relief, a plaintiff "must demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (quoting *Lyons*, 461 U.S. at 109) abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504–05 (2005). The Ninth Circuit has explained that, under *Lyons*, "plaintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983) ).

Here, none of the Plaintiffs' individual allegations meet the requirement that they are realistically threatened with a repetition of the conduct that they allege is the violation of federal law. Ms. Charleston, Ms. Delgado-Williams, and Ms. Albright-Byrd all reside in Texas. ECF No. 12 at ¶¶4-6. Each of the Plaintiffs alleged they were victims in the past of sex trafficking, (*see e.g Id.* at ¶¶88, 164, and 207), but no Plaintiff alleges that she is realistically threatened with a imminent harm as a result of Nevada law. To the extent that Plaintiffs perceive an immentn or immediate threat to their current safety or well-being, they have failed to plead facts articulating why they perceive such a threat or how nullification of Nevada law will remedy that threat.

Even if Plaintiffs could overcome this hurdle, which they cannot, Plaintiffs' request for injunctive relief fails for the additional reason that they were not injured by Nevada's approach to prostitution, nor are their injuries from sex trafficking fairly traceable to Nevada's laws. Nevada law does not make prostitution legal. Rather, prostitution is not illegal in counties with a population under a certain threshold number. NRS §244.345(8). As the Ninth Circuit observed in *Coyote Publishing Inc. v. Miller*, the State of Nevada's position on prostitution "is essentially agnostic: county governments are free to license or prohibit brothels at their option." 598 F.3d 592, 607 (9th Cir. 2010).

Plaintiffs cannot suffer a cognizable legal injury that is fairly traceable to Nevada's agnostic approach, since the federal government adopts the same approach. For example, the Mann Act does not out criminalize prostitution. The Mann Act criminalizes inducing a

person to engage in "prostitution or in any sexual activity for which any person **can be charged with a criminal offense**." 18 USC §2422(a) (emphasis added). Plaintiffs' various constitutional theories, whether under the Fourteenth Amendment or the Supremacy clause, ignore that the federal government takes the same agnostic approach as Nevada. Since prostitution is not something for which a person can be charged with a criminal offense, if practiced lawfully in Nevada counties whose population is under 700,000, the Mann Act simply does not apply.

Nevada law did not injure Plaintiffs because the traffickers' conduct that injured Plaintiffs was illegal in Nevada as well as federal law. Nevada law, like its federal counterpart, criminalizes sex trafficking. *Compare* NRS §201.300(2)(a)(1)-(2) and 22 USC §7101(b)(1) and 7101(b)(2), (4), (9), and (11). Accordingly, Nevada law could not have injured Plaintiffs. It criminalized the very conduct that Plaintiffs complain of.

Finally, Plaintiffs mistakenly seek to invoke the rights of third parties throughout their pleading by suggesting that others may fall victim to sex trafficking if legal brothels are not outlawed. "In the ordinary case, a party is denied standing to assert the rights of third persons." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263 (1977). Plaintiffs fail to explain how they have standing to represent these unidentified non-parties.

### B. The Eleventh Amendment Bars Plaintiffs' Request for a Monetary Remedy Against the State.

"The Eleventh Amendment generally bars the federal courts from entertaining suits brought by a private party against a state or its instrumentality in the absence of state consent." *Los Angeles County Bar Association v. Eu*, 979 F.2d 697, 704 (1992). Although a state or its chief executive may consent to be sued in federal court by waiving the sovereign immunity conferred by the Eleventh Amendment, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997), the State of Nevada has not waived that immunity, NRS 41.031(3).

/ / /

A lawsuit against the Governor, when named as a defendant in his official capacity, is the equivalent of a suit against the State of Nevada itself. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Moreover, a state official acting in his official capacity is not a "person" as that term appears in 42 U.S.C. § 1983. *Id.*; *Cuzze v. University and Community College System of Nevada*, 123 Nev. 598, 605, 172 P.3d 131, 136 (2007). Accordingly, there is no legal basis upon which Plaintiffs may sue the Governor, much less the State of Nevada, for damages in this Court.

