GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar No. 10670
Email: jkp@fdlawlv.com
FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
Facsimile: (702) 382-9452
*Attorneys for Proposed Defendant Intervenors*
   *Cash Processing Services, Inc. and*
   *Lance Gilman*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON; ANGELA DELGADO-WILLIAMS; and LEAH ALBRIGHT-BYRD,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA;<br><br>Defendants, | Case No.: 3:19-cv-00107-MMD-WGC<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO CASH PROCESSING SERVICES, INC. AND LANCE GILMAN'S MOTION TO INTERVENE AS DEFENDANTS**<br>(ECF No. 14) |

COMES NOW the Proposed Defendant Intervenors, CASH PROCESSING SERVICES, INC. doing business as the WORLD FAMOUS MUSTANG RANCH, and LANCE GILMAN, as Licensee, by and through their attorneys, GUS W. FLANGAS, ESQ. and JESSICA K. PETERSON, ESQ., of the FLANGAS DALACAS LAW GROUP, and hereby Reply to the "Opposition to Cash Processing Services, Inc. and Lance Gilman's Motion to Intervene as Defendants," filed by the Plaintiffs (ECF 14).

This Reply is based upon the Pleadings and Papers on file herein, the attached Points

and Authorities, and oral argument to be made by counsel at any Hearing of this matter.

DATED this 9th day of April, 2019.

GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar NO. 10670
Email: Jkp@fdlawlv.com
**FLANGAS DALACAS LAW GROUP**
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
*Attorneys for Defendant Intervenors*

## POINTS AND AUTHORITIES

### I.
### INTRODUCTION

**A.    THE PLAINTIFFS'S ACTION.**

The Plaintiffs' action[1] is utterly frivolous and nothing more than a transparent subterfuge designed to push the policy agenda of the Plaintiffs' counsel into the public discourse. The Plaintiffs' counsel is improperly using the unfortunate circumstances endured by the Plaintiffs as a disingenuous vehicle to perform an end run around the Legislative process of the State of Nevada. The Plaintiffs' action is completely based upon tenuous, if not specious, theories of the law, and should not be allowed to go forward.

The Plaintiffs are spuriously seeking to have the Court usurp the powers of the Nevada Legislature by (1) declaring that Nevada's statutes allowing for legalized prostitution and the

---

[1] The original Complaint in this matter, filed on February 25, 2019, only had REBEKAH CHARLESTON as a Plaintiff (ECF No. 1). A First Amended Complaint was subsequently filed on March on March 18, 2019 (ECF No. 12), adding ANGELA DELGADO-WILLIAMS and LEAH ALBRIGHT-BYRD as Plaintiffs. Other than adding the allegations pertinent to Ms. Delgado-Williams and Ms. Albright-Byrd, the allegations in the First Amended Complaint remain virtually the same as the original Complaint. (Hereinafter the First Amended Complaint will be referred to as the "Plaintiffs' Complaint).

"ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null and void as preempted by federal law;" (2) enjoining Nevada and all of its political subdivisions (i.e. the Counties allowing for legal prostitution) from implementing, enforcing, or putting into force and effect Nevada's laws on prostitution; and (3) requiring Nevada to allocate to state funds on an annual basis to aid people seeking an exit from the sex trade. (ECF No. 1 ¶ 39). Although what happened to the Plaintiffs is absolutely horrendous, reprehensible, and utterly disgusting, the relief they are seeking is not supported by any law or authority whatsoever, nor are the laws of Nevada even remotely responsible for what happened to them, or causing them further damage.

