BRENDA J. ERDOES, Legislative Counsel
Nevada Bar No. 3644
KEVIN C. POWERS, Chief Litigation Counsel
Nevada Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
E-mail: kpowers@lcb.state.nv.us
*Attorneys for Defendant Legislature of the State of Nevada*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON; ANGELA DELGADO-WILLIAMS; and LEAH ALBRIGHT-BYRD,<br><br>    Plaintiffs,<br><br>    vs.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada; and the LEGISLATURE OF THE STATE OF NEVADA,<br><br>    Defendants. | **Case No. 3:19-cv-00107-MMD-WGC**<br><br>**DEFENDANT NEVADA LEGISLATURE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

## MOTION

Defendant Nevada Legislature (Legislature), by and through its counsel the Legal Division of the Legislative Counsel Bureau (LCB) under Nevada Revised Statutes (NRS) 218F.720, hereby files this motion to dismiss all claims in Plaintiffs' first amended complaint under FRCP 12(b)(1), 12(b)(6), 12(b)(7) and 12(h)(3). The Legislature's motion to dismiss is made under Local Rule II 7-2 and is based upon the following Memorandum of Points and Authorities and all pleadings, documents and exhibits on file in this case. The Legislature respectfully asks the Court to dismiss, as a matter of law, all claims in Plaintiffs' first amended complaint against all Defendants and to enter judgment in favor of all Defendants accordingly.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Background regarding Plaintiffs' federal constitutional claims.

On Feb. 25, 2019, Plaintiff Rebekah Charleston filed the original complaint (ECF No. 1).  On Mar. 18, 2019, Charleston filed a first amended complaint (ECF No. 12) under FRCP 15(a)(1), which allows a party to amend its pleading once as a matter of course without the consent of the opposing parties or leave of the court.  The first amended complaint added Angela Delgado-Williams and Leah Albright-Byrd as additional Plaintiffs.  (ECF No. 12 at 2-3.)

In their first amended complaint, Plaintiffs plead federal constitutional claims under 42 U.S.C. § 1983 (section 1983) for alleged violations of their civil rights committed by the named Defendants— the State of Nevada; Steve Sisolak in his official capacity as the Governor of the State of Nevada; and the Legislature in its official capacity as the legislative authority of the State of Nevada.  (ECF No. 12 at 2-3.)  Plaintiffs assert federal-question jurisdiction under 28 U.S.C. § 1331 and federal civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3).  (ECF No. 12 at 2.)

Plaintiffs claim that, under the Supremacy Clause of Article VI of the United States Constitution, certain federal criminal laws, which involve travel or other acts in or affecting interstate or foreign commerce and relating to illegal prostitution or sex trafficking, preempt the provisions of state law— NRS 201.354(1) and 244.345(8)—that give less populated counties in Nevada the local option of allowing businesses to operate "a licensed house of prostitution."  (ECF No. 12 at 35-39.)  In addition, Plaintiffs claim that these federal criminal laws also preempt the local ordinances of the counties that have exercised their local option and elected to license and regulate such businesses, which are more commonly known as legal brothels.  (ECF No. 12 at 35-39.)

To support their federal preemption claims, Plaintiffs rely on several federal criminal laws that prohibit a person from engaging in certain unlawful conduct which involves travel or other acts in or affecting interstate or foreign commerce and which relates to illegal prostitution or sex trafficking.  18

1   U.S.C. § 1591(a); 18 U.S.C. § 2422(a); 22 U.S.C. §§ 7101-7114.  Plaintiffs claim that these federal

2   criminal laws preempt Nevada's statutes and local ordinances licensing and regulating legal brothels

3   based on their contention that permitting the operation of legal brothels is in direct conflict with the

4   congressional intent underlying these federal criminal laws to: (1) "prevent persons from persuading,

5   inducing, enticing, and/or coercing any person to travel across state lines to engage in prostitution"; and

6   (2) "ensure just and effective punishment of traffickers and to protect their victims."  (ECF No. 12 at 37-

7   38.)  In particular, Plaintiffs claim that:

8           Because the brothel industry in Nevada openly and notoriously persuades, induces,
        entices, and coerces individuals to travel in interstate commerce to commit acts of
9       prostitution, [Nevada's statutes and local ordinances licensing and regulating legal brothels]
        cannot exist simultaneously with [the federal criminal laws] and thereby [are] preempted
10      and in violation of the Supremacy Clause of the U.S. Constitution.

11  (ECF No. 12 at 38-39.)

12          In their prayer for relief, Plaintiffs ask for a declaratory judgment that Nevada's statutes and local

13  ordinances licensing and regulating legal brothels are "unconstitutional [and] null and void as preempted

14  by federal law," and a preliminary and permanent injunction "prohibiting the State of Nevada and all of

15  its political subdivisions from implementing, enforcing, or putting into force and effect" Nevada's

16  statutes and local ordinances licensing and regulating legal brothels.  (ECF No. 12 at 39.)  Plaintiffs also

17  ask for an order requiring the State of Nevada to allocate funds in an amount not less than $2,000,000

18  per year to the State Contingency Account for deposit to a special fund, designated as the "Nevada Sex

19  Trade Exit Fund," to be used specifically to assist persons seeking to exit the sex trade, including,

20  without limitation, providing mental health services, rent assistance, job training, scholarships, funding

21  for childcare, medical treatments, tattoo removal and other assistance.  (ECF No. 12 at 39.)  Plaintiffs

22  additionally ask that the order: (1) require all persons requesting money from the Nevada Sex Trade Exit

23  Fund to provide proof of having been prostituted in Nevada through legal brothels as a result of the

24  enactment of Nevada's statutes and local ordinances licensing and regulating legal brothels; and

-3-

1   (2) prohibit any person who was ever in brothel ownership or brothel management from receiving

2   money from the Nevada Sex Trade Exit Fund.  (ECF No. 12 at 39.)  Finally, Plaintiffs ask that the order

3   require the Nevada Sex Trade Exit Fund to remain funded and running for 10 years from the date of the

4   order declaring that Nevada's statutes and local ordinances licensing and regulating legal brothels are

5   preempted by federal law.  (ECF No. 12 at 39.)

