JASON D. GUINASSO, ESQ. (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
500 Damonte Ranch Parkway, Suite 980
Reno, NV 89521
Telephone: (775) 853-8746
Facsimile: (775) 201-9611
jguinasso@hutchlegal.com
*Attorney for Plaintiffs Rebekah Charleston*
*Angela Delgado-Williams; and*
*Leah Albright-Byrd*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON; ANGELA DELGADO-WILLIAMS; and LEAH ALBRIGHT-BYRD; <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA; <br><br> Defendants. | Case No.: 3:19-cv-00107-MMD-WGC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT LEGISLATURE OF THE STATE OF NEVADA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br> **(ECF No. 31)** |

Plaintiffs Rebekah Charleston, Angela Delgado-Williams, and Leah Albright-Byrd (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys, JASON D. GUINASSO, ESQ., and the law offices of HUTCHISON & STEFFEN, PLLC, hereby the April 30, 2019 *Motion to Dismiss* filed by Defendant Nevada Legislature's (hereinafter referred to as "Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 31).

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In its Motion to Dismiss, the Nevada Legislature raised many of the same arguments as the State of Nevada and Governor Sisolak in their Motion to Dismiss. Therefore, Plaintiffs in this Opposition will submit many of the same arguments previously made in Opposition to the Defendant State of Nevada's and Defendant Governor Sisolak's Motion to Dismiss since there is no federal or local rule allowing Plaintiffs to consolidate the responses into one response or to incorporate by reference arguments made in one Opposition to a Motion to Dismiss of one Defendant with a contemporaneously filed Motion to Dismiss of another Defendant.

Defendant Nevada Legislature was named to this lawsuit by Plaintiffs because the Nevada Legislature is a necessary and indispensable party to this cause of action because, generally, state legislatures have an independent "legal interest in defending the constitutionality of [its] laws" that is separate and distinct from the interests of state officials who are charged with administering those laws. *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006). As the Nevada Legislature recently argued in this Court in the case entitled *Pharma Research and Manufacturers of America, et al v. B. Sandoval, et al.* Case No. 2:17-cv-02315 in support of *Nevada Legislature's Motion to Intervene as Defendant to Defend Constitutionality of Senate Bill No. 539 (2017)* (ECF No. 39, pg. 5 at 4*)*, the Legislature has an independent legal interest in defending the constitutionality of its laws that is separate and distinct from the interests of state officials who are charged with administering those laws.

This Court should not dismiss Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief (ECF No.12). Plaintiffs have plead sufficient facts and related claims for relief to invoke the jurisdiction of this Court. In this regard, Plaintiffs have plead sufficient facts and claims for relief to show that they have suffered injuries that are both "concrete and

particularized," and "actual or imminent, not conjectural or hypothetical." Moreover, Plaintiffs have plead sufficient facts and claims for relief in their First Amended Complaint to show there is a causal link between the injury and the conduct of Defendants. To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). For purposes of motion to dismiss, material allegations of complaint are taken as admitted and complaint is to be liberally construed in favor of plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir.1983).

This lawsuit is about redressing specific and real harms inflicted upon the Plaintiffs and thousands of others similarly situated by the State of Nevada and its political subdivisions. In this regard, this lawsuit specifically seeks a court order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the related ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null, and void as preempted by federal law; and, a preliminary and permanent injunction be issued prohibiting the State of Nevada and all of its political subdivisions from continuing to implement, enforce, or put into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8). Additionally, this lawsuit also requests an order for the State to create and fund a "Nevada Sex Trade Exit Fund" to provide mental health services, rent assistance, job training, scholarships, and funding for medical treatments for women prostituted through Nevada's legal brothels. This remedy is appropriate and within the Court's authority to redress injuries caused by State laws that cause harm to Plaintiffs and countless others similarly situated to plaintiffs.

The gravamen of the requested relief in Plaintiffs' First Amended Complaint rises and falls with this Court's ultimate determination regarding whether Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) are pre-empted by federal law. If after the case has been litigated

through dispositive motion or trial in favor or Plaintiffs' request for relief and the Court strikes down Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) as unconstitutional, the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties will be rendered null and void. The Court will not need to review or analyze the county ordinances to reach a conclusion regarding the facts and claims plead in Plaintiffs' First Amended Complaint. Therefore, citing and/or providing the referenced county ordinances is not necessary under Local Rules IA 7-3 & 10-3. However, if the Court deems it necessary to review the county ordinances to reach a decision on the Constitutional challenges to Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), the Plaintiffs seek leave to amend their First Amended Complaint to provide those ordinances as exhibits.

