1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AARON D. FORD
  Attorney General
GREGORY L. ZUNINO  (Bar No 4805)
  Deputy Solicitor General
100 North Carson Street
Carson City, Nevada 89701-4717
Tel:  (775) 684-1237
Fax: (775) 684-1108
Email: GZunino@ag.nv.gov

*Attorneys for Defendant*
 *State of Nevada; Steve Sisolak*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

REBEKAH CHARLESTON,

              Plaintiff,

     vs.

STATE OF NEVADA; STEVE
SISOLAK in his capacity as Governor
of the State of Nevada, and the
LEGISLATURE OF THE STATE OF
NEVADA,

             Defendants.

Case No. 3:19-cv-00107-MMD-WGC

**REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT**

      Defendants, STATE OF NEVADA and STEVE SISOLAK, in his capacity as Governor of the

State of Nevada, through counsel, AARON D. FORD, Attorney General, and GREGORY L. ZUNINO,

Deputy Solicitor General, hereby submit their reply in support of their motion to dismiss Plaintiffs'

First Amended Complaint.

      DATED: May 28, 2019.

                          AARON D. FORD
                          Attorney General
                          By:  /s/ Gregory L. Zunino
                               GREGORY L. ZUNINO
                               Deputy Solicitor General
                               Nevada Bar No. 4805
                               100 N. Carson Street
                               Carson City, Nevada 89701
                               (775) 684-1237
                               GZunino@ag.nv.gov
                               *Attorneys for Defendant*
                               *State of Nevada, Steve Sisolak*

**POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

No champion of federalism, opposing counsel assumes that the federal courts exist to solve the nation's most intractable social problems. He insists this case is "*much more* than a policy debate about the merits of legalized prostitution" (ECF No. 22 at p. 2), but what follows, paradoxically, is a moralistic screed about the evils of illegal, unregulated prostitution (ECF No. 22 at pp. 3-6, 11-17). Despite counsel's best efforts to unearth a cause and effect relationship between legal brothels and illegal sex trafficking, he fails to articulate a basis for this Court to exercise subject matter jurisdiction over Plaintiffs' individual claims.

In fact, counsel's points and authorities read precisely like a policy debate, replete with references to dubious social science, sensationalistic media narratives, and lurid images lifted from the internet (ECF No. 12 at pp. 44-45; ECF No. 22 at p. 26).  These are not a proper substitute for concrete factual allegations, nor do the constitute evidence of anything pertinent to Plaintiffs' individual claims for relief under 42 U.S.C. § 1983.

In short, this case presents a policy debate, not a lawsuit, because Plaintiffs fail to articulate a nexus between their alleged past injuries and their claims for prospective relief.  While they more or less concede that the Eleventh Amendment bars any claims for retrospective relief (ECF No. 22 at pp. 17-18), they rely exclusively upon past events to support their claim to standing in the present (ECF No. 22 at pp 10-11). This is curious since their description of past events does not indicate how or why they may be injured in the future.

The only reasonable inference to be drawn from this pleading omission is that Nevada's brothels pose no risk to Plaintiffs' current or future state of health and well-being. Having failed to articulate the individual risks that Plaintiffs now face, counsel has not pled their claims for declaratory and injunctive relief with adequate specificity to establish that Plaintiffs have standing in the present to sue for prospective remedies. Accordingly, counsel's philosophical objection to Nevada's legal brothel industry presents an abstract controversy regarding the merits of legalized prostitution. This is the very definition of a policy debate.

…

Counsel's arguments concerning federal preemption are similarly untethered from any concrete factual allegations. He identifies nothing in the text of federal law that conflicts with state law, and he identifies nothing in the text of state law that frustrates the objectives of federal law. If there are deficiencies in county regulatory programs, as Counsel implies (ECF No. 22 at pp. 15-17), then Plaintiffs would possibly have grounds to file an entirely different type of law suit than the one that they have filed here. But Plaintiffs have not challenged the adequacy of regulatory efforts or health and safety measures. Instead, they have filed the equivalent of a facial challenge to Nev. Rev. Stat. §§ 244.345 and 201.354.