Plaintiffs' request that the State of Nevada set aside not less than $2 million in a fund to assist victims of sex trafficking constitutes a claim for damages. (ECF No. 12 at 39, para. C). According to Plaintiffs, a person's entitlement to funds would be contingent upon the person's ability to prove that the person was trafficked through a Nevada brothel and did not participate in the management of a brothel. (*Id.*). The fact that the money sought would be distributed to persons other than Plaintiffs does not change the essential nature of Plaintiffs' request as one for monetary relief.

Even assuming that Plaintiffs' request for victim assistance could be characterized as something other than a claim for monetary damages, it would nonetheless violate the Tenth Amendment for this Court to grant the request. The federal government may not, as Plaintiffs suggest, compel a state government to expend funds from its treasury for a specific purpose. *See New York v. United States*, 505 U.S. 144, 149 (1992) ("We conclude that while Congress has substantial power under the Constitution to encourage the States to provide for the disposal of the radioactive waste generated within their borders, the Constitution does not confer upon Congress the ability simply to compel the States to do so."). Additionally, since the requested relief would operate retroactively to compensate victims of sex trafficking for past abuse, it is subject to dismissal under the Eleventh Amendment in the same manner as a conventional claim for damages. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974). Consequently, the Court must dismiss Plaintiffs' claim for a monetary remedy regardless of whether it constitutes a claim for damages, or a nonspecific policy remedy designed to compensate victims of sex trafficking.

### C. Plaintiffs' Claims Also Fail on Their Merits Under Rule 12(B)(6).

Plaintiffs' claims for "state created danger" in violation of the Fourteenth Amendment under 42 USC 1983, "deprivation of federal rights in violation of the Fourteenth Amendment under 42 USC 1983, and "declaratory/injunctive" relief under federal preemption doctrine fail to state a claim.

#### 1. State created danger fails as a matter of law.

Generally speaking, a state's alleged failure to protect individuals from private violence does not violate due process. *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989). The general rule that a state need not protect individuals from third parties is subject to two exceptions: (1) the special-relationship exception; and (2) the state-created danger exception. *DeShaney*, 489 U.S. at 198–202, 109 S.Ct. 998 (special-relationship exception); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir.1996) (state-created danger exception). Plaintiffs allege the later exception applies here. It doesn't.

There are two essential requirements for the state created danger exception to apply. Plaintiffs must show: (1) "affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) "deliberate indifference" by the state to a "known or obvious danger." *Patel v. Kent Sch. Dist.,* 648 F.3d 965, 974 (9th Cir. 2011) (internal quotation marks and citation omitted). Both requirements must be satisfied for the exception to apply. *Id.* Plaintiffs do not allege facts to support these elements.

Plaintiffs failed to allege any affirmative conduct by the State that placed them in danger. Plaintiffs' allegations pertain to conduct by private individuals, sex traffickers, who violated federal law, and (where such allegations have a nexus to Nevada) Nevada law, by using force or threats of force to coerce Plaintiffs into prostitution. Plaintiffs do not allege any affirmative conduct by a state officer with a nexus to any particular instance of sex trafficking alleged by Plaintiffs.

Plaintiffs do not allege any facts demonstrating that any state officer was deliberately indifferent to a known or obvious danger, which caused an injury to each named Plaintiff. At most, Plaintiffs' citation to various scholarly articles attempts to draw

a nexus between legalized prostitution and an increase in sex trafficking at the nation-state level. However, it is for the legislature to weigh the costs and benefits of legalized prostitution. Indeed, that is the conclusion of the very articles cited by Plaintiffs. One in particular, states as much:

> The likely negative consequences of legalized prostitution on a country's inflows of human trafficking might be seen to support those who argue in favor of banning prostitution, thereby reducing the flows of trafficking [cite omitted]. However, such a line of argumentation overlooks potentional benefits that the legalization of prostitution might have on those employed in the industry. Working conditions could be substantially improved for prostitutes – at least those legally employed – if prostitution is legalized. Prohibiting prostitution also raises tricky "freedom of choice" issues concerning both the potential suppliers and clients of prostitution services. A full evalutation of the costs and benefits, as well as of the broader merits of prohibiting prostitution, is beyond the scope of the present article.