According to the Plaintiffs' Complaint, all three Plaintiffs are presently residents of Texas. (ECF No. 1 ¶¶ 2-3). According to the Plaintiffs' Complaint, all three Plaintiffs fell victim to unscrupulous and sinister criminal traffickers, who found the respective Plaintiffs on the streets in Texas and California when they were minors, and then subsequently forced them into engaging in illegal prostitution in those very same states. (ECF No. 1 ¶¶ 19-34). According to the Plaintiffs' Complaint, all three Plaintiffs were subjected to illegal sex trafficking by these reprehensible traffickers and other subsequent reprehensible traffickers, and forced to engage in **"illegal"** prostitution around different parts of the Country, including Nevada. (Id). In analyzing the Plaintiffs' Complaint, it is more than apparent that all three Plaintiffs had little or no nexus to legal brothels in Nevada, except for Ms. Charleston who spent only a short period of time in a legal brothel in Nevada. (ECF NO. 1 ¶ 19). Except for Ms. Charleston's short stint in a Nevada legal brothel, all three Plaintiffs engaged entirely in **illegal** prostitution. (ECF No. 1 ¶¶ 19-34).

Despite the Plaintiffs' flaky and nebulous nexus to legal prostitution in Nevada, the Plaintiffs are alleging that Nevada's Statutes, which allow for legal prostitution in Nevada Counties with less than 700,000 thousand people, somehow caused the Plaintiffs to suffer the harm they endured, by being forced into illegal prostitution. (ECF No. 1 ¶¶ 3, 19, 21, and 30).[2] In addition, the Plaintiffs

---

[2] According to the Plaintiff's Complaint, specifically, it is the 21 brothels that operate in 7 small counties in Nevada that is causing the harm (ECF No. 1 ¶ 6).

- 3 -

allege without any real substance, that somehow Nevada with its legalized prostitution created an intrastate commercialized prostitution market that "exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market." (ECF No. 1 ¶ 6). The Plaintiffs are also alleging that they are continuing to suffer the same harm because of Nevada's laws allowing for legal prostitution. (ECF No. 1 ¶ 35). This certainly begs the question on how three residents of the State of Texas could even be conceivably harmed by statutes allowing for legalized prostitution in certain small counties in the State of Nevada, other than through pure conjecture.

As the basis for their action, the Plaintiffs allege that certain Federal Criminal Statutes were enacted to prevent persons from being trafficked, and Nevada's Statutes and Ordinances that allow for legal prostitution are therefore somehow in direct conflict with these Federal Criminal Statutes, and thus, are preempted. There is absolutely no conflict, and only a tortured and misguided analysis could even remotely find a such a conflict. The illegal conduct suffered by the Plaintiffs as alleged in their Complaint is illegal under both Federal and Nevada laws that criminalize sex trafficking. The Federal Criminal Statutes upon which the Plaintiffs are basing their claims are 18 U.S.C.A. § 2422(a) of the Mann Act, and 22 U.S.C. §§ 7101-7114 of the Trafficking Victims Protection Act (hereinafter the "TVPA").[3] Both are Federal Criminal Statutes that provide for fines and or imprisonment for trafficking in persons. Nevada has an almost identical statute providing for fines and or imprisonment for trafficking in persons. See NRS 201.300.

Although this action is against the State of Nevada, it is the Proposed Defendant Intervenors who have the most at risk should the Plaintiffs somehow prevail in their action. As stated in the Motion to Intervene, Mr. Gilman has invested Tens of Millions of dollars into the Mustang Ranch. (ECF No. 11 ¶ 7). The business and facilities of the Mustang Ranch are worth Tens of Millions of dollars. (Id). In addition, the Mustang Ranch is a registered trademark and has significant value. (Id).

As stated, the Plaintiff is seeking to have the Court declare that Nevada's statutes and the ordinances of the various Nevada Counties allowing for legalized prostitution are unconstitutional,

---

[3] These statutes will often be referred to collectively as the "Federal Criminal Statutes."

and null and void as preempted by Federal law. She is further seeking to have the Court enjoin Nevada and all of its political subdivisions (the Nevada Counties) from implementing, enforcing, or putting into force and effect Nevada's laws on prostitution. This would result in the complete shut down of the Mustang Ranch. The Proposed Defendant Intervenors would completely lose their business. They would lose their business as a going concern, lose Tens of Millions of dollars they invested in their business, lose the value of their business, lose the profits generated by their business, and lose the usefulness of their valuable trademark, the Mustang Ranch.