6   **II.   Argument.**

7   **A.   Plaintiffs' first amended complaint should be dismissed for failure to comply with the
8   Court's Local Rules because Plaintiffs have failed to provide any citations to or copies of the
    county ordinances that they claim are unconstitutional.**

9   A district court's "local rules have the force of law."  Nationstar Mortg. v. Maplewood Springs

10  HOA, 238 F.Supp.3d 1257, 1267 (D. Nev. 2017).  Moreover, a party's "[f]ailure to follow a district

11  court's local rules is a proper ground for dismissal."  Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).

12  Before dismissing for failure to comply with local rules, "the district court is required to weigh several

13  factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

14  docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of

15  their merits; and (5) the availability of less drastic sanctions.'"  Ghazali, 46 F.3d at 53 (quoting

16  Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).

17  Plaintiffs claim federal preemption of several county ordinances that license and regulate legal

18  brothels.  However, contrary to the Court's Local Rules, Plaintiffs have not provided any citations to the

19  county ordinances or, alternatively, attached copies of the county ordinances as exhibits or included

20  them as part of their appendix as required by Local Rules IA 7-3 & 10-3.[1]  Every attorney should know

21  that including proper citations to authority is an elementary function of practicing law, and an attorney's

22
23  _____
    [1]  Under Local Rules IA 7-3 and 10-3, Plaintiffs had a duty to either: (1) provide proper citations to the
    legal authorities set forth in their first amended complaint, including the county ordinances; or (2) if
    those legal authorities "are not accessible on Westlaw or LexisNexis," attach copies of the legal
24  authorities as exhibits to their first amended complaint or include them in their appendix.

failure to include proper citations to authority in a legal pleading or brief constitutes sufficient reason to strike the document or dismiss the case.  See Sekiya v. Gates, 508 F.3d 1198, 1199-1200 (9th Cir. 2007) ("We strike Sekiya's opening brief in its entirety pursuant to Ninth Circuit Rule 28-1 and dismiss the appeal.  We publish this opinion as a reminder that material breaches of our rules undermine the administration of justice and cannot be tolerated.").

In this case, although state law gives certain Nevada counties the local option to license and regulate legal brothels, such licensing and regulation can occur only if those counties first pass county ordinances to do so.  NRS 201.354(1) & 244.345(8).  Therefore, Plaintiffs have failed to provide any citations to or copies of the county ordinances that they claim are unconstitutional.  In the face of such a fundamental failure to comply with the Court's Local Rules, Plaintiffs' first amended complaint is facially deficient and should be dismissed for that failure alone.

**B.  Plaintiffs' claims for declaratory and injunctive relief against all Defendants must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3) because, at the time of filing the original complaint, Plaintiff Rebekah Charleston did not have Article III constitutional standing.**

Under FRCP 12(b)(1) and 12(h)(3), the Court must dismiss claims for relief when it lacks subject-matter jurisdiction to adjudicate those claims.  Because Article III standing is a prerequisite to subject-matter jurisdiction, the Court must dismiss claims when a plaintiff lacks Article III standing to bring the claims.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).  To establish Article III standing to bring claims for declaratory and injunctive relief:

> [A] plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (quoting Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000)).

1   Furthermore, under the time-of-filing rule, the Court must determine whether there is standing

2   based on the facts and parties as they existed when the original complaint was filed.[2]  Lujan v.

3   Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992); Davis v. FEC, 554 U.S. 724, 734 (2008); Friends

4   of the Earth, 528 U.S. at 189; Haro v. Sebelius, 747 F.3d 1099, 1108 (9th Cir. 2014); Biodiversity Legal

5   Found. v. Badgley, 309 F.3d 1166, 1171 (9th Cir. 2002); White v. Lee, 227 F.3d 1214, 1243 (9th Cir.

6   2000).   The time-of-filing rule applies even if the complaint is later amended.  Schreiber Foods v.

7   Beatrice Cheese, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005); S. Utah Wilderness Alliance v. Palma, 707

8   F.3d 1143, 1152-53 (10th Cir. 2013).  If the original plaintiff lacks standing at the time of filing the

9   original complaint, the original plaintiff cannot add new plaintiffs to the case in an attempt to

10  retroactively cure the lack of standing.  Lujan, 504 U.S. at 569-70 n.4; Schreiber Foods, 402 F.3d at

11  1203; Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co., 700 F.2d 889, 893 (2d

12  Cir. 1983); Zurich Ins. v. Logitrans, Inc., 297 F.3d 528, 531 (6th Cir. 2002); Lans v. Gateway 2000, Inc.,

13  84 F.Supp.2d 112, 115 (D.D.C. 1999).

14   In this case, because Plaintiff Charleston was the only Plaintiff at the time of filing the original

15  complaint, she was required to have Article III standing at that time to establish subject-matter

16  jurisdiction.  When Charleston filed the original complaint, she alleged that she resided in Texas, but she

17  did not allege any presently existing personal contacts or connection with Nevada.  (ECF No. 1 at 2 &

18  19-20.)   Although Charleston alleged in the original complaint that she is a former victim of sex

19  trafficking who was forced to engage in illegal prostitution in Nevada, she did not allege in the original

20  complaint that she presently faces any personal threat from illegal prostitution or sex trafficking crimes

21  in Nevada.  (ECF No. 1 at 2 & 19-20.)  Therefore, given that Charleston is not a resident of Nevada, did

22
23  [2]  The court may recognize exceptions to the time-of-filing rule only in rare and extraordinary circumstances that are not present in this case.  See Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570-82 (2004); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832-38 (1989); Mullaney v. Anderson, 342 U.S. 415, 416-17 (1952).
24