Plaintiffs, have been irreparably harmed. By disregarding federal law, the acts of Defendants State of Nevada, et al., including, but not limited to, authorizing a legalized commercial prostitution market to operate in the State, have created the danger that has led to the irreparable harm suffered by the Plaintiffs and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution (i.e., serial rape, sexual servitude, sexual and physical assault, psychological trauma, bodily injury, and risk of sexually transmitted diseases) without protections from the inherent dangers federal law was enacted to prevent. Further, Plaintiffs submit that, because the brothel industry in Nevada with the endorsement of the State of Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to buy people for acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted and in violation of the Supremacy Clause of the U.S. Constitution. In accordance with the foregoing, Plaintiffs respectfully request that this

Court give Plaintiffs an opportunity to prove up their claims for relief and deny Defendant's *Motion to Dismiss (*ECF No. 31).

## II. <u>ARGUMENT</u>

### A. THIS COURT SHOULD NOT DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT BECAUSE CITATIONS TO OR PRODUCTION OF COUNTY ORDINANCES IS NOT NECESSARY FOR THE COURT TO DECIDE WHETHER NEV. REV. STAT. 201.354(1) AND NEV. REV. STAT. 244.345(8) ARE CONSTITUTIONAL.

The Nevada Legislature has argued that Plaintiffs' First Amended Complaint should be dismissed for allegedly, " . . . fail[ing] to comply with the Court's Local Rules because Plaintiffs have failed to provide any citations to or copies of the county ordinances that they claim are unconstitutional." **(ECF No. 31, page 5 at 8)**. This hyper technical argument misses the point of Plaintiffs' First Amended Complaint and completely fails to understand what Plaintiffs are asking this Court to do. The gravamen of the requested relief in Plaintiffs' First Amended Complaint rises and falls with this Court's ultimate determination regarding whether Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) are pre-empted by federal law. If after the case has been litigated through dispositive motion or trial in favor or Plaintiffs' request for relief and the Court strikes down Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) as unconstitutional, the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties will be rendered null and void. The Court will not need to review or analyze the county ordinances to reach a conclusion regarding the facts and claims plead in Plaintiffs' First Amended Complaint.

Therefore, Plaintiffs have not violated any local rule because citing and/or providing the referenced county ordinances is not necessary under Local Rules IA 7-3 & 10-3.

However, if the Court deems it necessary to review the county ordinances to reach a decision on the Constitutional challenges to Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), the Plaintiffs hereby request leave to amend their First Amended Complaint to

provide those ordinances as exhibits. Although Plaintiffs have previously amended their Complaint as a matter of right, they have not previously requested leave of this Court to amend their First Amended Complaint. Nothing in the record indicates Plaintiffs' bad faith or shows that allowing Plaintiffs leave to amend will cause undue delay or will prejudice Defendants. *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 645–46 (D. Ariz. 2001).

## III. PLAINTIFFS HAVE SUFFICIENTLY PLEAD CLAIMS FOR RELIEF THAT ARE JUSTICIABLE.

In their Motion to Dismiss, the Nevada Legislature also argued that this, " . . . Court must dismiss claims for relief when it lacks subject-matter jurisdiction to adjudicate those claims." **(ECF No. 31, pg. 5 at 15**).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional ...." *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (*citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack is based on the challenger's assertion that allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Id*. A factual attack disputes the validity of allegations that, if true, would invoke federal jurisdiction. *Id*.

## A. PLAINTIFFS HAVE STANDING TO BRING THIS LAWSUIT.

Standing is a threshold matter central to the court's subject matter jurisdiction. *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir.2007); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142, 1148, 173 L.Ed.2d 1 (2009) (Article III limits judicial power to "cases" and "controversies"). Constitutional standing has three elements. To establish standing, a plaintiff must show that he or she has suffered or is threatened with an injury that is

both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical;" that there is a causal link between the injury and the conduct of which the plaintiff complains— that is, that the injury is "fairly traceable" to the challenged conduct; and that the injury is "likely" to be "redressed by a favorable decision." *Id.,* 511 F.3d at 985 (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotations omitted)); *see also Skaff v. Meridien North America Beverly Hills*, LLC*,* 506 F.3d 832, 837 (9th Cir.2007). *Moeller v. Taco Bell Corp*., 816 F.Supp.2d 831, 849 (N.D.Cal., 2011).

Here, Plaintiffs have plead sufficient facts and related claims for relief to invoke the jurisdiction of this Court. In this regard, Plaintiffs have plead sufficient facts and claims for relief to show that they have suffered injuries that are both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." Moreover, Plaintiffs have plead sufficient facts and claims for relief to show there is a causal link between the injury and the conduct of which the plaintiffs complain. All of the injuries claimed by the Plaintiffs are "fairly traceable" to the State of Nevada's conduct and, if the Court were to rule in Plaintiffs favor at the conclusion of litigation in this contested case, the injuries Plaintiffs and those similarly situated have suffered are likely to be redressed by a favorable decision. However, at this stage of the litigation, the complaint does <u>not</u> have to prove that Plaintiffs are entitled to the relief they are requesting in the complaint, rather the complaint must plead sufficient facts and claims to invoke federal jurisdiction. Plaintiffs have plead sufficient facts and claims to invoke the jurisdiction of this Court to redress real and continued harms to the Plaintiffs and those similarly situated.