These statutes, along with Nev. Rev. Stat. § 201.300, are entirely consistent with federal law insofar as they outlaw sex trafficking, and confine legal prostitution to intrastate venues in which it is subject to regulation at the county level. And though inadequate county regulation could conceivably put brothel workers at risk, Plaintiffs do not allege that they are brothel workers, nor do they allege that regulatory inadequacies give rise to their claims. Without explanation, Plaintiffs allege that the mere existence of legal brothels places them in jeopardy. Assuming, *arguendo*, that the mere existence of brothels is a potential source of future injury to Plaintiffs, they nonetheless fail to identify a plausible conflict between state and federal law.

If county-regulated brothels have the potential to impact interstate commerce in violation of some ill-defined judicial doctrine, that potential impact is irrelevant to Plaintiffs' claims as stated in their First Amended Complaint. As it applies to sex-trafficking, federal law does not purport to regulate or prohibit intrastate commercial activity because of a presumed impact upon interstate commerce. Since federal anti-trafficking laws apply only to criminal misconduct of an interstate nature, those laws do not overlap at any point with Nevada's laws governing the licensure and regulation of legal, intrastate sex work. To the contrary, federal law criminalizes interstate sex trafficking in a way that is complementary and not contrary to Nevada's own criminal prohibitions against sex trafficking. *See* Nev. Rev. Stat. § 201.300. Therefore, without standing, and given the absence of any textual support for their preemption analysis, Plaintiffs have failed to plead a judicially cognizable claim under 24 U.S.C. §1983.

…

## II.    ARGUMENT

### A.    Plaintiffs Have Not Alleged Standing to Sue for Prospective Remedies.

Not surprisingly, Plaintiffs emphasize the alleged "past wrongs" that ostensibly give rise to their claims for prospective relief (ECF No. 22 at p. 10). Of course, any claims for redress of past wrongs would appear to be well outside applicable periods of limitation—thus explaining why Plaintiffs seek only prospective remedies (ECF No. 12 at p. 39). However, the alleged past wrongs do not support an inference that future harm to Plaintiffs is likely or even remotely probable. Plaintiffs must plead facts demonstrating that they have standing to request prospective relief for an alleged injury that they will likely sustain in the immediate future if the requested relief is not granted. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Yet Plaintiffs allege no facts from which one could reasonably infer that legal brothels are the source of a potential injury.

Plaintiff Charleston, for example, states only that she now resides in Texas, and that she was previously forced to work in a Nevada brothel where she suffered sexual abuse (ECF No. 12 at ¶¶ 4, 77–78, 84–86, and 88). Similarly, Plaintiff Delgado-Williams alleges that she now resides in Texas and suffered abuse in Nevada, among other states (ECF No. 12 at ¶¶ 7, 8, 127, 129 and 160), but unlike Plaintiff Charleston, Plaintiff Delgado-Williams describes most of her abuse as having occurred in Houston, Dallas, Los Angeles, Chicago, and Boston, and with no direct connection to a legal Nevada brothel (ECF No. 12 at ¶¶ 92, 100, 141, 149, 156, and 160-65).

Plaintiff Albright-Byrd, also a resident of Texas, alleges that she suffered sexual abuse in California and Nevada (ECF No. 12 at ¶¶ 6, 182–85, 186–94, and 207–08), and like Plaintiff Delgado-Williams, Plaintiff Albright-Byrd fails to identify a direct connection between her alleged abuse and a legal Nevada brothel (*Id*). The relevant commonality between all three Plaintiffs is that none alleges facts which plausibly relate to an individual threat posed by a legal Nevada brothel.

Although Plaintiffs suggest that other persons may fall victim to sex trafficking as a result of legal brothels, they do not explain why they have standing to represent the interests of those persons. Indeed, the First Amended Complaint reads like a class-action lawsuit without a proper class representative. This manner of pleading is clearly insufficient to support Plaintiffs' claim to standing in …

their own right. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263 (1977).

To satisfy the case-or-controversy requirement of Article III, Plaintiffs must identify a state action that threatens to cause them imminent personal harm. *Caribbean Marine Services Company, Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."). Counsel's gratuitous attack on Nev. Rev. Stat. § 244.345 does not meet this standard because the statute itself is enabling legislation, merely delegating to Nevada's county officials the authority to license and regulate brothels. Counsel's attack on Nev. Rev. Stat. § 201.354 is similarly misplaced because that statute simply decriminalizes sex work when it is safely conducted within a regulated, county-licensed brothel. Neither statute has any direct or indirect application to Plaintiffs.