Ex. 6, Seo-Young Cho, Axel Dreher, & Eric Neumeyer, *Does Legalized Prostitution Increase Human Trafficking?*, World Development, at pg. 26. Plaintiffs' case is an ill-conceived attempt to litigate the broader merits of legalizing prostitution in the courts rather than the legislature, where such discussions belong.

### 2. Plaintiffs' vague, undefined second claim of "deprivation of federal rights" must be dismissed.

Even before *Iqbal* and *Twombly*, dismissal was warranted unless the plaintiff pled allegations particular to a defendant to demonstrate how that defendant violated plaintiff's rights. *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996). A plaintiff could not provide a summary and simply lump all defendants together. *Id*. Here, Plaintiffs conflate all defendants together. Plaintiffs do not state what any particular defendant did wrong.

Plaintiffs' conclusory style of pleading does not meet *Iqbal's* demands. *Iqbal* requires more than formulaic pleading and reliance on conclusions and labels. *Iqbal*, 556 U.S. at 678. But that is precisely what Plaintiffs have done here. The Fourteenth Amendment provides, "(N)or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Plaintiffs allege they were deprived of "federal rights" because the State has not

made prostitution illegal in all counties in Nevada. ECF No. 12 at ¶214. Plaintiffs then allege that "the continued enactment of Nev. Rev. Stat. 201.354 and Nev. Rev. Stat. 244.345(8)," as well as county ordinances regulating prostitution where allowed are unconstitutional. *Id.* at ¶215.

Notably absent from Plaintiffs' complaint is any explanation as to how the State violated the Fourteenth Amendment's provisions regarding due process and equal protection or any other recognized constitutional doctrine under that amemdment. Properly classified, Plaintiffs' "federal rights" theory is just a re-statement of their third claim for relief based on conflict preemption, which also fails.

### 3. There is no conflict between Nevada law and federal law.

Plaintiffs mistakenly cite to the Supremacy Clause as a basis for their third claim for relief, but that clause is not itself the source of any right of action. The Supremacy Clause does not itself confer any federal rights and does not provide a private right of action to litigants. *Armstrong v. Exceptional Child Care, Inc.*, 575 U.S. ___, ___, 135 S. Ct. 1378, 1384 (2015). Likewise, Plaintiffs do not even attempt to allege that they can state a claim under either the Mann Act or the TVPA. Plaintiffs' case therefore rests entirely on their conflict preemption theory. *Independent Living Cent. of Southern Cal., Inc. v. Shewry*, 543 F.3d 1050, 1058, 1059 (9th Cir. 2008).

Pursuant to the Supremacy Clause, U.S. Const., art. VI, cl. 2, federal law can preempt and displace state law through: (1) express preemption; (2) field preemption (sometimes referred to as complete preemption); and (3) conflict preemption. *See Pac. Gas & Elec. Co. v. Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204, (1983); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987). Express preemption exists where Congress enacts an explicit statutory command that state law be displaced. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382, (1992). Absent explicit preemptive text, courts may still infer preemption based on field or conflict preemption, both of which require us to imply Congress' intent from the statute's structure and purpose. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 64-65 (2002); *FMC Corp. v. Holliday*, 498 U.S. 52, 56-57, (1990).

The preemption doctrine has no just application to Plaintiffs' allegations. It is well settled that Congress, when exercising its power under the Commerce Clause, may preempt state law through clear statutory language or implicitly. *Whistler Investments, Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008). Plaintiffs cannot identify any specific textual support for their claim that the Mann Act and the TVPA preempt Nevada law, and therefore advance the nebulous proposition that Congress implicitly preempted Nev. Rev. Stat. 201.354 and Nev. Rev. Stat. 244.345 through its enactment of criminal and anti-trafficking statutes.

Whether Congress has implicitly preempted state legislation is analyzed under two separate doctrines: field preemption and conflict preemption. *Id.* "Under field preemption, preemption is implied when Congress so thoroughly occupies a legislative field, that it effectively leaves no room for states to regulate conduct in that field." *Id.* (internal quoation marks and citations omitted). And conflict preemption, sometimes referred to as "obstacle" preemption, examines a "federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives." *Id.* (internal quotation marks and citations omitted).