Because of the loss that the Proposed Defendant Intervenors will suffer should the Plaintiff prevail, the Proposed Defendant Intervenors are seeking to intervene in this matter as of right pursuant to FRCP 24(a), or in the alternative, permissively, pursuant to FRCP 24(b).

**B.    THE PLAINTIFFS' OPPOSITION.**

The Plaintiffs' counsel, in the Plaintiffs' Opposition, rather than focusing on and directly addressing the legal merits of the Motion, instead decided to engage in unsolicited and untruthful attacks on the character of the Proposed Defendant Intervenor, LANCE GILMAN (hereinafter "Mr. Gilman"), and also again, proselytize his views against legal prostitution. (ECF No. 14 ¶ 2). In the Plaintiffs' Opposition, the Plaintiffs' counsel without even a scintilla of evidence other than mere conjecture based upon his own distorted and biased viewpoint, claims that Mr. Gilman is "motivated by increasing his already substantial net worth regardless of the human cost," and "oblivious to the cost human suffering." (Id). He further claims that Mr. Gilman's "presence in the action will also potentially intimidate witnesses and be disruptive, through the influence he openly boasts of in his motion." (Id). He even calls Mr. Gilman a "common pimp." (ECF No. 14 ¶¶ 2-3), and then says that "[p]imps who own brothels in the State of Nevada, like Mr. Gilman, are known to use and abuse the legal system to intimidate and bully anyone who would call into question the harms caused by the prostitution industry . . ." (ECF No. 14 ¶ 8). To make matters worse, he goes on to state that "Mr. Gilman has a history of using aggressive tactics to personally attack law enforcement,

- 5 -

journalist, attorneys, and those who have been prostituted." (ECF No. 14 ¶ 8).[4] These unsubstantiated allegations are completely unacceptable, and should certainly warrant some forms of sanctions. It would certainly behoove the Plaintiffs' counsel to stick the legal issues especially given the shaky and questionable nature of his case, and even more especially, given the vast accomplishments of and contributions made to the community of Northern Nevada by Mr. Gilman, as set forth in the Motion to Intervene. (ECF No. 11 ¶¶ 2-5).

Putting aside the Plaintiffs' counsel caustic remarks about Mr. Gilman and putting aside his further superfluous ruminations and fluff about legal prostitution contained in the Opposition, the Plaintiffs in their Opposition offer three main arguments against intervention: (1) the Proposed Defendant Intervenors are not entitled to intervention as of right because their alleged interests are adequately represented by the existing parties and because the Proposed Defendant Intervenors failed to make a compelling showing the contrary; and (2) the Proposed Defendant Intervenors are not entitled to permissive intervention because they failed to make any compelling showing to the contrary, in that the Proposed Defendant Intervenors' interests are adequately represented and intervention will cause undue delay and prejudice. As will be show below, the Plaintiffs arguments are without merit.

## II.
## ARGUMENT

A. **CONTRARY TO THE PLAINTIFFS' ASSERTIONS, THE PROPOSED DEFENDANT INTERVENORS' INTERESTS ARE INADEQUATELY REPRESENTED BY THE EXISTING PARTIES; THEREFORE, THEY SHOULD BE ENTITLED TO INTERVENTION AS OF RIGHT UNDER FRCP 24(a).**

Under Federal Rule of Civil Procedure 24(a) ("Rule 24(a)"), a court must permit any party

---

[4] Interestingly, for his false and inflammatory statements about Mr. Gilman, the Plaintiffs' counsel relies solely on certain dicey materials for his unfounded assertions. Although ancillary to the real issues of the instant action, had the Plaintiffs' counsel done minimal homework, the Plaintiffs' counsel would have discovered that the law enforcement officer with whom Mr. Gilman has issues has been accused by several women of rape, and has also been accused of sexual harassment and other sexually deviant behavior. Also, the so-called journalist mentioned by the Plaintiffs' counsel is merely a blogger who falsely accused Mr. Gilman of committing perjury, which is a felony (perjury), and then tried to hide behind the media shield privilege.

- 6 -

to intervene in a lawsuit who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed.R.Civ.P. 24(a)(2).