1    not allege any presently existing personal contacts or connection with Nevada, and did not allege any

2    presently existing personal threat from illegal prostitution or sex trafficking crimes in Nevada,

3    Charleston failed to plead any allegations in the original complaint from which the Court could conclude

4    that she presently faces any personal threat of actual or imminent harm from application or enforcement

5    of the challenged provisions in Nevada.  In the absence of such allegations in the original complaint,

6    Charleston cannot establish Article III standing for declaratory and injunctive relief against all

7    Defendants as a matter of law.

8          For purposes of Article III standing, it is well established that Charleston's "[p]ast exposure to

9    illegal conduct does not in itself show a present case or controversy regarding injunctive relief," unless

10    she also shows that she presently faces personal threat of actual or imminent harm from application or

11    enforcement of the challenged provisions in Nevada.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S.

12    83, 109 (1998) (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 496-97 (1974)).  Moreover, even though

13    Charleston alleged that she suffered severe and dehumanizing emotional consequences from past

14    exposure to illegal conduct when she was allegedly forced to engage in illegal prostitution in Nevada,

15    "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a

16    real and immediate threat of future injury by the defendant."  <u>City of Los Angeles v. Lyons</u>, 461 U.S.

17    95, 107 n.8 (1983).

18          Additionally, because Charleston failed to plead any allegations in the original complaint from

19    which the Court could conclude that she presently faces any personal threat of actual or imminent harm

20    from application or enforcement of the challenged provisions in Nevada, Charleston's "past injuries do

21    not give [her] standing to obtain injunctive relief to protect third parties from similar harms."  <u>Gratz v.</u>

22    <u>Bollinger</u>, 539 U.S. 244, 284 (2003).  The reason for this rule is that "[t]he Art. III judicial power exists

23    only to redress or otherwise to protect against injury to the complaining party, even though the court's

24    judgment may benefit others collaterally."  <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975).  Thus, it is well

1   established that "standing to sue may not be predicated upon an interest of the kind alleged here which is

2   held in common by all members of the public, because of the necessarily abstract nature of the injury all

3   citizens share." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220 (1974).  As a

4   result, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all

5   or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Warth,

6   422 U.S. at 499 (quoting Schlesinger, 418 U.S. at 217).  In other words, "a federal court may not

7   entertain a claim by any or all citizens who no more than assert that certain practices of [state or local]

8   officers are unconstitutional." Lyons, 461 U.S. at 111.

9       As a resident of Texas, Charleston has, at most, a generalized interest or grievance regarding the

10  application or enforcement of the challenged provisions in Nevada.  Although Charleston alleged past

11  injuries in the original complaint, she did not allege that she presently faces any personal threat of actual

12  or imminent harm from application or enforcement of the challenged provisions in Nevada.  In the

13  absence of such allegations in the original complaint, Charleston did not have Article III standing for

14  declaratory and injunctive relief against all Defendants when she filed the original complaint.

15      Further, Charleston did not have Article III standing when she filed the original complaint because

16  she did not name the proper party-defendants who are charged with enforcing the challenged provisions

17  of state and local law.  For purposes of Article III standing, a plaintiff "must allege personal injury fairly

18  traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested

19  relief." Hein v. Freedom from Religion Found., 551 U.S. 587, 598 (2007) (quoting Allen v. Wright, 468

20  U.S. 737, 751 (1984)). As a result, Article III standing requires a plaintiff to show that the defendant is

21  the proper party who can provide the requested relief. Simon v. E. Ky. Welfare Rights Org., 426 U.S.

22  26, 41-42 (1976) ("Art. III still requires that a federal court act only to redress injury that fairly can be

23  traced to the challenged action of the defendant, and not injury that results from the independent action

24  of some third party not before the court."); Okpalobi v. Foster, 244 F.3d 405, 426 (5th Cir. 2001) (en

banc) ("[A] plaintiff may not sue a state official who is without any power to enforce the complained-of statute."). If the defendant is not the proper party who can provide the requested relief, Article III standing is lacking because the plaintiff's alleged injury would not be traceable to the defendant or redressable by the court. Simon, 426 U.S. at 41-42; Okpalobi, 244 F.3d at 426-29.

In cases where the constitutionality of a statute or rule is at issue, it is well established that "[a] person aggrieved by the application of a legal rule does not sue the rule *maker*—Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law." Quinones v. City of Evanston, 58 F.3d 275, 277 (7th Cir. 1995). Instead, the aggrieved person must sue the public officer charged with enforcing the statute or rule whose actions or threatened actions are allegedly causing the harm. See Fitts v. McGhee, 172 U.S. 516, 529-30 (1899); Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992); S. Pac. Transp. Co. v. Brown, 651 F.2d 613, 615 (9th Cir. 1980).

In this case, the Legislature and Governor are not charged with enforcing the challenged provisions of state law that give certain Nevada counties the local option to license and regulate legal brothels, and they are not charged with enforcing the county ordinances which implement that state law and actually license and regulate legal brothels. The power to enforce the challenged provisions of state and local law belongs exclusively to the proper local officials in the counties that license and regulate legal brothels. See Kuban v. McGimsey, 605 P.2d 623, 625 (Nev. 1980) ("The legislature has specifically provided that the board of county commissioners has the power to license, regulate or suppress brothels in unincorporated cities or towns."). Consequently, because Charleston did not sue the proper local officials in the counties that license and regulate legal brothels at the time of filing the original complaint, she did not name the proper party-defendants when she filed the original complaint, and she lacked Article III standing to bring claims for declaratory and injunctive relief. As a result, Plaintiffs' claims for declaratory and injunctive relief against all Defendants must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3).