**B. A "CASE OF ACTUAL CONTROVERSY" HAS BEEN PRESENTED BY PLAINTIFFS FOR WHICH THIS COURT CAN PROVIDE DECLARATORY RELIEF.**

Declaratory relief may be sought as means to challenge the constitutionality of a federal law or state statute or local ordinance. *Doe v. Gallinot* (9th Cir. 1981) 657 F2d 1017. The

declaratory remedy is committed to the sound discretion of the court. *Mechling Barge Lines v. United States*, 368 U.S. 324, 331, 82 S.Ct. 337, 341, 7 L.Ed.2d 317, 322 (1961); *Public Service Commission v. Wycoff Co*., 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291, 294-95 (1952); *Brillhart v. Excess Insurance Co*., 316 U.S. 491, 494-98, 62 S.Ct. 1173, 1175-77, 86 L.Ed. 1620, 1625-27 (1942). *Doe v. Gallinot*, 657 F.2d 1017, 1024–25 (C.A.Cal., 1981). The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc*., 127 S.Ct. 764, 770, 549 U.S. 118, 126 (U.S.,2007).

The phrase "case of actual controversy" in the Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III. *Id.* at 240, 57 S.Ct. 461. (Id.) The standards for determining whether a particular declaratory-judgment action satisfies the case-or-controversy requirement—*i.e.,* "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief. *MedImmune, Inc. v. Genentech, Inc*., 127 S.Ct. 764, 766, 549 U.S. 118, 118 (U.S.,2007) (*quoting*, *Maryland Casualty Co. v. Pacific Coal & Oil Co.,*312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826). Article III of the Constitution limits the judicial power to the adjudication of "Cases" or "Controversies." *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 777, 549 U.S. 118, 137 (U.S.,2007).

In the context of declaratory judgment actions, federal courts have provided a uniform framework for assessing whether an Article III case or controversy exists. In the constitutional sense, a "Controversy" is "distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Ibid.* (*citing* United *States v. Alaska S.S. Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 64 L.Ed. 808 (1920)). "The controversy must be definite and

concrete, touching the legal relations of parties having adverse legal interests." 300 U.S., at 240–241, 57 S.Ct. 461. Finally, "[i]t must be a real and substantial controversy ..., as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.,* at 241, 57 S.Ct. 461. *MedImmune, Inc. v. Genentech*, Inc., 127 S.Ct. 764, 777, 549 U.S. 118, 138 (U.S.,2007).

In this case, Plaintiffs have sufficiently plead facts that are not hypothetical, and further have plead sufficient facts to establish that an actual controversy exists; therefore, Plaintiffs are entitled to invoke this Court's jurisdiction and have this Court consider their request for declaratory relief. Specifically, the Plaintiffs have asserted in their First Amended Complaint that the unconstitutional actions of Defendants State of Nevada, et al., including, but not limited to, authorizing a legalized commercial sex trafficking and prostitution market to operate in the State, has created a legal industry that has exposed Plaintiffs and other similarly situated to Plaintiffs to the dangers and resulting injuries of sex trafficking and prostitution (i.e., serial rape, sexual servitude, sexual and physical assault, psychological trauma, bodily injury, and risk of sexually transmitted diseases) without regard to the protections that the federal law was enacted to prevent. Further, Plaintiffs submit that, because the brothel industry causes individuals to travel in interstate and foreign commerce to buy people for acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted and in violation of the Supremacy Clause of the U.S. Constitution. Therefore, Plaintiffs have asked this Court for an order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the related ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null, and void as preempted by federal law.

/ / /

### C. PLAINTIFFS HAVE ADEQUATELY PLEAD FOR INJUNCTIVE RELIEF TO PUT A STOP TO THE SUBSTANTIAL, REPETITIVE, AND CONTINUING HARMS SUSTAINED BY THE PLAINTIFFS AND OTHERS SIMILARLY SITUATED TO PLAINTIFFS.

The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of the requirements in *Lujan v. Defs. of Wildlife*, 112 S. Ct. 2130, 2152 (1992). The plaintiff must demonstrate that he has suffered or is threatened with a "concrete and particularized" legal harm, *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130, coupled with "a sufficient likelihood that he will again be wronged in a similar way.*" City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). As to the second inquiry, he must establish a "real and immediate threat of repeated injury.*" O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *Lyons,* 461 U.S. at 103, 103 S.Ct. 1660.

However, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea,* 414 U.S. at 496, 94 S.Ct. 669. In addition, the claimed threat of injury must be likely to be redressed by the prospective injunctive relief. *Graham v. Fed. Emergency Mgmt. Agency,* 149 F.3d 997, 1003 (9th Cir.1998) (recognizing that "[p]laintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision" but "only that a favorable decision is *likely* to redress" their injuries) *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985–86 (C.A.9 (Cal.),2007). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (*citing* O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

The Ninth Circuit has repeatedly held that "the deprivation of constitutional rights unquestionably constitutes irreparable injury" *County of Santa Clara v. Trump*, 250 F.Supp.3d 497, 537 (N.D.Cal., 2017) *(quoting Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013). "[E]ven where the constitutional injury is structural, "the constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm." *County of Santa Clara v. Trump*, 250 F.Supp.3d 497, 538 (N.D.Cal., 2017)(*quoting* American Trucking, 559 F.3d at 1058).

By disregarding federal law, the acts of Defendants constitute a clear violation of the Supremacy Clause of the Constitution, including, but not limited to, authorizing a legalized interstate and foreign commercial prostitution and sex trafficking market to operate in the State in violation of clear and unambiguous federal laws prohibiting interstate and foreign prostitution and sex trafficking. Further, the State of Nevada laws permitting prostitution in counties with populations of less than 700,000 people has created the specific dangers the federal laws were enacted to prevent which has directly resulted in irreparable harm to Plaintiffs and other similarly situated victims of sex trafficking. Unless and until this Court issues a permanent injunction prohibiting the State of Nevada and all of its political subdivisions from implementing, enforcing, or putting into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) and the resulting county ordinances, Plaintiffs and others similarly situated to Plaintiffs will continue to be irreparably harmed. Moreover, an injunction will not only cut off the harms caused to Plaintiffs but will prevent other similarly situated plaintiffs from suffering the same harms.

Nevada's legal system is the direct and proximate cause of the injuries Plaintiffs sustained as a result of being sex trafficked to Nevada. If Nevada did not permit legal prostitution, Plaintiffs would not have been sex trafficked to Nevada. The legal system

commodifies women and creates an expectation and demand that women can be bought and sold for sex in Nevada legally.    The U.S. State Department's official government position is that, "prostitution is inherently harmful and dehumanizing and fuels trafficking in persons."[1]

Nevada local governments with populations of less than 700,000, which are political subdivisions of the State and who can only exercise specific enumerated powers expressly granted by the State, receive hundreds of thousands of dollars in brothel taxes and fees. Local governments are only permitted to enact promulgate and enforce ordinances within the authority granted to them by the State. *See City of Reno v. Reno Police Protective Ass'n*, 98 Nev. 472, 475, 653 P.2d 156, 158 (1982) (allowances provided by the general laws of the state may not, absent a special dispensation of the legislature, be prohibited by local ordinances). These local governments under the color of State Law are permitted to act as defacto pimps who get their cut of what prostituted women charge interstate and foreign travelers who come to Nevada brothels to engage in prostitution.[2] Meanwhile, local governments with populations of more the 700,000 who are prohibited from legalizing prostitution in licensed brothels, like Las Vegas, aggressively promote prostitution as a means to encourage tourism to Nevada.[3]  Las Vegas is estimated to bring in over five billion dollars ($5,000,000,000) per year from interstate and foreign travelers who come to Nevada to engage in prostitution.  Further, last year in recognition of the tourism dollars brought to the State by prostitution, the 2018 Nevada Day Celebration

---

[1] *See* **Exhibit 1** at **0001-0002 (U.S. DEPARTMENT OF STATE, TRAFFICKING IN PERSONS REPORT at pg. 27 (2007));** Case studies published by researchers Niklas Jakobsson and Andreas Kotsadam support a causal link between criminalizing buying sex and reduced human trafficking. Jakobsson and Kotsadam found that trafficking of persons for commercial sexual exploitation is least prevalent in countries where prostitution is illegal and most prevalent in countries where prostitution is legalized.

[2] *See* **Exhibit 2** at **0003-0005 (***Lyon County Annual Budget at pages 13, 32);* *See also* **Exhibit 3 at 0006-0008 (Nye County Annual Budget 14, 110)**.

[3] *See* **Exhibit 4** at **0009-0032** (Articles **on Branding and Marketing Efforts of Las Vegas for "Sin City")**; *see also* **Exhibit 5 at 0033-0199 (Kateri M. Grillot, WHAT HAPPENED IN VEGAS?: THE USE OF DESTINATION BRANDING TO INFLUENCE PLACE ATTACHMENTS (2007);** *see also* **Exhibit 6 at 0200-0201 (Sin City Chamber of Commerce references).**

titled "A State of Economic Diversity" showcased "legal prostitution" as a party of the "extremely diverse economic makeup" of Nevada's economy. [4]  Moreover, Nevada government officials and leaders within the political subdivisions of Nevada openly embrace and encourage individuals into interstate and foreign commercial travel to engage in prostitution.   State lawmakers will often capitalize on Nevada's notoriety for encouraging people to come to Nevada to engage in prostitution in order to legalize and encourage the legalization of other federally prohibited commercial activities.[5]

Nevada's actions and inactions unavoidably conflict with the federal law and policy established to prevent the exact harms that Plaintiffs assert.  The federal government explicitly criminalizes prostitution.  The Mann Act, now codified as U.S.C. 18 § 2422(a) (2018), specifically provides "[w]hoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce … **to engage in prostitution**, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added) Further, C.F.R 22 § 40.24(b) (2018) sets forth the meaning of Prostitution as "engaging in promiscuous sexual intercourse for hire." It is facially clear this statute is designed specifically to combat prostitution and human trafficking for the purposes of prostitution.