In substance, then, the First Amended Complaint is a demand for the judicial expansion of federal criminal statutes. However, the legal theory for this unwarranted expansion of federal law, namely the preemption doctrine, defines the alleged conflict between state and federal laws at such a high level of generality that the theory would, if adopted, threaten to nullify virtually any state law running contrary to a litigant's policy preferences. To invoke the preemption doctrine in support of their claims, Plaintiffs must demonstrate that they have standing to challenge the existence of legal brothels. Because they have not articulated how or why they are currently threatened by the existence of legal brothels, they have failed to demonstrate standing as required by the case-or-controversy requirement of Article III.

**B.     Plaintiffs Cannot Base § 1983 Claims Upon the Mann Act and the TVPA.**

Each of Plaintiffs' claims is based in some way upon rights presumably granted by the federal Mann Act, codified at 18 U.S.C. §§ 2421–2424 (Mann Act), and the Victims of Trafficking and Violence Protection Act of 2000, codified at 22 U.S.C. §§ 7101–7114 (TVPA) (ECF No. 22 at 22–24). According to Counsel, these rights ultimately flow from the Supremacy Clause to the U.S. Constitution (ECF No. 22 at pp. 19–22).

…

Of course, the Supremacy Clause does not itself confer any federal rights and does not provide a private right of action to litigants. *Armstrong v. Exceptional Child Care, Inc.*, 575 U.S. ___, ___, 135 S. Ct. 1378, 1384 (2015). Furthermore, the provisions of 42 U.S.C. § 1983 merely provide "a mechanism for enforcing individual rights secured elsewhere." *Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002). To support a claim under § 1983, a plaintiff must identify the source of law that confers the individual right for which the plaintiff seeks vindication. *Id*. "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Id*.

However, the Mann Act and the TVPA do not confer privately enforceable rights against state officials, particularly when those officials have no enforcement functions.  In this context, the Governor and the Legislature are nominal defendants, serving merely as a tangible representation of Nevada law. And when, as here, the subject of a § 1983 claim is the law itself, the federal courts "have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Those three factors are: 1) whether Congress expressed a legislative intent to benefit the plaintiff; 2) whether judicial enforcement of the right would strain judicial competence; and 3) whether the statute unambiguously imposes a binding obligation on the States. *Id*.  Here, none of the relevant factors is satisfied.

Furthermore, "even where a statute is phrased in . . . explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent "to create not just a private right but also a private remedy." *Gonzaga University*, 563 U.S. at 284 (emphasis added). The Mann Act and the TVPA cannot give rise to Plaintiffs' requested remedy, a court-ordered nullification of Nevada law, because the Mann Act and the TVPA do not expressly or impliedly override state or local legislation. In summary, the Mann Act and the TVPA are federal criminal statutes that apply to interstate sex trafficking only. These statutes do not occupy any regulatory field, much less a regulatory field in which Plaintiffs conduct their business or personal affairs.

Although counsel argues that Nevada's statutes promote interstate sex trafficking (ECF No.22 at pp. 4-6), his argument finds absolutely no support in the Mann Act or the TVPA. As a matter of federal criminal law, the Mann Act and the TVPA are silent on the topic of legal brothels. As counsel concedes, the Mann Act and the TVPA criminalize sex trafficking only when it implicates interstate

travel or transportation (ECF No. 22 at pp. 21–22). And while the TVPA adopts various additional measures designed to aid in the investigation and prosecution of federal crimes in interstate and foreign commerce, the TVPA does not purport to displace state or local regulatory schemes. See 22 U.S.C. §§ 7101-7114. Since the licensure and regulation of brothels occurs wholly within the boundaries of Nevada's rural counties, counsel's preoccupation with legal brothels is not a matter of federal concern.

In summary, there is no textual support in the Mann Act or the TVPA for the proposition that Plaintiffs have a private right to replace Nevada's regulatory scheme with a comprehensive ban on brothels. In *Safe Streets Alliance v. Hickenlooper*, for example, the U.S. Court of Appeals for the Tenth Circuit held that the federal Controlled Substances Act (CSA), which prohibits the possession and distribution of marijuana (among other drugs), did not confer upon private landowners a private right to challenge Colorado's laws authorizing the licensure and regulation of marijuana dispensaries. 859 F.3d 865, 905-906 (10th Cir. 2017). In that case, private landowners, as well as law enforcement officials from Colorado, Kansas and Nebraska, sought to nullify Amendment 64 to the Colorado Constitution on the ground that it conflicted with the CSA's prohibition against the use and distribution of marijuana.