The Mann Act and the TVPA criminalize interstate sex trafficking and provide various forms of assistance and support to victims, investigators, and prosecutors, but they contain no licensing or regulatory components. The existence of a federal regulatory scheme is generally a prerequisite for field preemption anaylsis. *See National Federation of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 734 ("The essential field preemption inquiry is whether the density and detail of federal regulation merits the inference that any state regulation within the same field will necessarily interfere with the federal regulatory scheme."). Because the Mann Act and the TVPA do not regulate interstate commercial activity in a way that supplants state or local regulatory authority over intrastate

/ / /

commercial activity, Nevada law is not preempted under the doctrine of field preemption here.

Under conflict preemption, an aberrant or hostile state rule is preempted to the extent it actually interferes with the "methods by which the federal statute was designed to reach [its] goal." *Ouellette*, 479 U.S. at 494; *Verizon North, Inc. v. Strand*, 309 F.3d 935, 940 (6th Cir.2002). As to the applicability of the conflict preemption doctrine, Plaintiffs concede that "[t]he purpose of Congess is the ultimate touchstone in every pre-emption case." (ECF No. 12 at 5:25, 6:1-2); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Congressional intent ultimately determines whether a federal statute preempts state law, and the text and subject matter of the Mann Act and the TVPA in no way suggest an intent to preempt state licensing and regulatory legislation.

In short, Nevada law is not hostile to federal law. Nevada law, like its federal counterpart, criminalizes sex trafficking. *Compare* NRS §201.300(2)(a)(1)-(2) and 22 USC §7101(b)(1) and 7101(b)(2), (4), (9), and (11). Indeed, the very allegations made by Plaintiffs pertaining to sex trafficking in this case would be both a violation of Nevada state and federal law.

The history of both the Mann Act and the TVPA demonstrate that conflict preemption is not applicable. Nevada law, which does not criminalize prostitution in certain contexts, existed at the time both of these federal laws were passed. This is important because "courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes." *Branch v. Smith*, 538 U.S. 254, 281 (2003). By this reasoning, courts must "presume Congress does not silently abrogate existing law." *Flores v. Sessions*, 662 F.3d 863, 875 (9th Cir. 2017). Had it been the intent of Congress to abolish Nevada's legal brothel industry through its enactment of the Mann Act or the TVPA, it would have done so in explicit terms. Conflict preemption is inapplicable because the Mann Act and the TVPA, when properly interpreted, do not manifest an intent to abolish Nevada's legal brothels.

///

## IV.  CONCLUSION

People of good intentions can disagree as a policy matter whether prostitution should be criminalized; however, such policy debates are reserved for the legislative chamber rather than the courts. There is no conflict between federal law and Nevada law here because federal law does not criminalize prostitution and both Nevada law and federal law criminalize sex trafficking whereever it occurs in Nevada. To the extent that there may be tension between Nevada law and federal law, Plaintiffs improperly seek an advisory opinion from this Court and a judicial remedy for a policy dispute properly committed to the legislative branches of government.[1]

DATED: April 3, 2019.

AARON D. FORD
Attorney General

By: /s/ Gregory L. Zunino
GREGORY L. ZUNINO
Deputy Solicitor General (Bar No. 4805)
100 N. Carson Street
Carson City, Nevada 89701
(775) 684-1237
GZunino@ag.nv.gov
*Attorneys for Defendant*
*State of Nevada, Steve Sisolak*

---

[1] Demonstating why this matter belongs in a legislative forum as opposed to a courtoom, the Nevada Legislature recently introduced legislation to ban brothels throughout Nevada, and to strengthen Nevada's laws against sex trafficking. *See, respectively,* Senate Bill No. 413 of the 80th (2019) Session of the Nevada Leglslature; Assembly Bill No. 120 of the 80th (2019) Session of the Nevada Legislature.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing *Motion to Dismiss First Amended Complaint* with the Clerk of the Court by using the CM/ECF system on April 3, 2019.

The following participants in this case are registered CM/ECF users and will be served by the CM/ECF system:

Jason D. Guinasso
jguinasso@hutchlegal.com
*Counsel for Plaintiff*

                /s/   Traci Plotnick
                Traci Plotnick, an employee of the
                Office of the Attorney General