The rule is broadly construed in favor of intervention. See Cabazon Band of Mission Indians v. Wilson, 124 F.3d 1050, 1061 (9th Cir.1997). See Forest Conservation Council ("FCC") v. United States Forest Serv., 66 F.3d 1489, 1493 (9th Cir.1995) (In general, we construe Rule 24(a) liberally in favor of potential Intervenors). Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). [The Court] follow[s] the guidance of Rule 24 advisory committee notes that state that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822 citing Fed.R.Civ.P. 24 advisory committee's notes. See United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004) (Courts considering Rule 24(a) motions are "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention).

The Ninth Circuit employs four criteria to determine whether intervention under Rule 24(a) is appropriate: (1) the motion to intervene must be timely; (2) the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties. See Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003). The burden falls on the applicant to show that all of the requirements for intervention have been met. See U.S. v. Alisal Water Corp., 370 F.3d at 919.

The Plaintiffs are only asserting that the Proposed Defendant Intervenors' interests are adequately represented because the Nevada Attorney General will be representing the Defendants.

The Plaintiffs did not address any of the other factors.

### 1. The Law Pertaining to Adequacy of Representation by the Existing Parties.

In determining whether a would-be intervener's interests will be adequately represented by an existing party, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822. The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 822–23 citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir.1983). However, the burden of showing inadequacy is "minimal", and the applicant need only show that representation of its interests by existing parties "may be" inadequate. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 823 citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630 (1972).

In assessing the adequacy of representation, the focus should be on the "subject of the action," not just the particular issues before the court at the time of the motion. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 823 citing Sagebrush, 713 F.2d at 528. "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.' " Citizens for Balances Use, 647 F.3d at 898 (quoting Arakaki, 324 F.3d at 1086). "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises[,]" which can be rebutted by "a 'compelling showing' of inadequacy of representation." Citizens for Balances Use, 647 F.3d at 898 (quoting Arakaki, 324 F.3d at 1086).

There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents. Id. In the absence of a "very compelling showing to the contrary," it will be presumed that a state adequately represents its citizens when the applicant shares the same interest. Arakaki, 324 F.3d at 1086 citing 7C Wright, Miller & Kane, § 1909, at 332. Where parties share the same ultimate objective, differences in litigation strategy do not normally justify

intervention. Arakaki, 324 F.3d at 1086 citing U.S. v. City of Los Angeles, Cal., 288 F.3d 391, 402 (9th Cir. 2002).

[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. Romero v. Bd. of Cty. Commissioners for the Cty. of Curry, 313 F.R.D. 133, 141–42 (D.N.M. 2016) citing Utah Ass'n of Ctys. v. Clinton, 255 F.3d 1246, 1255-56 (10th Cir. 2001). In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor. Id. See Nat. Res. Def. Council v. McCarthy, No. 16-CV-02184-JST, 2016 WL 6520170, at *6 (N.D. Cal. Nov. 3, 2016) (But the fact that two parties desire the same outcome in litigation cannot alone defeat intervention – such a rule would effectively curtail the mechanism of intervention entirely. The Court accordingly finds that the fourth element for intervention as of right is met).

The Ninth Circuit has held the presumption of adequacy may be overcome where the intervenors have "more narrow, parochial interests" than the existing party, or where "the applicant asserts a personal interest that does not belong to the general public." Forest Conservation Council v. U.S. Forest Service, 66 F.3d at 1499; see Arakaki, 324 F.3d at 1089 (in other cases, the Court has permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented); see Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 823 ("the City's range of considerations in development is broader than the profit-motives animating [intervening] developers"); see Klamath-Siskiyou Wildlands Ctr. v. Grantham, No. 218CV02785TLNDMC, 2018 WL 6338740, at *3 (E.D. Cal. Dec. 5, 2018) (while Proposed Defendant Intervenor and Defendants are effectively on the same side of the dispute, Proposed Defendant Intervenor and its members have economic interests that the Defendants do not); see Conservation Cong. v. United States Forest Serv., No. 2:16-CV-00864-MCE-AC, 2018 WL 529484, at *3 (E.D. Cal. Jan. 23, 2018) (Although the government and the Intervenors fall on the same side of the dispute, the government has a much broader interest in the implementation of the project than the "on the ground" interests of the

Intervenors. As Intervenors describe, "[u]nlike the Forest Service and FWS, Proposed Intervenors' members are motivated by an economic interest in the Project and interest in the health of the Modoc National Forest to ensure a sustainable supply of federal timber).