**C.   Plaintiffs' claims for declaratory, injunctive and monetary relief against the State and Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment.**

The Eleventh Amendment prohibits federal courts from exercising subject-matter jurisdiction over federal claims that seek any type of relief against the State and its agencies, including the Legislature, and federal claims that seek monetary relief against state officials acting in their official capacity, unless the State has expressly waived its Eleventh Amendment immunity or Congress has expressly abrogated such immunity pursuant to its power under section 5 of the Fourteenth Amendment.  College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 668-70 (1999); Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir. 1999).   Nevada has not waived its Eleventh Amendment immunity. NRS 41.031(3); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).  Nor has Congress abrogated such immunity for section 1983 claims.   Quern v. Jordan, 440 U.S. 332, 345 (1979), *overruled on other grounds by* Hafer v. Melo, 502 U.S. 21, 27 (1991).  Consequently, Plaintiffs' claims for declaratory, injunctive and monetary relief against the State and the Legislature and Plaintiffs' claims for monetary relief against the Governor are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment and must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3).

**D.   Plaintiffs' claims for declaratory, injunctive and monetary relief against the State and Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed under FRCP 12(b)(6) because Plaintiffs cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.**

Under FRCP 12(b)(6), the Court must dismiss a plaintiff's claims when they fail to state a claim upon which relief can be granted as a matter of law.  In this case, Plaintiffs bring claims under the federal civil rights statute in section 1983.  (ECF No. 12 at 35-39.)  Under section 1983, the State and its agencies, including the Legislature, are not "persons" subject to a civil rights action under section 1983.

1   <u>Will v. Mich. Dep't State Police</u>, 491 U.S. 58, 62-71 (1989). Therefore, Plaintiffs cannot obtain any

2   type of relief against the State and its agencies under section 1983, including declaratory, injunctive and

3   monetary relief. <u>Allah v. Comm'r of Dep't Corr. Servs.</u>, 448 F.Supp. 1123, 1125 (N.D.N.Y. 1978) ("It

4   is well established that state agencies are not 'persons' for purposes of the Civil Rights Acts. This is true

5   whether the relief being sought is injunctive and declaratory relief or damages."); <u>Ill. Dunesland Pres.</u>

6   <u>Soc'y v. Ill. Dep't Nat. Res.</u>, 461 F.Supp.2d 666, 671 (N.D. Ill. 2006) ("[T]here is no support for the

7   proposition that claims for injunctive relief may be brought under § 1983 against state agencies."). In

8   addition, Plaintiffs cannot obtain monetary relief against state officials acting in their official capacity

9   under section 1983. <u>Will</u>, 491 U.S. at 71 & n.10.

10          For example, in <u>Rivera Concepcion v. Puerto Rico</u>, 682 F.Supp.2d 164, 172 (D.P.R. 2010), the

11   plaintiff brought claims under section 1983 against the Commonwealth of Puerto Rico and its

12   Legislative Assembly and claims under section 1983 for monetary relief against Jose Aponte and

13   Kenneth McClintock in their official capacity as presiding officers of each legislative house. The

14   district court dismissed all claims under section 1983 against these defendants, stating that:

> The law is clear, however, that neither the Senate nor the Legislative Assembly, nor any
> agency or official representing the Commonwealth of Puerto Rico may be considered a
> person pursuant to section 1983 for the purposes of liability. Plaintiffs' section 1983 claims
> against the Commonwealth of Puerto Rico, the Legislative Assembly and all other branches
> of the Commonwealth of Puerto Rico, and both Jose Aponte and Kenneth McClintock in
> their official capacities are hereby **DISMISSED WITH PREJUDICE.**

19   <u>Id.</u> at 172; <u>see also</u> <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002) ("For section

20   1983 purposes, Puerto Rico is deemed equivalent to a state."). Therefore, Plaintiffs' claims for

21   declaratory, injunctive and monetary relief against the State and Legislature and Plaintiffs' claims for

22   monetary relief against the Governor must be dismissed under FRCP 12(b)(6) because Plaintiffs cannot

23   obtain such relief under 42 U.S.C. § 1983 as a matter of law.

24

**E.   Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed under FRCP 12(b)(6) because those claims are barred by absolute legislative immunity under 42 U.S.C. § 1983 as a matter of law.**

The federal common law provides state legislators with absolute legislative immunity in federal court for any civil claims arising from acts that fall within the sphere of legitimate legislative activity. Tenney v. Brandhove, 341 U.S. 367, 372-76 (1951); Lake Country Estates v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 403-06 (1979).  Under absolute legislative immunity, state legislators are protected in federal court from having to defend themselves against civil claims challenging actions taken by them in their official legislative capacity, regardless of whether those claims seek monetary relief or declaratory and injunctive relief.  Supreme Ct. of Va. v. Consumers Union, 446 U.S. 719, 731-34 (1980); Scott v. Taylor, 405 F.3d 1251, 1253-56 (11th Cir. 2005); Larsen v. Senate of Pennsylvania, 152 F.3d 240, 252-54 (3d Cir. 1998).

Thus, based on absolute legislative immunity, a plaintiff cannot bring a section 1983 claim against a state legislature or its committees or members for enacting state laws or for failing to amend or repeal state laws, even if the state laws violate the Federal Constitution.  Consumers Union, 446 U.S. at 733-34 (finding "little doubt" that if a state legislature enacted an invalid law under the Federal Constitution and if any section 1983 claims were brought against the state legislature or its committees or members for refusing to amend or repeal the law, absolute legislative immunity would require dismissal of the claims); Hall v. Louisiana, 974 F.Supp.2d 944, 954 (M.D. La. 2013) ("It is well established that state legislatures acting within the scope of their legislative duties are immune from civil suits for damages."); Burnette v. Bredesen, 566 F.Supp.2d 738, 744-45 (E.D. Tenn. 2008) (holding that absolute legislative immunity barred section 1983 claims against a state legislature and its members for enacting state laws); Tolman v. Finneran, 171 F.Supp.2d 31, 35-36 (D. Mass. 2001) (stating that "if the sole basis for a § 1983 action is the failure to pass legislation, legislative immunity would foreclose suit."); Warden v. Pataki, 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999) ("The well-settled doctrine of absolute legislative