Plaintiffs submit in their First Amended Complaint that Nevada's system of legalization

---

[4] *See* **Exhibit 7 at 0202-0203 (Nevada Day 2018 Website).**
[5] *See* **Exhibit 8 at 0204- 0216(Minutes from Assembly Committee on Government Affairs, May, 12, 2017 at page 12; Exhibit E PowerPoint presentation by Senator Segerblom); (Legislator stated in support of his efforts to create lawful places for tourists to use marijuana publicly, "Nevada is known for its legal vices and pleasure, which is why many people come here. We allow some things other states do not, things everyone may not condone but are nonetheless going on within a couple of miles of this building," and again, "To those of you who are worried about Nevada's reputation, Nevada has a history of endorsing exotic activities [page 3, (Exhibit E)]. About five miles over the hill in Mound House are brothels, so the idea that we might think a marijuana social club would be inappropriate for Nevada does not seem realistic.").** *See also* *See* **Exhibit 9 at 0217-0221 (Campaign Contribution Reports from Brothels and Brothel Owners to State Officials).**

should be struck down and enjoined because it cannot co-exist with the federal law so long as individuals are encouraged to travel to Nevada through interstate and foreign commerce to engage in prostitution. The mere existence of the legal system in Nevada encourages this conflict with federal law because it is the only state in the country that permits prostitution in brothels.

### D. 11TH AMENDMENT IMMUNITY DOES NOT APPLY.

The Eleventh Amendment immunizes states, an arm of the state, its instrumentalities, or its agencies from suits brought in federal courts. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). There are three exceptions to this rule: (1) "Congress may abrogate that immunity pursuant to its lawmaking powers"; (2) "a state may waive its Eleventh Amendment immunity by consenting to suit"; and (3) "immunity does not apply when the plaintiff" sues a state official in his or her official capacity for prospective injunctive relief. *Steshenko v. Gayrard*, 70 F.Supp.3d 979, 988–89 (N.D. Cal. 2014); *see Ex Parte Young*, 209 U.S. 123, 166, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Moreover, the Eleventh Amendment limits claims brought under § 1983. *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 836,839 (9th Circ. 1997).

Under the *Ex parte Young* doctrine, immunity does not apply when Plaintiffs choose to sue a state official in his or her official capacity for prospective injunctive relief. *Steshenko v. Gayrard*, 44 F.Supp.3d 941, 949 (N.D.Cal., 2014) (*quoting* S*eminole Tribe of Fla. v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). The Eleventh Amendment confirms that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Green v. Mansour*, 106 S.Ct. 423, 425–26, 474 U.S. 64, 68 (U.S.Mich.,1985) *(quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Because of the Eleventh Amendment, states may not

be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity. *Id.,* at 99, 104 S.Ct., at 907. The landmark case of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. *Id.,* at 159–160, 28 S.Ct., at 453–54. The theory of *Young* was that an unconstitutional statute is void, *id.,* at 159, 28 S.Ct., at 453–54, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Id.,* at 160, 28 S.Ct., at 454. *Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. *Id.* at 155–156, 159, 28 S.Ct., at 452–53.

Here, the Defendant is not entitled to immunity because Plaintiffs are seeking prospective injunctive relief by requesting that this Court enter a preliminary and permanent injunction prohibiting the State of Nevada and all of its political subdivisions from implementing, enforcing, or putting into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8).

Moreover, in the context of defending the validity of state statutes, federal courts have recognized that a state legislature may have an independent "legal interest in defending the constitutionality of [its] laws" that is separate and distinct from the interests of state officials who are charged with administering those laws. *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006). As the Nevada Legislature recently argued in *Pharma Research and Manufacturers of America, et al v. B. Sandoval, et al.* Case No. 2:17-cv-02315 in support of *Nevada Legislature's Motion to Intervene as Defendant to Defend Constitutionality of Senate Bill No. 539 (2017)* (ECF No. 39, pg. 5 at 4), the Legislature has an independent legal interest in

defending the constitutionality of its laws that is separate and distinct from the interests of state officials who are charged with administering those laws. Indeed, the Supreme Court has recognized that a state legislature is a "proper defendant-appellant" to defend the constitutionality of legislation in federal court when state law gives the legislature a right to intervene in the litigation. *Karcher v. May*, 484 U.S. 72, 82 (1987) ("Since the New Jersey Legislature had authority under state law to represent the State's interests in both the District Court and the Court of Appeals, we need not vacate the judgments below for lack of a proper defendant-appellant.").