For purposes of the State's motion to dismiss, the allegations in the First Amended Complaint (ECF No. 12) are analogous to the allegations in *Safe Streets Alliance*. More specifically, both cases involve an attack on state and local laws that decriminalize and regulate intrastate activity. Since the provisions of the Mann Act and the TVPA are explicitly limited in their application to crimes involving interstate travel and transportation, they cannot reasonably be construed to preempt an intrastate licensing and regulatory scheme. By way of example, the U.S. Supreme Court has summarized the factual scenarios to which the preemption doctrine most commonly applies:

> [A] court may not convict a criminal defendant of violating a state law that federal law prohibits. Similarly, a court may not hold a civil defendant liable under state law for conduct federal law requires. And, as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.

*Armstrong*, 575 U.S. at ___, 135 S.Ct. at 1387.

The facts as alleged by Plaintiffs do not fit within any of these examples, however. They cannot be made to fit because the interplay between 42 U.S.C. § 1983 and federal criminal and anti-trafficking

statutes does not provide a preemption remedy for an abstract injury attributable to the mere existence of an intrastate business or industry. As the Ninth Circuit observed in *Coyote Publishing, Inc. v. Miller*, the State of Nevada's "position on the legality of prostitution in much of the state is essentially agnostic: county governments are free to license or prohibit brothels at their option." 598 F.3d 592, 607 (9th Cir. 2010) (internal citations omitted). Yet Plaintiffs assert, without authority, that federal law imposes an affirmative duty upon the Nevada Legislature to ban all forms of prostitution on a statewide basis. And while it may run counter to counsel's own policy preferences, Nevada "has adopted a nuanced approach to the sale of sexual services, grounded in part in concern about the negative health and safety impacts of unregulated, illegal prostitution." *Id.* at 605.

"By permitting some legal prostitution, Nevada has been able to subject a portion of the market for paid sex to extensive regulation, while continuing severely to limit the diffusion of sexual commodification through its banning of prostitution where by far most Nevadans live (and where most outsiders visit), Clark County." *Id.* The activities of a private brothel owner, brothel manager, or brothel worker could conceivably impact interstate commerce in some manner, but this does not support an argument that Nevada law is preempted by the Mann Act and the TVPA.

When an individual solicits, entices, or forces another person to cross state or foreign borders for the purpose of engaging in prostitution, it is for a federal prosecutor, and not a private litigant, to decide whether to charge a federal crime. *See Safe Streets Alliance*, 859 F.3d at 904. Such an act is simply not a violation by the State of an individual plaintiff's rights, as Plaintiffs now claim. Because the Mann Act and the TVPA contain no licensing or regulatory components, those laws cannot reasonably be construed to implicitly prohibit the county-by-county licensure and regulation of brothels. Contrary to the conclusory allegations in their complaint, Plaintiffs have no standing to enlist the federal judiciary in an effort to nullify state and local laws on the ground that those laws may tempt private actors to commit federal crimes, particularly when state law punishes that very same criminal misconduct.

…

…

…

**III.     CONCLUSION**

Plaintiffs' First Amended Complaint must be dismissed in its entirety because Plaintiffs identify nothing in the text of either the Mann Act or the TVPA that allows them to advance claims under 42 U.S.C. § 1983.  Their claims must be dismissed on the additional grounds that they lack standing to sue for injunctive and declaratory relief.

DATED this 28th day of May 2019.

AARON D. FORD
Attorney General

By:   /s/ Gregory L. Zunino
   GREGORY L. ZUNINO
   Deputy Solicitor General
   Nevada Bar No. 4805
   100 N. Carson Street
   Carson City, Nevada 89701
   (775) 684-1237
   GZunino@ag.nv.gov

*Attorneys for Defendant*
*State of Nevada, Steve Sisolak*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on this 28th day of May, 2019, I filed with the courts CM/ECF the State's Reply Brief in Support of Motion to Dismiss Plaintiffs' First Amended Complaint.  Service of this filing will be made by the Court's electronic notification system to the party listed below:

Jason D. Guinasso
jguinasso@hutchlegal.com
*Counsel for Plaintiff*

/s/ *Sandra L. Geyer*
SANDRA L. GEYER