### 2. Contrary to the Plaintiffs' Assertions, the Proposed Defendant Intervenors Have Made a Very Compelling Showing That Their Interests Would Not Be Adequately Represented by the Existing Parties.

In the instant case, the Plaintiffs in conclusory fashion, merely state that the Proposed Defendant Intervenors' interests are adequately represented because they are seeking to join a lawsuit on the same side as a governmental entity, and it is therefore presumed that the state will adequately represent its citizens when the applicant shares the same interest. (ECF No. 14 ¶¶ 14-15). Without any real analysis coupled with incomplete citation to authority, the Plaintiffs conclude that the Proposed Defendant Intervenors have failed to make any compelling showing that their general interest in upholding state laws regulating prostitution cannot or will not be adequately represented by the Nevada Attorney General.[5] (ECF No. 14 ¶ 15). Contrary to the Plaintiffs' assertions, the Proposed Defendant Intervenors have made a compelling showing' of inadequacy of representation and are entitled to intervention of right.

As stated above, FRCP 24(a) is to be construed broadly in favor of intervention and the Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections. In addition, if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. Also, the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. It is under this framework as provided by the Ninth Circuit and other Courts that the Court should address whether the Proposed Defendant Intervenors' interests are adequately represented by the Nevada Attorney General.

---

[5] It appears that the Nevada Legislative Counsel Bureau might defend the Nevada Legislature in this matter in that it has filed a Motion to Extend Time to Answer or Respond to the Plaintiffs' First Amended Complaint. (ECF No. 14 ¶ 15).

- 10 -

First off, clearly, the Proposed Defendants Intervenors have "more narrow, parochial interests" than the existing Parties, and have personal interests that do not belong to the general public. As previously stated in the Motion to Intervene, the Proposed Defendant Intervenors are owners and licensees in the highly restricted and highly regulated business of operating a brothel. Stating the obvious, the Proposed Defendant Intervenors have personal interests that do not belong to the general public. There are very few legal brothels operating in Nevada and only in a limited number of Nevada's counties. In addition, the State of Nevada has a broader purpose than the Proposed Defendants Intervenors because it has to consider a broad spectrum of views, including how their defense in the instant matter affects the entire State,[6] and not just how it affects the more limited narrow, parochial interests of the Proposed Defendant Intervenors.

Moreover, although the Proposed Defendant Intervenors and the Defendants are effectively on the same side of the dispute, the interests of the Proposed Defendant Intervenors are significantly different than that of the Defendants. The Proposed Defendant Intervenors have economic interests at stake in the matter that the Defendants do not have. In the instant action, the Defendants are merely facing actions for injunctive relief that would essentially void Nevada Statutes allowing for legal prostitution. The Proposed Defendant Intervenors on the other hand, are not just facing injunctive relief, they are also facing the complete loss of their economic interests-economic interests that the State of Nevada does not have. The Proposed Defendant Intervenors are facing the loss of their business as a going concern, loss of Tens of Millions of dollars they invested in their business, loss of the value of their business, loss of profits generated by their business, and loss of the usefulness of their valuable trademark, the Mustang Ranch. As demonstrated by the above cited authority and the facts herein, the Proposed Defendant Intervenors have overcome the presumption of adequacy of representation.

In addition to the foregoing, the Plaintiffs are also trying to have the Court declare that the

---

[6] There is a bill presently working its way through the Nevada Legislature to do away with legal prostitution. Although there is little chance of it succeeding, it clearly demonstrates that the Nevada Attorney General may be faced with other policy considerations that may be adverse to the Proposed Defendant Intervenors in this case.