immunity, however, bars actions against legislators or governors—and, *a fortiori*, legislatures—on the basis of their roles in enacting or signing legislation."). Further, under absolute legislative immunity, a plaintiff cannot bring a section 1983 claim against a state legislature or its committees or members to require the appropriation or distribution of public funds. Tolman, 171 F.Supp.2d at 35-36. Finally, absolute legislative immunity also protects a state's governor when the governor is performing acts that fall within the sphere of legitimate legislative activity, such as sponsoring, advocating for, signing or vetoing legislation. Baraka v. McGreevey, 481 F.3d 187, 196 (3d Cir. 2007) ("[W]hen a governor and a governor's appointee advocate bills to the legislature, they act in a legislative capacity."); Burnette, 566 F.Supp.2d at 744-45.

In this case, Plaintiffs' claims for declaratory, injunctive and monetary relief are all based on the enactment of the challenged provisions of state law—NRS 201.354(1) and 244.345(8)—which give certain Nevada counties the local option to license and regulate legal brothels. (ECF No. 12 at 3 & 35-39.) However, based on absolute legislative immunity, Plaintiffs cannot bring such claims against the Legislature and Governor. Therefore, Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed under FRCP 12(b)(6) because those claims are barred by absolute legislative immunity under 42 U.S.C. § 1983 as a matter of law.

**F.    Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed under FRCP 12(b)(6) because those claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983.**

The statute of limitations applies to constitutional claims, and "[a] constitutional claim can become time-barred just as any other claim can." Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 292 (1983); United States v. Clintwood Elkhorn Mining, 553 U.S. 1, 9 (2008). The section 1983 statute of limitations is calculated by using the statute of limitations for personal injury actions in the state where the claims arose. Wilson v. Garcia, 471 U.S. 261, 279-80 (1985); Owens v. Okure, 488 U.S. 235, 236 (1989). In Nevada, based on the statute of limitations for personal injury

actions in NRS 11.190(4)(e), the section 1983 statute of limitations is two years. <u>Perez v. Seevers</u>, 869 F.2d 425, 426 (9th Cir. 1989); <u>Chachas v. City of Ely</u>, 615 F.Supp.2d 1193, 1202-03 (D. Nev. 2009). The section 1983 statute of limitations applies to both legal claims for monetary relief and equitable claims for declaratory and injunctive relief because "where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy." <u>Levald, Inc. v. City of Palm Desert</u>, 998 F.2d 680, 688 (9th Cir. 1993) (quoting <u>Gilbert v. City of Cambridge</u>, 932 F.2d 51, 57 (1st Cir. 1991)).[3]

The section 1983 statute of limitations begins to run when a plaintiff has a complete and present cause of action and can file suit to obtain relief. <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). This occurs when a plaintiff knows or has reason to know of the alleged events that form the basis of the cause of action. <u>McCoy v. San Francisco</u>, 14 F.3d 28, 29 (9th Cir. 1994). Courts apply this rule of accrual strictly, even if the alleged constitutional violation creates lasting effects that continue to adversely impact a plaintiff long after the violation has occurred. <u>Id.</u> at 30 ("[S]tatute of limitations period is triggered by the decision constituting the discriminatory act and not by the consequences of that act."). Thus, continuing impact from past violations does not extend the statute of limitations. <u>McDougal v. County of Imperial</u>, 942 F.2d 668, 674-75 (9th Cir. 1991). As a result, courts must look solely to when the operative governmental action or decision occurred to trigger the statute of limitations, and they must disregard any continuing harmful effects or consequences produced by the operative action or decision because those continuing harmful effects or consequences are not separately actionable. <u>RK Ventures v. Seattle</u>, 307 F.3d 1045, 1058-61 (9th Cir. 2002); <u>Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara</u>, 344 F.3d 822, 828-29 (9th Cir. 2003).

---

[3]  <u>See also</u> <u>Cope v. Anderson</u>, 331 U.S. 461, 464 (1947) ("[E]quity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy."); <u>Russell v. Todd</u>, 309 U.S. 280, 289 (1940) ("[E]quity will withhold its remedy if the legal right is barred by the local statute of limitations.").

1       In Plaintiffs' first amended complaint, the only operative governmental action or decision alleged

2  against the Legislature is the enactment of the challenged provisions of state law—NRS 201.354(1) and

3  244.345(8)—which give certain Nevada counties the local option to license and regulate legal brothels.[4]

4  (ECF No. 12 at 3 & 35-39.)  The Legislature enacted the challenged provisions of NRS 244.345(8) in

5  1971, and it enacted the challenged provisions of NRS 201.354(1) in 1987, long before the two-year

6  limitations period immediately preceding the filing of the original complaint on Feb. 25, 2019.  See

7  1971 Nev. Stat., ch. 14, § 1, at 11-13 (enacting NRS 244.345(8)); 1987 Nev. Stat., ch. 762, § 2, at 2027

8  (enacting NRS 201.354(1)); Nye Cnty. v. Plankinton, 587 P.2d 421, 423 (Nev. 1978) (deciding in 1978

9  that Nevada's local licensing scheme for legal brothels "repeals the common law rule that a house of

10  prostitution constitutes a nuisance per se.").

11       Further, although Plaintiffs allege past injuries from enforcement of the challenged provisions of

12  state law and the county ordinances which implement that state law and actually license and regulate

13  legal brothels, the Legislature and Governor are not charged with enforcing the challenged provisions of

14  state and local law, and they do not license and regulate legal brothels.  The power to enforce the

15  challenged provisions of state and local law and license and regulate legal brothels belongs exclusively

16  to the proper local officials in the counties that license and regulate legal brothels.  See Kuban v.