For example, in a case challenging the constitutionality of Ohio's election laws where Ohio's Secretary of State was named as the defendant, the Sixth Circuit allowed the State of Ohio and its General Assembly to intervene in the case because "the Secretary's primary interest is in ensuring the smooth administration of the election, while the State and General Assembly have an independent interest in defending the validity of Ohio laws and ensuring that those laws are enforced." *Id*. at 1008. As a general rule, there is a presumption that a state official adequately represents the interests of private parties in defending the constitutionality of state statutes because the state official is acting in a representative capacity on behalf of the citizens of the state and because the state official and the private parties share the same ultimate objective, which is to uphold the statutes against constitutional attack. *PEST Comm*., 648 F.Supp.2d at 1212.

In its Motion to Dismiss, the Nevada State Legislature contends that "…those Nevada counties are necessary and indispensable parties that are needed for a just adjudication of this litigation because they have material interests in the subject litigation." **(See ECF No. 31 at pg. 19 at 1).** However**,** in this case, the currently named Defendants adequately represent the interests of the Nevada counties because (1) the state official is acting in a representative capacity

on behalf of the citizens of the State; and (2) the Counties are political subdivisions of the State who only have those powers specifically given to them by the State. Additionally, but for the currently named Defendants' actions and inactions that have directly conflicted with Federal laws, the Nevada counties with populations less than 700,000 would not have the enumerated authority to enact local ordinances allowing for prostitution in licensed brothels.

## IV. PLAINTIFFS COMPLAINT CONTAINS SUFFICIENT FACTS THAT, ACCEPTED AS TRUE, STATE A CLAIM TO RELIEF.

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679, 129 S.Ct. 1937. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint ... as true and ... in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). A court should ask, "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1969 n.8 (2007) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

/ / /

## A. PRE-EMPTION AND THE SUPREMACY CLAUSE.

The preemption doctrine stems from the Supremacy Clause of the United States Constitution, which provides:

> This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land; and the judges in every state shall be bound thereby, any Thing in the Constitution or laws of any State to the contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

This means that when federal and state law conflict, federal law prevails and state law is preempted. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S.Ct. 1461, 1476 (2018). Therefore, "state laws that conflict with federal law[s] are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) (internal quotations omitted). Conflicts between federal and state law are resolved in favor of federal law. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819); *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992).

Preemption can be express or implied. Preemption is "express" if a federal statute explicitly addresses the domain of state law that is or is not preempted, and it is implied if the structure and purpose of federal law, but not its actual words, preempt state law. *See Cipollone*, 505 U.S. at 516. The implied preemption doctrine is itself divided into two types: field preemption and conflict preemption. Field preemption applies where a state law seeks to "regulate conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). "[U]nder field preemption, preemption is implied when congressional enactments so thoroughly occupy a legislative field, or touch a field in which the federal interest is so dominant, that Congress effectively leaves no room for states to regulate conduct in that field." *Id.* Conflict preemption applies when a direct conflict exists between federal and state law. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 101

L.Ed.2d 442 (1988). Conflict preemption is further subdivided into two types, one based on the impossibility of complying with both federal and state law and the other based on the notion that the state law frustrates the purposes of the federal law.

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) (*quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). In determining congressional intent, the Court must first consider whether Congress made its intent to preempt state law clear through express language in a statute. *Oneok, Inc. v. Learjet,* Inc., 135 S.Ct. 1591, 1595(2015). Even when a statute does not expressly refer to preemption, Congress may implicitly preempt state legislation through either field preemption or conflict preemption. *Id*.

Sex trafficking, as defined by the Trafficking Victims Protection Act, includes all pimping and sex buying. Nevada's creation of an intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), are in violation of and direct conflict with 42 U.S.C. § 1983; the federal the "Mann Act" (codified at 18 U.S.C. §§ 2421–2424) and the "Victims of Trafficking and Violence Protection Act of 2000", codified at 22 U.S.C. §§ 7101–7114 (TVPA).

On June 25, 1910, the 61st United States Congress passed H.R. 12315, also known as the "Mann Act" (the "Act") (codified as 18 U.S.C. § 2422(a) (2018)), which criminalized the interstate or foreign commerce transport "of any woman or girl for prostitution, debauchery, or for any other immoral purpose." The primary intent was to combat prostitution, immorality, and human trafficking for the purposes of prostitution in the United States.