- 11 -

ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null and void as preempted by federal law, and is attempting to have the Court enjoin these Counties allowing for legal prostitution from implementing, enforcing, or putting into force and effect Nevada's laws on prostitution. The Proposed Defendant Intervenors are not only subject the Nevada Statutes on prostitution but also the Storey County Ordinances on prostitution. The State of Nevada is not subject to the Ordinances of the various Nevada Counties. Because the Proposed Defendant Intervenors are subject to the Storey County Ordinances and the State of Nevada is not subject to such Ordinances, the Proposed Defendant Intervenors have a different interest altogether than the interest of the State of Nevada, in the litigation. Therefore, there is another compelling showing that the Proposed Defendant Intervenors have overcome the presumption of adequacy of representation. See Citizens for Balances Use, 647 F.3d at 898 (quoting Arakaki, 324 F.3d at 1086) ("The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.' ").

Although not individually dispositive of the issue in of themselves as it pertains to adequacy of representation, other factors the Court should consider is that the Proposed Defendant Intervenors have the "on the ground and real world experience" to address the issues raised by the Plaintiffs' counsel in his self serving soliloquy on legal prostitution set forth in the Plaintiffs' Complaint should this matter eventually go to Trial. In addition, the Proposed Defendant Intervenors have the real world data and information applicable to the instant action coupled with working knowledge of operating a legal brothel, which the State of Nevada would have difficulty properly providing or addressing.

Given all the foregoing factors, considered either individually or collectively, the Proposed Defendant Intervenors have overcome the presumption of adequacy of representation. Therefore, the Proposed Defendant Intervenors are entitled to intervention as of right pursuant to FRCP 24(a). See Forest Conservation Council v. U.S. Forest Service, 66 F.3d at 1499 (the presumption of adequacy may be overcome where the intervenors have "more narrow, parochial interests" than the existing party, or where "the applicant asserts a personal interest that does not belong to the general

public").[7]

B. **IN THE ALTERNATIVE, THE PROPOSED DEFENDANT INTERVENORS SHOULD BE ENTITLED TO PERMISSIVE INTERVENTION PURSUANT TO FRCP 24(b).**

Under Federal Rule of Civil Procedure 24(b), a court may grant permissive intervention where (1) the applicant shows independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action share a common question of law of fact. See Freedom from Religion Foundation, Inc. v. Geithner, 644 F.3d 836, 843 (9th Cir.2011). Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties." Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 955 (9th Cir. 2009) citing Spangler v. Pasadena City Bd. of Educ., 552 F.2d 1326, 1329 (9th Cir.1977). (Emphasis added). Rule 24(b)(3) also requires that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Perry v. Proposition 8 Official Proponents, 587 F.3d at 955. The Court liberally construes motions for permissive intervention. See Abassi v. Immigration & Naturalization Serv., 305 F.3d 1028, 1031–32 (9th Cir.2002).

The Plaintiffs in their Opposition again argue in conclusory fashion that (1) the Motion for permissive intervention should be denied because the Proposed Defendant Intervenors' interests are adequately represented; and (2) their intervention will cause undue delay and Prejudice.

1. **Even Though it Is Not Mandatory for the Court to Consider Whether There Is Adequacy of Representation; the Proposed Defendant Intervenors' Interests Are Not Adequately Represented by the Defendants.**

As the basis for their Opposition, the Plaintiffs again assert that the Proposed Defendant

---

[7] In a passing reference, the Plaintiffs assert the Proposed Defendant Intervenors failed to show that they will offer any necessary arguments and defenses that the State of Nevada would neglect. (ECF No. 14 ¶ 15). The Nevada Attorney General has since filed a "Motion to Dismiss First Amended Complaint (ECF No. 22), and the Proposed Defendant Intervenors have put forth a Proposed "Motion to Dismiss Pursuant to FRCP 12(b)(1) and FRCP 12(b)(6), which is attached as Exhibit "A" to the Motion to Intervene. (ECF No. 22). A comparison between the two motions, shows several different theories seeking dismissal of the Plaintiffs' Complaint and different arguments on some of the same theories.