17  McGimsey, 605 P.2d 623, 625 (Nev. 1980).  Therefore, with regard to the Legislature and Governor,

18  Plaintiffs have not alleged any operative governmental action or decision within the section 1983 two-

19  year statute of limitations.  Accordingly, Plaintiffs' claims for declaratory, injunctive and monetary

20  relief against the Legislature and Governor must be dismissed under FRCP 12(b)(6) because those

21  claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983.

22

23    [4]  With regard to the Governor, Plaintiffs do not allege any operative governmental action or decision by
      the Governor.  Instead, Plaintiffs allege only that the Governor "is named in this lawsuit in his official

24      capacity only."  (ECF No. 12 at 3.)

**G.   Plaintiffs' claims for declaratory and injunctive relief against the Governor must be dismissed under FRCP 12(b)(6) because the Governor is not charged with enforcing the challenged provisions of state and local law and is therefore not a proper party-defendant under 42 U.S.C. § 1983 as a matter of law.**

Under section 1983, a plaintiff may bring claims asking for prospective declaratory or injunctive relief against state officials acting in their official capacities to enjoin their enforcement of allegedly unconstitutional laws.  Ex parte Young, 209 U.S. 123, 155-56 (1908); L.A. Branch NAACP v. L.A. Unified Sch. Dist., 714 F.2d 946, 952 (9th Cir. 1983).  However, such state officials are proper party-defendants only if they bear some connection to the enforcement of the challenged laws.  Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992); S. Pac. Transp. Co. v. Brown, 651 F.2d 613, 615 (9th Cir. 1980).  As further explained by the Supreme Court in Ex parte Young:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, *it is plain that such officer must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

209 U.S. at 157 (emphasis added).

The connection necessary to trigger Ex parte Young "must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law."  Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998).  The connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  L.A. Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).  For example, "[w]here the enforcement of a statute is the responsibility of parties other than the governor . . . the governor's general executive power [to enforce laws] is insufficient to confer jurisdiction [under Ex parte Young]."  Women's Emer. Net. v. Bush, 323 F.3d 937, 949-50 (11th Cir. 2003); accord Nat'l Audubon Soc'y v. Davis, 307 F.3d 835, 847 (9th Cir. 2002); Confederated Tribes v. Locke, 176 F.3d 467, 469-70 (9th Cir. 1999); L.A. Branch

-16-

1  NAACP, 714 F.2d at 953; Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that

2  a governor is under a general duty to enforce state laws does not make him a proper defendant in every

3  action attacking the constitutionality of a state statute.").

4      As discussed previously with regard to Article III standing, the Governor is not charged with

5  enforcing the challenged provisions of state law that give certain Nevada counties the local option to

6  license and regulate legal brothels, and the Governor is not charged with enforcing the county

7  ordinances which implement that state law and actually license and regulate legal brothels.  The power

8  to enforce the challenged provisions of state and local law belongs exclusively to the proper local

9  officials in the counties that license and regulate legal brothels.  See Kuban v. McGimsey, 605 P.2d 623,

10  625 (Nev. 1980).  Consequently, because Plaintiffs did not sue the proper local officials in the counties

11  that license and regulate legal brothels, they did not name the proper party-defendants to bring their

12  claims for declaratory and injunctive relief.  Accordingly, Plaintiffs' claims for declaratory and

13  injunctive relief against the Governor must be dismissed under FRCP 12(b)(6) because the Governor is

14  not charged with enforcing the challenged provisions of state and local law and is therefore not a proper

15  party-defendant under 42 U.S.C. § 1983 as a matter of law.

16  **H.    Plaintiffs' claims for declaratory, injunctive and monetary relief must be dismissed
    under FRCP 12(b)(7) as a matter of law because Plaintiffs have failed to join all necessary and
    indispensable party-defendants under FRCP 19.**

17

18      Under FRCP 12(b)(7), if a plaintiff has failed to join all necessary and indispensable party-

19  defendants as required by FRCP 19, the plaintiff's claims must be dismissed as a matter of law.  Franz v.

20  E. Columbia Basin Irr. Dist., 383 F.2d 391, 392 (9th Cir. 1967) ("Where, as here, an indispensable party

21  is not before the court, dismissal must follow."); Clark v. State of Wash., 366 F.2d 678, 682 (9th Cir.

22  1966) ("[D]ismissal of an action is warranted when an indispensable party . . . is not made a party to the

23  action.").  For example, if a plaintiff has failed to join as party-defendants the proper state or local

24  officials charged with enforcing a statute, "dismissal must follow."  Bogan v. New London Hous. Auth.,

366 F.Supp. 861, 865 (D. Conn. 1973) (quoting Franz, 383 F.2d at 392).

Under the Due Process Clause, a person may not be deprived of legal rights in a judicial proceeding unless the person has been made a party to that proceeding.  Martin v. Wilks, 490 U.S. 755, 758-62 (1989).  This constitutional rule stems from the "deep-rooted historic tradition that everyone should have his own day in court."  Id. at 762.  These due process principles are reflected in FRCP 19, which requires joinder of all persons who qualify as necessary and indispensable parties that are needed for a just adjudication of the litigation so that all parties having material interests in the subject matter of the litigation will have proper notice of the litigation and an opportunity to protect their interests.

The burden is on the plaintiff to join all necessary parties, and the law does not impose any burden on a person to intervene voluntarily in an action when that person has not been made a party to the action by service of process.  Martin, 490 U.S. at 762-65.  Thus, "[u]nless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights."  Chase Nat'l Bank v. City of Norwalk, 291 U.S. 431, 441 (1934).  Accordingly, due process is not satisfied by the fact that a person has knowledge of the action and an opportunity to intervene.  Martin, 490 U.S. at 762-65.  Instead, "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree."  Id. at 765.