The Mann Act has since been amended, extending coverage from "any woman or girl" to "any individual," deleting the terms "debauchery" and "other immoral purpose," criminalizing

coercion and enticement to "travel in interstate or foreign commerce … to engage in prostitution," and removing the requirement for transport on an interstate common carrier. The intent of the Act, specifically to combat prostitution and human trafficking for the purposes of prostitution, remained unchanged. The current statute specifically provides:

> Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 2422(a) (2018).

On October 28, 2000, the 106th Congress passed H.R. 3244, also known as the "Victims of Trafficking and Violence Protection Act of 2000" (the "TVPA") (codified as 22 U.S.C. § 7101-7114 (2018)), which criminalized human trafficking and related offenses as federal crimes with severe penalties attached and established several methods to prosecute traffickers. The purpose of this to legislation is to address trafficking in persons. The law provides a three-pronged approach that includes prevention, protection, and prosecution. The issue of trafficking in persons included those trafficked into the commercial sex industry, modern day slavery, and forced labor. Contrary to Nevada and Sisolak's inaccurate assertions, the Congressional intent of the federal law as expressed through the enactment of 18 U.S.C. 2422(a) is clear, certain, and unambiguous, *to wit*, to prevent persons from persuading, inducing, enticing, and/or coercing any person to travel across state lines to engage in prostitution.

### B. NEVADA LAW IS PREEMPTED BY FEDERAL LAW.

Plaintiffs assert in their First Amended Complaint that the Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) are invalid under two theories of preemption: (1) field preemption based on The Mann Act" (the "Act") (codified as 18 U.S.C. § 2422(a) (2018), which its intent is clear to prevent persons from persuading, inducing, enticing, and/or coercing any person to travel

across state lines to engage in prostitution and also Victims of Trafficking and Violence Protection Act of 2000" (the "TVPA") (codified as 22 U.S.C. § 7101-7114) which criminalized human trafficking and related offenses as federal crimes with severe penalties attached and established several methods to prosecute traffickers; and (2) conflict preemption as to two federal laws, The Mann Act and the TVPA. In Plaintiffs' First Amended Complaint, Plaintiffs sufficiently allege a claim for field and conflict preemption.

### 1. FIELD PREEMPTION

Field preemption occurs when states are precluded from regulating conduct in a field that Congress "has determined must be regulated by its exclusive governance." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). Field preemption can be inferred from a regulation that is "so pervasive ... that Congress left no room for the [s]tates to supplement it or where there is a federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id*. at 1022–23 (internal quotation marks omitted). Congress, through the Mann Act and the TVPA, intended to occupy the entire field of prostitution and sex trafficking, thus leaving no room for the Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8).   The Mann Act does not expressly refer to preemption, however it should be inferred that the Congressional intent in enacting the Mann Act was to preempt state laws from the substantive provisions of the legislation.   Accordingly, "even when a statute does not expressly refer to preemption, Congress may implicitly preempt state legislation through either field preemption or conflict preemption." *Knox v. Brnovich*, 907 F.3d 1167 (C.A.9 (Ariz.), 2018).

### 2. CONFLICT PREEMPTION

Conflict preemption occurs when state law conflicts with a federal statute. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Conflict

preemption has two forms: impossibility and obstacle preemption. *Id.* at 372, 120 S.Ct. 2288. Impossibility preemption occurs where "it is impossible for a private party to comply with both state and federal law." *Id.* Obstacle preemption occurs "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* at 373, 120 S.Ct. 2288 (internal quotation marks and alterations omitted). Both forms of conflicting state law are "nullified" by the Supremacy Clause. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873, 120 S. Ct. 1913, 1921, 146 L. Ed. 2d 914 (2000) (*citing* Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982), *United States v. Locke*, 529 U.S. 89, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000); *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

Plaintiffs' First Amended Complaint, as plead, sets forth sufficient facts to facially establish and make evident that Nevada's laws permitting counties to license brothels is in direct conflict with the objectives of the Mann Act to prevent commercial prostitution and sex trafficking through interstate and foreign commerce. As an obstacle to the full purposes and objectives of Congress, Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the brothel licensing ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties obstruct the accomplishment of Congress' purposes and objectives of the Mann Act and are therefore preempted.

**V. PLAINTIFFS CLAIMS ARE NOT TIME BARRED AS A MATTER OF LAW UNDER THE STATUTE OF LIMITATIONS**

Finally, Defendant Nevada Legislature argues that Plaintiffs' First Amended Complaint should be dismissed under FRCP 12(b)(6), " . . . because those claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983."

However, both Federal courts and California state courts have recognized equitable tolling

in cases where the plaintiff is unable to bring suit or exercise an available remedy. *See, e.g., Stoll v. Runyan*, 165 F.3d 1238, 1242 (9th Cir.1999) (allowing equitable tolling of plaintiff's sexual harassment claim where psychological incapacity prevented her from timely pursuing the claim); *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1463 (C.D.Cal.1996) (allowing equitable tolling of plaintiffs' various claims where the alleged imprisonment at a garment factory that was the basis of the claims prevented them from filing prior to their release); *Lewis v. Super. Ct.*, 175 Cal.App.3d 366, 380, 220 Cal.Rptr. 594 (1985) ("Language of statutes of limitation must admit to implicit exceptions where compliance is impossible and manifest injustice would otherwise result.").