Intervenors' interests are adequately represented by the Defendants; and therefore, the Proposed Defendant Intervenors' Motion for permissive intervention should be denied. Interestingly, without citation to any authority, the Plaintiffs seem to assert that the standard for permissive intervention is a "compelling showing." (ECF No. 14 ¶ 15). This is not an accurate recitation of the law. At the outset, the Plaintiffs have failed to cite any authority that would require the Proposed Defendant Intervenors to make a compelling showing of inadequacy of representation for purposes of permissive intervention. Although there may be a presumption of adequacy of representation in this case because there is a government defendant, the Plaintiffs still have failed to cite any authority that would require the Proposed Defendant Intervenors to make a compelling showing of inadequacy of representation for purposes of permissive intervention. It would appear that the burden of the Proposed Defendant Intervenors' showing of inadequacy would be at most "minimal", and the applicant need only show that representation of its interests by existing parties "may be" inadequate. See Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 823. Regardless of which standard applies, there is no adequacy of representation of the Proposed Defendant Intervenors' interests as demonstrated herein above in Section "A" of this Reply.[8] However, the question unaddressed by the Plaintiffs is how the Court in its discretion is supposed to factor in adequacy of representation in arriving at its decision.

To begin, the Court is not even required to but _may_ consider in the exercise of its discretion, adequacy of representation. See Perry v. Proposition 8 Official Proponents, 587 F.3d at 955.[9] (Emphasis added). Because the Court _may_ consider adequacy of representation and is not required to do so, the clear import of the law is that adequacy of representation is simply a factor for the Court

---

[8] The Proposed Defendant Intervenors incorporate the entire argument set forth above in Section "A" of this Reply as though set forth in full herein.

[9] Although the Plaintiffs try to make it look like the Court must evaluate whether the Proposed Defendant Intervenors' interests are adequately represented by existing parties, their cited case law says otherwise. See e.g. Venegas v. Skaggs, 867 F.2d 527, 530 (9th Cir. 1989) (ECF No. 14 ¶ 16) (a court in deciding whether to permit intervention should evaluate whether the movant's "interests are adequately represented by existing parties). (Emphasis added). Please note that the cited cases are much older than the cases cited by the Proposed Defendant Intervenors.

- 14 -

to consider in its discretion, and is clearly not dispositive on the issue of permissive intervention as proffered by the Plaintiffs. Moreover, if adequacy of representation was a dispositive factor for denying permissive intervention as proffered by the Plaintiffs, the results would be absurd and the law on permissive intervention would become superfluous. Specifically, in motions brought by proposed intervenors seeking to intervene as of right and in the same motion, seeking permissive intervention, any motion for permissive intervention would automatically fail if the motion for intervention as of right was denied because there was adequate representation. This certainly would not be the intent of the law. It then clearly follows that adequacy of representation is a non-dispositive factor the Court may consider in its discretion. Clearly, the Plaintiffs have failed to set forth in their Opposition, any real arguments against permissive intervention by the Proposed Defendant Intervenors in this regard.

> **2.      Contrary to the Plaintiffs' Assertions, Intervention Will Not Cause Undue Delay and Prejudice.**

In their Opposition, the Plaintiffs failed to set forth any realistic facts that would support their assertions that intervention would cause them undue delay other than specious allegations unsupported by fact or even reality.[10] The Proposed Defendant Intervenors have significant interest at stake, and their entrance into the case would neither unduly delay the case nor unfairly prejudice the parties.

To begin, the Plaintiffs assert that since the Proposed Defendant Intervenors' interests are adequately represented by the existing parties, the Proposed Defendant Intervenors' intervention and participation will serve no purpose other than to raise extraneous issues that will increase the workload and costs for the Plaintiffs and the Court. (ECF No. 14 ¶ 17).[11] Notwithstanding that the Plaintiffs' logic is circular, they are only making a blanket conclusory statement that their workload

---

[10] There is certainly no undue delay because the Motion to Intervene was filed prior to an Answer or responsive pleading becoming due.