In this case, Plaintiffs are asking for: (1) a declaratory judgment that the local ordinances of the Nevada counties that license and regulate legal brothels are preempted by federal criminal laws; and (2) injunctive relief prohibiting those Nevada counties from implementing or enforcing their own local ordinances.  (ECF No. 12 at 39.)  However, it is well established that "[a] public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices."  E.E.O.C. v. Peabody W. Coal Co., 610 F.3d 1070, 1082 (9th Cir. 2010).  Given Plaintiffs seek relief that would directly and adversely affect the interests of the Nevada counties in the validity of

their own local ordinances, those Nevada counties are necessary and indispensable parties that are needed for a just adjudication of this litigation because they have material interests in the subject matter of this litigation.  As such, those Nevada counties are entitled by due process principles to proper notice of this litigation and an opportunity to protect their interests.

Furthermore, the Legislature and Governor cannot adequately represent and protect the interests of those Nevada counties in the validity of their own local ordinances.  As discussed previously, the Legislature and Governor are not charged with enforcing the challenged provisions of state and local law, and they do not license and regulate legal brothels.  The power to enforce the challenged provisions of state and local law and license and regulate legal brothels belongs exclusively to the proper local officials in the counties that license and regulate legal brothels.  See Kuban v. McGimsey, 605 P.2d 623, 625 (Nev. 1980).  Therefore, because the Legislature and Governor are not the proper party-defendants to represent and protect the interests of those Nevada counties in the validity of their own local ordinances, Plaintiffs' claims for declaratory, injunctive and monetary relief must be dismissed under FRCP 12(b)(7) as a matter of law because Plaintiffs have failed to join all necessary and indispensable party-defendants under FRCP 19.

**I.    Plaintiffs' claims for declaratory, injunctive and monetary relief against all Defendants must be dismissed under FRCP 12(b)(6) as a matter of law because the federal criminal laws do not preempt the challenged provisions of state and local law with regard to the licensing and regulation of legal brothels.**

Because federal law is the supreme law of the land under the Supremacy Clause, Congress has the power to preempt state and local law with federal law in areas in which Congress is authorized to legislate.  Arizona v. United States, 567 U.S. 387, 398-99 (2012).  However, unless Congress uses express preemption language that clearly contemplates the preemption of substantial areas of traditional state regulation, a general presumption against federal preemption applies where "the field which Congress is said to have pre-empted has been traditionally occupied by the States."  United States v.

_Locke_, 529 U.S. 89, 108 (2000) (quoting _Jones v. Rath Packing Co._, 430 U.S. 519, 525 (1977)).  Based on the presumption against preemption, special rules of construction apply when federal law could be interpreted to intrude into areas traditionally regulated by state law.  _Gregory v. Ashcroft_, 501 U.S. 452, 458-64 (1991).

Under those special rules of construction, it is presumed that Congress did not intend to alter the usual constitutional balance of power between the states and the Federal Government unless Congress makes its intention to do so unmistakably clear in the language of the statute.  _Id._ at 460.  "This plain statement rule is nothing more than an acknowledgement that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere."  _Id._ at 461.  Consequently, to avoid any unintended encroachment on the authority of the states, "a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption."  _CSX Transp. v. Easterwood_, 507 U.S. 658, 664 (1993).  Thus, a court generally will not interpret a federal statute to preempt the traditional police powers of the states unless that result is "the clear and manifest purpose of Congress."  _Id._ (quoting _Rice v. Santa Fe Elevator Corp._, 331 U.S. 218, 230 (1947)); _Wyeth v. Levine_, 555 U.S. 555, 565 (2009).

In this case, the challenged provisions that give certain Nevada counties the local option to license and regulate legal brothels involve areas that are traditionally regulated by state and local law, including public health and safety and the licensing and regulation of businesses and professions.  _Hillsborough Cnty. v. Automated Med. Labs._, 471 U.S. 707, 719 (1985) ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."); _Chamber of Commerce v. Whiting_, 563 U.S. 582, 604-05 (2011) ("Regulating in-state businesses through licensing laws has never been considered such an area of dominant federal concern.").  Thus, to establish preemption in this case, Plaintiffs must clearly show "a conflict between a particular local provision and the federal scheme, that is strong enough to overcome the presumption that state and local regulation of health and safety matters

can constitutionally coexist with federal regulation." Hillsborough Cnty., 471 U.S. at 716.

On their face, the federal criminal laws that form the basis of Plaintiffs' preemption claims do not prohibit the act of prostitution.  18 U.S.C. § 1591(a); 18 U.S.C. § 2422(a); 22 U.S.C. §§ 7101-7114. Rather, the federal criminal laws prohibit a person from engaging in certain unlawful conduct which involves travel or other acts in or affecting interstate or foreign commerce and which relates to illegal prostitution or sex trafficking.  Id.  The federal criminal laws generally do not apply to conduct occurring wholly within a single state.  As explained by the First Circuit:

> For example, the [Mann] Act was understood to reach transportation that occurred solely within Hawaii when it was a territory.  See Lee v. United States, 125 F.2d 95, 96 (9th Cir. 1942). Once Hawaii achieved statehood, however, that same conduct could no longer violate the Mann Act.

United States v. Maldonado-Burgos, 844 F.3d 339, 344 (1st Cir. 2016).

Thus, because the federal criminal laws do not prohibit the act of prostitution occurring wholly within a single state, there is nothing in the challenged provisions of state and local law providing for the licensing and regulation of legal brothels that directly conflicts with the federal criminal laws. Furthermore, there is nothing in the challenged provisions of state and local law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hillsborough Cnty., 471 U.S. at 713 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  Instead, the challenged provisions of state and local law can constitutionally coexist with the federal criminal laws. This constitutional coexistence is analogous to the constitutional coexistence of the federal Controlled Substances Act (CSA) and the medical marijuana laws of several states.