Based on the facts and allegations presented to this Court in their First Amended Complaint, Plaintiffs are victims of sex trafficking under 22 U.S.C. § 7102(9)(A) and under the alternate definition provided in 22 U.S.C. § 7102(9)(B). Plaintiffs were induced to travel through interstate commerce to the State of Nevada to engage in commercial sex through fraud, which the traffickers used to obtain their cooperation in traveling throughout the United States. The traffickers used force and coercion in the form of physical abuse, intimidation, and psychological abuse to directly induce Plaintiffs to travel into interstate commerce to engage in commercial sex in Nevada brothels. Additionally, Plaintiffs are victims of involuntary servitude as defined by Nev. Rev. Stat. 200.463. But for the State of Nevada's laws permitting legal prostitution, Plaintiffs would not have been trafficked through interstate commerce into the State to engage in commercialized sex in Nevada brothels.

As mentioned previously, it is difficult, if not impossible, for victims of sex trafficking to avail themselves of the protections of federal law, the Constitution, and the federal court while they are being trafficked because victims of sex trafficking, involuntary sexual servitude, and trafficking in persons are inherently prevented from access to the legal and civil remedies during

their period of victimization. Even after escaping the control of their trafficker, survivors of sex trafficking can be among the most difficult crime victims to assist. Often victims resist help, refusing to see themselves as victims and returning to their traffickers.[6] Further, the physical and psychological effects of sex trafficking and prostitution endure long after victims are freed from their context of sexual exploitation. Sexual violations are inflicted in and on the body, the place where one's consciousness resides. Thus, a survivor can never entirely escape or be free from the setting where the violations took place. Plaintiffs and similarly situated individuals experience a "reasonable expectation" and "demonstrated possibility" that they would be subjected to revictimization. In this case, "the challenged governmental activity … is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122, 94 S. Ct. 1694, 1698, 40 L. Ed. 2d 1 (1974).

In accordance with the foregoing, Plaintiffs' First Amended Complaint is not time-barred as a matter of law.

## III. <u>CONCLUSION</u>

For the reasons stated above, this Court should deny Defendant Legislature of the State of Nevada's *Motion to Dismiss Plaintiffs' First Amended Complaint* (ECF No. 31).

DATED this 21st day of May, 2019.

HUTCHISON & STEFFEN, PLLC

By: /s/ *Jason D. Guinasso*
JASON D. GUINASSO, ESQ. (SBN# 8478)
*Attorney for Plaintiffs*

---

[6] https://www.reuters.com/article/trafficking-victims-usa/sex-trafficking-victims-may-push-rescue-away-u-s-experts-say-idUSL1N1972LK

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

Gregory Louis Zunino   GZunino@ag.nv.gov, sgeyer@ag.nv.gov
Kevin C. Powers        kpowers@lcb.state.nv.us
Gus W Flangas          gwf@fdlawlv.com, cjm@fdlawlv.com, lmr@fdlawlv.com
Jessica K Peterson     jkp@fdlawlv.com, fi@fdlawlv.com


Dated this May 21, 2019.


/s/ A. Otutaha
Employee of Hutchison & Steffen, PLLC

**List of Exhibits**

**APPENDIX OF EXHIBITS TO PLAINTIFFS' OPPOSITION TO DEFENDANT LEGISLATURE OF THE STATE OF NEVADA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**(ECF No. 31)**

| Description | Volume Number | Bates Range |
|---|---|---|
| Exhibit 1- U.S. DEPARTMENT OF STATE, TRAFFICKING IN PERSONS REPORT at pg. 27 (2007) | I | 0001-0002 |
| Exhibit 2- Lyon County Annual Budget | I | 0003-0005 |
| Exhibit 3- Nye County Annual Budget | I | 0006-0008 |
| Exhibit 4- Articles on Branding and Marketing Efforts of Las Vegas for "Sin City" | I | 0009-0032 |
| Exhibit 5- Kateri M. Grillot, WHAT HAPPENED IN VEGAS?: THE USE OF DESTINATION BRANDING TO INFLUENCE PLACE ATTACHMENTS (2007) | I | 0033-0199 |
| Exhibit 6- Sin City Chamber of Commerce references | I | 0200-0201 |
| Exhibit 7- Nevada Day 2018 Website | I | 0202-0203 |
| Exhibit 8- Minutes from Assembly Committee on Government Affairs, May, 12, 2017 at page 12; Exhibit E PowerPoint presentation by Senator Segerblom | I | 0204-0216 |
| Exhibit 9- Campaign Contribution Reports from Brothels and Brothel Owners to State Officials | I | 0217-0221 |