[11] The Plaintiffs fail to even allude to what extraneous issues the Proposed Defendant Intervenors would bring to the mix. Would the Proposed Defendant Intervenors vigorously defend their interests, the answer is yes. That is their right. It doesn't mean the issues raised by the Proposed Defendant Intervenors would be extraneous.

and costs may be increased. Virtually every if not all interventions will increase the workload and costs for the existing parties. If that type of assertion could be used as a basis for denial of permissive intervention on the basis of prejudice, then all interventions would have to be denied.

The Plaintiffs then falsely assert that allowing the Proposed Defendant Intervenors to intervene would have "chilling impact on Plaintiffs, potential additional plaintiffs, and potential witnesses that the Plaintiffs may call." (ECF No. 14 ¶ 17). The Plaintiffs then go on to further falsely assert that the Proposed Defendant Intervenors are "known to use their power, money, and the legal system to intimidate and bully anyone who would call into question the harms caused by the brothel industry and actors within that industry." (ECF No. 14 ¶ 17). The Plaintiffs then further assert even more spurious false accusations about Mr. Gilman, again, without any basis in fact or reality. (ECF No. 14 ¶ 17). Other than these false assertions, which were most likely borne on the gossamer wings of ludicrous speculation and fabrication on the part of the Plaintiffs' counsel, the Plaintiffs have failed to set forth one iota of a valid argument that they would be prejudiced.

The Plaintiffs in their Opposition have clearly failed set forth any valid arguments to support their opposition to the Proposed Defendant Intervenors' motion for permissive intervention. The Plaintiffs' contrived and fabricated assertions of prejudice and undue delay are only speculative, and ultimately outweighed by the Proposed Defendant Intervenors' unique and significant interests to intervene. Therefore, the Court should grant the Proposed Defendant Intervenors' motion for permissive intervention.

## III.
## CONCLUSION

Based upon the foregoing, given that the Proposed Defendant Intervenors have met their burden of a compelling showing that the existing Parties may not adequately represent their interest and given that the Courts favor intervention, the Proposed Defendant Intervenors respectfully request that the Court grant this Motion and allow the Proposed Defendant Intervenors to intervene in this matter as of right pursuant to FRCP 24(a). In the alternative, the Proposed Defendant Intervenors respectfully request that the Court grant the Defendant Intervenors' Motion for Permissive Intervention pursuant to FRCP 24(b). The Plaintiffs have failed to set forth one single iota of a

1 | plausible argument that if the Proposed Defendant Intervenors were allowed to permissively
2 | intervene, such intervention would cause undue delay and prejudice.

    Respectfully submitted this 9th day of April, 2019.

GUS W. FLANGAS, ESQ.
Nevada Bar No. 004989
Email: gwf@fdlawlv.com
JESSICA K. PETERSON, ESQ.
Nevada Bar No. 10670
Email: jkp@fdlawlv.com
FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
Facsimile: (702) 382-9452
*Attorneys for Defendants-Intervenors*

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of the FLANGAS DALACAS LAW GROUP, and that on this 9th day of April, 2019, I filed and served a true and correct copy of the attached document, by using the Court's CM/ECF system for electronic service, directed to the following:

| | |
|---|---|
| Jason D. Guinasso, Esq.<br>Hutchison & Steffen, PLLC<br>500 Damonte Ranch Pkwy., Suite 980<br>Reno, NV 89521<br>jguinasso@hutchlegal.com<br>*Attorney for Plaintiffs* | Aaron D. Ford, Attorney General<br>Gregory L. Zunino, dpty. Solicitor General<br>100 N. Carson Street<br>Carson City, NV 89701-4717<br>Gzunino@ag.nv.gov<br>*Attorney for Defendants<br>State of Nevada and Governor Steve Sisolak* |

Brenda J. Erdoes, Legislative Counsel
Kevin C. Powers, Chief Litigation Counsel
Nevada Legislative Counsel Bureau, Legal Division
401 S. Carson St.
Carson City, NV 89701
kpowers@lcb.state.nv.us
*Attorneys for Defendant Legislature of the State of Nevada*

_____
an employee of the Flangas Dalacas Law Group