When confronted with the question of whether the federal CSA—which prohibits the use and possession of marijuana—preempts state medical marijuana laws that allow such use and possession for certain medical purposes, the majority of courts have found no federal preemption.  See, e.g., Noffsinger v. SSC Niantic Operating Co., 273 F.Supp.3d 326, 333-34 (D. Conn. 2017) (holding that CSA did not

preempt provisions of Connecticut's medical marijuana law that prohibited employers from discriminating against employees authorized to use medical marijuana under state law); Reed-Kaliher v. Hoggatt, 347 P.3d 136, 140-42 (Ariz. 2015) (holding that CSA did not preempt provisions of Arizona's medical marijuana law that provided immunity from prosecution for marijuana use or possession under state law); Ter Beek v. City of Wyoming, 846 N.W.2d 531, 536-41 (Mich. 2014) (holding that CSA did not preempt provisions of Michigan's medical marijuana law that provided immunity from prosecution for marijuana use or possession under state law); City of Palm Springs v. Luna Crest Inc., 200 Cal.Rptr.3d 128, 131-33 (Cal. Ct. App. 2016) (holding that CSA did not preempt city's licensing and regulatory program for medical marijuana dispensaries); City of Garden Grove v. Superior Ct., 68 Cal.Rptr.3d 656, 676-77 (Cal. Ct. App. 2007) (holding that CSA did not preempt provisions of California's medical marijuana law that provided immunity from prosecution for marijuana use or possession under state law).  As explained by the California Court of Appeal:

> In considering the City's preemption argument, it is also important to recognize what the [California law] does not do.  It does not expressly "exempt medical marijuana from prosecution under federal law."  "[O]n its face," the Act "does not purport to make legal any conduct prohibited by federal law; it merely exempts certain conduct by certain persons from California drug laws."  While in passing the [California law] the voters may have wanted to go further and actually exempt marijuana from prosecution under federal law, a result which would have led to an irreconcilable conflict between state and federal law, we know from Raich that the Commerce Clause forecloses that possibility.  So, what we are left with is a state statutory scheme that limits state prosecution for medical marijuana possession but does not limit enforcement of the federal drug laws.  This scenario simply does not implicate federal supremacy concerns.

City of Garden Grove v. Superior Ct., 68 Cal.Rptr.3d 656, 676-77 (Cal. Ct. App. 2007) (quoting United States v. Cannabis Cultivators Club, 5 F.Supp.2d 1086, 1100 (N.D. Cal. 1998)).

Similarly, with regard to the challenged provisions of state and local law providing for the licensing and regulation of legal brothels, the challenged provisions do not exempt any illegal activity from prosecution under federal law, and the challenged provisions do not purport to make legal any conduct prohibited by federal law.  Indeed, because the federal criminal laws do not prohibit the act of

prostitution occurring wholly within a single state, the challenged provisions do not conflict with the federal criminal laws in any way at all.  As a result, the challenged provisions establish a state and local regulatory scheme that limits state prosecution for certain acts of prostitution occurring wholly within Nevada but does not limit enforcement of the federal criminal laws in any way at all.  Because this state and local regulatory scheme does not implicate federal supremacy concerns, the challenged provisions of state and local law can constitutionally coexist with the federal criminal laws.

Accordingly, Plaintiffs cannot clearly show a conflict between the challenged provisions of state and local law and the federal criminal laws that is strong enough to overcome the presumption that the state and local regulatory scheme can constitutionally coexist with the federal regulatory scheme. Therefore, Plaintiffs' claims for declaratory, injunctive and monetary relief against all Defendants must be dismissed under FRCP 12(b)(6) as a matter of law because the federal criminal laws do not preempt the challenged provisions of state and local law with regard to the licensing and regulation of legal brothels in Nevada.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## CONCLUSION

Based upon the foregoing, the Legislature respectfully asks the Court to: (1) grant the Legislature's motion to dismiss, as a matter of law, all claims in Plaintiffs' first amended complaint against all Defendants under FRCP 12(b)(1), 12(b)(6), 12(b)(7) and 12(h)(3); and (2) enter judgment in favor of all Defendants accordingly.

DATED:     This __30th__ day of April, 2019.

Respectfully submitted,

**BRENDA J. ERDOES**
Legislative Counsel

By:    /s/  Kevin C. Powers
    **KEVIN C. POWERS**
    Chief Litigation Counsel
    Nevada Bar No. 6781
    NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
    401 S. Carson Street
    Carson City, Nevada 89701
    Tel: (775) 684-6830; Fax: (775) 684-6761
    kpowers@lcb.state.nv.us
    *Attorneys for Nevada Legislature*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division, and that on the __30th__ day of April, 2019, pursuant to FRCP 5(b) and Local Rule Part IC, I filed and served a true and correct copy of Defendant Nevada Legislature's Motion to Dismiss Plaintiffs' First Amended Complaint, by using the Court's CM/ECF system for electronic service directed to the following:

**JASON D. GUINASSO, ESQ.**
HUTCHISON & STEFFEN, PLLC
500 Damonte Ranch Pkwy. Ste. 980
Reno, NV 89521
jguinasso@hutchlegal.com
*Attorneys for Plaintiffs*

**AARON D. FORD, ESQ.**
Attorney General
**GREGORY L. ZUNINO, ESQ.**
Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
100 N. Carson St.
Carson City, NV 8970l
GZunino@ag.nv.gov
*Attorneys for Defendants State of Nevada and Steve Sisolak, in his capacity as Governor of the State of Nevada*

**GUS W. FLANGAS, ESQ.**
**JESSICA K. PETERSON, ESQ.**
FLANGAS DALACAS LAW GROUP
3275 S. Jones Blvd. Ste. 105
Las Vegas, NV 89146
gwf@fdlawlv.com
jkp@fdlawlv.com
*Attorneys for Proposed Defendants-Interveners Cash Processing Services, Inc. and Lance Gilman*

/s/ Kevin C. Powers
An Employee of the Legislative Counsel Bureau