JASON D. GUINASSO, ESQ. (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
500 Damonte Ranch Parkway, Suite 980
Reno, NV 89521
Telephone: (775) 853-8746
Facsimile: (775) 201-9611
jguinasso@hutchlegal.com
*Attorney for Plaintiffs*
*Rebekah Charleston; Angela Delgado-Williams;*
*and Leah Albright-Byrd*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REBEKAH CHARLESTON; ANGELA DELGADO-WILLIAMS; and LEAH ALBRIGHT-BYRD; | Case No.: 3:19-cv-00107-MMD-WGC |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OPPOSITION TO RUSSELL GREER'S MOTION TO INTERVENE AS DEFENDANT** |
| STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA; | |
| Defendants. | |

Plaintiffs Rebekah Charleston, Angela Delgado-Williams, and Leah Albright-Byrd by and through their undersigned counsel of record, hereby oppose the July 10, 2019, Motion to Intervene filed by Russell Greer ("Greer") **(ECF No. 45)**.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

While Greer may be a person who should be deposed and/or called as a witness to support Plaintiffs' causes of action against the State of Nevada, Greer's Motion to Intervene

should be denied because his motion is not timely and he has otherwise failed to establish that he is entitled to intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

Greer, a resident of the State of Utah, brazenly admits to violating federal law by routinely traveling in interstate commerce to buy access to women's bodies in Nevada. Greer's pleading provides another example of why Nevada's system of legalization cannot co-exist with the federal law so long as individuals are encouraged to travel to Nevada through interstate and foreign commerce. The mere existence of the legal system in Nevada encourages this conflict with federal law because it is the only state in the country that permits prostitution in brothels. As Greer has so poignantly illustrated for the Court, Nevada's legal system commodifies women and creates an expectation and demand for individuals to travel to Nevada from other states and countries to buy a woman's body. Because the brothel industry, under the color of state law in Nevada, openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to buy people for acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and is preempted and in violation of the Supremacy Clause of the U.S. Constitution.

Sex trafficking, as defined by the Trafficking Victims Protection Act, includes all pimping and sex buying. Greer's Motion to Intervene provides evidence to support Plaintiffs' claim that the State's creation of an intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Greer's Motion to Intervene lends support to the fact that Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), are in violation of and in direct conflict with: (1) 42 U.S.C. § 1983, the federal Mann Act, codified

at 18 U.S.C. §§ 2421–2424 (Mann Act); and (2) the Victims of Trafficking and Violence Protection Act of 2000, codified at 22 U.S.C. §§ 7101–7114 (TVPA).

The State of Nevada has not only failed to enact, uphold, and conform to federal law with respect to prostitution and sex trafficking, but it has also encouraged men like Greer to travel across state lines to take advantage of a state-sanctioned supply chain of organized sexual exploitation. To remain viable, Nevada's legal system must induce, persuade, entice, and coerce individuals like Greer to enter into interstate and foreign commerce to engage in the purchase of human beings for sex in order to remain economically viable. Without the inflow of individuals like Greer into interstate and foreign commerce to engage in prostitution, the legal system would collapse. Like Greer, the majority of men who buy women for sex come from out-of-state. Likewise, the women bought, sold, and trafficked to Nevada come from other states and countries outside the State of Nevada. These men and women enter into interstate and foreign commerce and come to Nevada to engage in prostitution as a result of the unfettered advertising and marketing of Nevada's legal brothels outside the State of Nevada through hundreds of websites, social media accounts, and other mass media used to persuade, induce, and entice men and women to come to Nevada to engage in prostitution in direct violation of federal law. Consequently, thousands of women, just like the Plaintiffs in this case, are illegally trafficked to the State of Nevada to satisfy the demand of tens of thousands of sex buyers who come to Nevada expecting and demanding to purchase and sexually consume these women. The legal system Nevada has created is in conflict with the federal laws specifically enacted to stop trafficking and prostitution nationally and internationally.

///

///

Greer is not entitled to intervention as of right under FRCP 24(a) because he does not have a **legally protectable interest** in this case.  Greer has inappropriately used his Motion to Intervene as an avenue to express his personal animosity for attorney Guinasso. With or without the existence of the current Nevada law which allows for certain counties to license brothels, there is not a constitutional or statutory right for Greer to travel to Nevada from Utah to purchase a woman's body for his personal sexual gratification.   Even if Greer had a legally protectable interest, which he does not, he has failed to establish that his interests are sufficiently different from the existing Defendants defending the challenged constitutionality of Nevada state laws and county ordinances. Greer's objectives are the same as the current Defendants, to defend the legality and constitutionality of Nev. Rev.  Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the related ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels under Nevada law.

Despite Greer admitting in his Motion to Intervene that he violates federal law multiple times a year by traveling across state lines to engage in prostitution, this Court should deny Greer's Motion to Intervene as of right because Defendants State of Nevada, et. al., will adequately protect Greer's interests as a person of the general public under the standards set forth by the U.S. Court of Appeals for the Ninth Circuit. The Ninth Circuit has taken an especially narrow view of allowing private citizens to intervene on the same side as governmental entities in defense of state and federal laws. Fed. R. Civ. P. 24(a)(2)) provides that a court must permit a person who satisfies certain requirements to intervene as of right in a lawsuit "unless existing parties adequately represent [his] interest." In general, "if an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 892, 898 (9th Cir. 20ll); accord *Peruy v. Prop. I Official*

*Proponents*, 587 F.3d 947, 95-51 (9th Cir. 2009) ("Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies."). This is especially true where an intervenor is seeking to join a lawsuit on the same side as a governmental entity. "In the absence of a **very compelling showing** to the contrary (emphasis added), it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quotation marks omitted and emphasis added); *accord Prete v. Bradbury*, 438 F3d 949, 956 (9th Cir. 2006). An intervenor's failure to satisfy this requirement is fatal to [his] application." *Perry*, 587 F.3d at 950 (emphasis added). Greer is not entitled to intervention as of right under FRCP 24(a) because he has failed to establish that his interests are sufficiently different from the existing Defendants in defending the challenged constitutionality of Nevada state laws and related county ordinances. Because Greer's objectives are ultimately the same as the current named Defendants, a presumption of adequacy of the State of Nevada's representation arises. In this regard, it is well-established that absent a very compelling showing to the contrary, the Nevada Attorney General is fully capable of adequately representing the current Defendants in their defense of Nevada's laws, including the specific constitutional and federal statutory challenges brought by Plaintiffs. Greer has failed to make any compelling showing that Greer's sexual pleasures or "interest" in defending the constitutionality of Nevada law, and upholding state laws regulating prostitution cannot or will not be adequately represented by the Nevada Attorney General.

Finally, Greer is not entitled to permissive intervention, which is rarely granted when the requirements for intervention as of right are not met. Only in an unusual case does a court, in its discretion, find reason to add additional parties to a lawsuit, given the attendant

increase in expenditure of the parties' and the courts' time and resources, particularly where, as here, the existing parties can already effectively litigate the dispute. The Court should deny Greer's Motion to Intervene and allow the parties to proceed to resolution of Plaintiffs' claims in an efficient and expeditious manner.

## II.    BACKGROUND

On February 25, 2019, Plaintiff REBEKAH CHARLESTON, a victim of sex trafficking who was trafficked through Nevada's legal brothel system, filed this present lawsuit against the STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA (hereinafter collectively referred to as "Defendants"). This lawsuit seeks an order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, which license brothels, unconstitutional, null, and void as preempted by federal law. This lawsuit further seeks a preliminary and permanent injunction be issued prohibiting the State of Nevada and all of its political subdivisions from continuing to implement, enforce, or put into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8). Additionally, this law suit also requests an order for the State to create and fund a "Nevada Sex Trade Exit Fund" to provide mental health services, rent assistance, job training, scholarships, and funding for medical treatments for women prostituted through Nevada's legal brothels.

Plaintiff Charleston was trafficked to Nevada and sent by her trafficker to "work" in a Nevada brothel. While in the brothel, Plaintiff Charleston was not permitted to turn down a sex buyer, was a victim of serial rape for profit, and suffered multiple violent rapes and assaults. Any money not taken by the brothel owners was surrendered to her trafficker. During the ten years Ms. Charleston was sexually exploited, mostly in Nevada, Ms. Charleston was

also prostituted at multiple legal escort agencies in Las Vegas. Escort agencies in Las Vegas facilitate illegal prostitution to meet the high demand of people traveling to Nevada to purchase sex, most of whom incorrectly believe it is legal everywhere in the state. Legal escort agencies in Las Vegas are fronts for sex trafficking rings to operate. Las Vegas is a well-known destination for people who are in the market to buy women for sex. The advertising and marketing from legal brothels in places like Nye County and Lyon County persuade, induce and entice people to travel to Nevada from across the country and all over the world to purchase prostituted persons in Nevada.

Plaintiff Charleston was sexually trafficked for more than ten (10) years before she finally escaped when federal authorities became involved. Plaintiff Charleston argues in her Complaint that the practice of legalized prostitution in Nevada is regressive, oppressive, and has predatory dependence on economically vulnerable persons. She is asking the Court to redress the harms inflicted upon her and countless others, and to put an end to the purported legal loopholes created by the conflict between federal and state laws allowing traffickers to profit from the exploitation and industrialization of women's bodies.

As a result of the media attention that arose from Plaintiff Charleston initiating her lawsuit, dozens of women came forward because they had also been trafficked in Nevada. To date, two of these women have joined in this present lawsuit as of March 18, 2019.

Plaintiff ANGELA DELGADO-WILLIAMS, was sex trafficked through a sex trafficking ring guised as a legal escort service. While a victim of sex trafficking, Ms. Delgado-Williams was sent by her trafficker from Las Vegas, Nevada, to large cities all over the nation such as Chicago, Illinois and Boston, Massachusetts, and was sold for sex. In dealing with sex buyers in Las Vegas, most of the sex buyers incorrectly believed that prostitution was legal in all of Nevada, and the escort service took advantage of this

misconception. Ms. Delgado-Williams most frequently interacted with sex buyers who traveled to Nevada for the sole purpose of purchasing women for sex, whether it was for a "newly divorced party," a "bachelor party," or a corporate CEO wishing to privately cheat on his wife. The sex buyers traveled across state lines to purchase sex from victims of sex trafficking. Any money Ms. Delgado-Williams received from sex buyers was sent to her trafficker. The sex trafficking ring guised as a legal escort service was successfully and strategically planted in Las Vegas, Nevada to intercept prostitution tourists planning to travel from Las Vegas, Nevada to the near cities of Pahrump, Nevada or Crystal, Nevada where the closest legal brothels were located.

Plaintiff, LEAH ALBRIGHT-BYRD, who is a victim of sex trafficking was trafficked through Nevada's illegal sex trade. Ms. Albright-Byrd was the young age of 14 when she became a victim of sex trafficking. Ms. Albright-Byrd was exploited by her traffickers and was trafficked from the Bay Area in California to Reno and Las Vegas to make money off the prostitution tourism demand in Nevada. Ms. Albright-Byrd most frequently witnessed sex buyers have the misconception that prostitution was legal in Reno, Nevada and Las Vegas, Nevada.

Notably, Ms. Albright-Byrd was under the gross misconception that prostitution and sex trafficking was legal in Nevada. Nevada was a regular location for Ms. Albright-Byrd to be sex trafficked. No matter where else her traffickers would take her, they would always return to Nevada to sell Ms. Albright-Byrd and others similarly situated to her because Nevada is the state where there was and is the greatest demand for prostitution whether legal or illegal.

Ms. Charleston, Ms. Delgado-Williams and Ms. Albright-Byrd have been irreparably harmed. By disregarding federal law, the acts of Defendants State of Nevada, et al., including, without limitation, authorizing a legalized commercial prostitution market to operate in the

State, have created the danger that has led to the irreparable harm suffered by the Plaintiffs and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution (i.e., serial rape, sexual servitude, sexual and physical assault, psychological trauma, bodily injury, and risk of sexually transmitted diseases) without protections from the inherent dangers that the federal law was enacted to prevent. Further, Plaintiffs submit that, because the brothel industry in Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to buy people for acts of prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted and in violation of the Supremacy Clause of the U.S. Constitution.

### III.   **ARGUMENT**

Greer's Motion to Intervene is untimely. Greer has failed to establish that he is entitled to intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). Therefore, the Court should deny the Motion to Intervene and allow the parties to proceed to resolution of Plaintiffs' claims in an efficient and expeditious manner, without allowing Greer's sexual desires to enter into the lawsuit and potentially harass and potentially trigger post-traumatic stress in Plaintiffs, potential additional plaintiffs, and witnesses by bringing in a sex buyer who believes he has a "legal right" to access the bodies of Plaintiffs and those similarly situated to Plaintiffs.

### 1.   **Greer's Motion to Intervene is Untimely**

In determining timeliness of motion to intervene as of right, factors to be weighed include: stage of proceeding at which applicant seeks to intervene; prejudice to other party; and reason for and length of delay. Fed.Rules Civ.Proc.Rule 24(a)(2), 28 U.S.C.A. *Orange County v. Air California*, 799 F.2d 535 (9th Cir. 1986).

To determine whether [a] motion to intervene is timely, courts look to [the] date that movant knew or should have known that any of his rights would be directly affected by litigation. Fed. R. Civ. P. 24(a)*. United States v. Bank of Am*., 303 F.R.D. 114 (D.D.C. 2014).

This instant case has received nationwide media coverage since its inception and therefore is a well-publicized lawsuit. Here, Greer should have known that his sexual pleasures or "rights" would be affected on February 25, 2019, indeed the date the original complaint was filed, and the same date of distribution of the first national press release alerting the general public through countless media outlets of the initiation of this suit. **See Exhibit 1 at PLTFS0001-PLTFS0092 (Press releases, distribution list, and national media articles regarding lawsuit)**. In fact, this case has received so much media coverage that the first Motion to Intervene (ECF No. 11) in this case was filed on March 11, 2019, just 14 days after the initiation of this case, and before any named Defendants notified of this case by traditional means of service of process filed responses to the Complaint **(ECF No. 22; ECF No. 31)**.

A district court has discretion to determine whether a motion to intervene was timely, *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 732 (D.C.Cir.2003), weighing the amount of time elapsed, the purpose of, and need for, intervention, and the prejudice to those already parties in the case, *United States v. AT & T,* 642 F.2d 1285, 1295 (D.C.Cir.1980). To determine whether a motion was timely, courts look to the date that the party seeking to intervene "knew or should have known that any of [his] rights would be directly affected" by the litigation. *Nat'l Wildlife Fed'n v. Burford,* 878 F.2d 422, 434 (D.C.Cir.1989), *rev'd on other grounds sub nom. Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Here, in addition to Greer having as much notice as any of the current Defendants in this case, the Court should consider five months of time have elapsed in this case and allowing

Greer to intervene would cause undue delay for all parties involved. Additionally, the purpose of Greer's intervention is to represent his personal sexual pleasures, which in no way qualify as a "significant protectable interest" in this action. Nonetheless, Greer's **desire** to uphold Nevada's current laws are still represented adequately by the current Defendants. Further, this Court should consider the ripple effect of granting intervention to an out-of-state sex buyer to this case. Nevada's legal brothels are estimated to generate more than seventy-five million dollars ($75,000,000) per year, while Las Vegas's illegal prostitution market alone is estimated to gross over five billion dollars ($5,000,000,000) per year. <u>**See**</u> **Exhibit 2** at **PLTFS0093-PLTFS0098 (RONALD B. FLOWERS, PROSTITUTION IN THE DIGITAL AGE: SELLING SEX FROM THE SUITE TO THE STREET? at pg. 42-46 (Praeger 2011)**). Considering the thousands of sex buyers per month who are responsible for the generated profits of legal brothels, Greer is likely not the only sex buyer interested in the dismissal of this case. If Greer were granted intervention, it would allow for other sex buyers to join this case causing further undue delay and prejudice, and frankly causing distraction from the real issues in this case. If Greer or any sex buyer of the general public, were granted intervention, he would first file a Motion to Dismiss, which has already been filed by all named Defendants in this matter. The issues raised in his proposed Motion to Dismiss are not different than the issues raised by the current named Defendants. The objective of any proposed intervenor is ultimately going to be identical to the current Defendants, to defend the legality and constitutionality of Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8) and the related ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels under Nevada law. There is no need for Greer's perspective, except that of a witness to support Plaintiffs' causes of action, that the State of Nevada has created a national and international sex tourism destination in Nevada which induces, entices,

and coerces individuals like Greer to enter into interstate and foreign commerce to engage in the purchase of human beings for sex, in direct conflict with current federal laws.

Therefore, this Court should deny Greer's Motion to Intervene as untimely because: (1) Greer should have known his sexual pleasures or "rights," which do not amount to a "significantly protectable interest" would be affected on February 25, 2019, five months ago with national media coverage of this case; (2) the purpose of Greer's requested intervention is to uphold the current laws of Nevada which are adequately represented by the current named Defendants; and (3) allowing Greer to intervene in this case would prejudice the current parties allowing for other sex buyers to intervene causing extreme undue delay to this case.

## 2. Greer is Not Entitled to Intervention as of Right

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), the movant must claim "an interest relating to the property or transaction that is the subject of the action, and [that the movant] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In the Ninth Circuit, a party seeking to intervene as of right under Rule 24(a)(2) must meet four requirements: (1) the movant must timely move to intervene; (2) the movant must have a **significantly** protectable interest relating to the property or transaction that is the subject of the action; (3) the movant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), as amended (May 13, 2003). "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *U.S. v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted). Failure to satisfy any one of the requirements is fatal to the

application. *California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 792 F.2d 779, 781 (9th   20 Cir.1986).

Here, the Court should not grant Greer's request to intervene because his alleged "interests" are adequately represented by existing acting government Defendants. Further, there is no protection under the U.S. Constitution or the Nevada Constitution that grants Mr. Greer the right to sexual pleasure. The "most important factor" to determine whether a proposed intervenor is adequately represented by a present party to the action is "how the [intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citations omitted). Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Id*. (citing    5 *LULAC*, 131 F.3d at 1305). Despite Greer's outrageous contention that this case could have "direct, immediate, and harmful effects upon Greer" and that he should be granted intervention on the grounds that he will potentially be "**forced** … to decide between following absurd laws that make all sex work a crime, if the laws are struck down, or be **forced** to engage in **illegal** activity…" (**See Docket No. 45, pg. 12**). Even "interpret[ing] the requirements broadly in favor of intervention," *Donnelly*, 159 F.3d at 409 (citation omitted), it is clear that his "ultimate objective" and the "ultimate objective" of the State of Nevada, et. al., are identical, to wit, to defend the legality and constitutionality of Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the related ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels under Nevada law. Greer's interest in defending the constitutionality of Nevada's laws creating an interstate and foreign prostitution market is not "meaningfully distinct" from the State's interest in defending the constitutionality of its statutes. Because Greer's objectives are ultimately the

same as the current named Defendants, a presumption of adequacy of the State of Nevada's representation applies.

### 3. Greer is Not Entitled to Permissive Intervention and Failed to Make any Compelling Showing to the Contrary.

Federal Rule of Civil Procedure 24(b)(1)(B) states that, on timely motion, the district court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. The applicant must show: (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). Even if the applicant satisfies the threshold requirements, however, courts retain authority and discretion to deny permissive intervention. Id. In exercising its discretion to consider permissive intervention, the "court should consider whether intervention will unduly delay or prejudice the original parties, whether the applicant's interests are adequately represented by existing parties, and whether judicial economy favors intervention." *PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1214 (D. Nev.2009) (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989)).

Here, the Court should not grant Greer's request to intervene herein because his alleged interests are adequately represented by existing parties and intervention will likely cause delay and undue prejudice.

### 1. Greer's Interests are adequately represented.

Permissive intervention, like intervention of right, should be denied when the proposed intervenor's interests are adequately represented by existing parties. *PEST Committee*, 648 F. Supp. 2d at 1214; Venegas, 867 F.2d at 530 (quoting *State of Cal. v. Tahoe Regional Planning Agency*, 792 F.2d 775, 779 (9th Cir. 1986)) ("[A] court in deciding whether to permit

intervention should evaluate whether the movant's interests are adequately represented by existing parties."). As set forth in detail above, Greer has not shown that the current Defendants will not adequately represent his interests. To the contrary, because the Nevada Attorney General will be representing an existing party in defense of the constitutionality of Nevada law, it is presumed that Greer's interests in that identical objective are adequately represented. Greer has not carried his burden of overcoming this presumption. Therefore, this Court should deny Greer's request for permissive intervention.

### 2. Intervention will cause undue delay and prejudice.

Even if threshold requirements were met, courts may deny permissive intervention if there is possible prejudice to the original parties to the litigation and if judicial economy will not be served by permitting the requested intervention. See Moore's Fed. Practice, 3d Ed., Sec. 24.10(1) (2003). Because the Nevada Attorney General's office adequately represents the general interests of Greer in this action, his intervention and participation will serve no purpose other than to raise extraneous issues that will increase the workload and costs for all parties involved, potentially prejudicing Plaintiffs and delaying resolution of this litigation. Because Greer's intervention would adversely impact judicial economy and unduly delay this litigation, his request should be denied. See *PEST Comm.*, 648 F. Supp. 2d at 1214 (denying permissive intervention where adding intervenors "as parties would unnecessarily encumber the litigation").

Moreover, allowing Greer intervention will more than likely harass and potentially trigger post-traumatic stress in Plaintiffs, potential additional plaintiffs, and potential witnesses that Plaintiffs may call. Greer is a man who purchases sex acts in Nevada brothels, and in the few pages of his Motion to Intervene he has explained his twisted belief that he has a **right** to access women's bodies because of Nevada law, bodies like Plaintiffs' and those

similarly situated to Plaintiffs. To Plaintiffs, Greer represents the serial rape Plaintiffs each had to endure while being trafficked, to Plaintiffs Greer represents a sexual encounter that has caused years of post-trauma. The attitude and general beliefs of Greer, that maintain that the bodies of prostituted persons in brothels are commodities to which he has a right, to have caused immeasurable damage to each Plaintiff in this current subject matter. Therefore, Plaintiffs respectively submit that this Court should be mindful of this painful and unnecessary dynamic and deny permissive intervention.

## IV.   **CONCLUSION**

For the reasons stated above, this Court should deny Greer's Motion to Intervene.


DATED this 24th day of July, 2019.                 HUTCHISON & STEFFEN, PLLC



By: /s/ *Jason D. Guinasso*
JASON D. GUINASSO, ESQ. (SBN# 8478)
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

Gregory Louis Zunino  GZunino@ag.nv.gov, sgeyer@ag.nv.gov
Kevin C. Powers      kpowers@lcb.state.nv.us
Gus W Flangas      gwf@fdlawlv.com, cjm@fdlawlv.com, lmr@fdlawlv.com
Jessica K Peterson     jkp@fdlawlv.com, fi@fdlawlv.com

Dated: July 24, 2019.


                                        /s/ A. Otutaha
                                        Employee of Hutchison & Steffen, PLLC

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, I caused the foregoing to be served by U.S. Mail on all parties in said action by placing a true and correct copy thereof enclosed in a sealed envelope designated for outgoing mail, addressed as set forth below:

Russell Greer
6337 South Highland Dr.
#209
Holladay, UT 84121

Dated: July 24, 2019


                                        /s/ A. Otutaha
                                        Employee of Hutchison & Steffen, PLLC

**List of Exhibits**

| Description | Bates Range |
|---|---|
| Exhibit 1-Press releases, distribution list, and national media articles regarding lawsuit | PLTFS0001-PLTFS0092 |
| Exhibit 2- Ronald B. Flowers, Prostitution In The Digital Age: Selling Sex From The Suite To The Street? At Pg. 42-46 (Praeger 2011) | PLTFS0093-PLTFS0098 |

# EXHIBIT 1

Press releases, distribution list, and national
media articles regarding lawsuit
(PLTFS0001-PLTFS0092)

# EXHIBIT 1

**CONTACT INFORMATION:**
Jason D. Guinasso, Esq.
Hutchison & Steffen, PLLC
(775) 853-8746
jguinasso@hutchlegal.com



**RELEASE DATE:**
February 25, 2019

# LAWSUIT FILED TO END STATE-SANCTIONED SEX TRAFFICKING IN NEVADA

*Suit Seeks End to Nevada's History of Commercial Sexual Exploitation*
*and Commodification of Women*

**RENO, Nevada, February 25, 2019** — A complaint was filed today, February 25, 2019, in United States District Court against the State of Nevada. The lawsuit seeks an order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8), and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, licensing brothels unconstitutional, null, and void as preempted by federal law; and, a preliminary and permanent injunction be issued prohibiting the State of Nevada and all of its political subdivisions from continuing to implement, enforce, or put into force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8). Additionally, the law suit also requests an order for the State to create and fund a "Nevada Sex Trade Exit Fund" to provide mental health services, rent assistance, job training, scholarships, and funding for medical treatments for women prostituted through Nevada's legal brothels.  The complaint specifically argues, "The State's creation of an intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), are in violation of and direct conflict with U.S.C. 18 § 2422(a) (2018)."

Jason D. Guinasso, managing partner of Hutchison & Steffen's Northern Nevada office, represents the plaintiff, Rebekah Charleston, who is a victim of sex trafficking that was trafficked through Nevada's legal brothel system. While a victim of trafficking, Ms. Charleston was sent by her trafficker to "work" in the brothel. Here, she was not permitted to turn down a sex buyer, was a victim of serial rape for profit, and suffered multiple violent rapes and assaults. Any money not taken by the brothel owners was sent to her trafficker. The practice of legalized prostitution in Nevada is regressive, oppressive, and has predatory dependence on economically vulnerable persons.  This suit seeks to end the legal loopholes which provide the way for brothel owners, pimps, and traffickers to profit from the exploitation and industrialization of women's bodies.

The complaint also asserts that, under the cover of Nevada law legalizing prostitution, brothels, brothel owners and operators, and the women bought and sold in brothels for sex, actively and intentionally persuade, induce, entice, and coerce men and women to travel in interstate commerce to engage in prostitution by advertising and marketing brothels and the sale of people for sex to individuals outside the State of Nevada through hundreds of websites, social media accounts, and other mass media.  It then provides numerous specific examples in support of this assertion.  "Clearly, based on the marketing, advertising and brothel owner's own admissions, participants in Nevada's legal brothel industry are, "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] … individual[s] to travel in interstate or foreign commerce… to engage in prostitution," in violation of federal law." Guinasso argued.

If you would like more information about this topic, please call (775) 853-8746 or email jguinasso@hutchlegal.com

In addition to the irreparable harm suffered by Ms. Charleston and the countless other women just like her, the complaint alleges Nevada's legalized prostitution market has exerted substantial secondary effects on the community at-large. Numerous studies have shown prostitution and sex trafficking are inextricably linked and wherever legal prostitution exists, sex trafficking increases. As a result, Nevada's illegal sex trade is estimated to be twice as large as other states and its commercial sex market, when adjusted for population, is by far the largest of any state. The State of Nevada has not only failed to enact and uphold federal law, but also allowed Nevadans and those trafficked to Nevada to be exploited to become victims to this underregulated, exploitative industry.

In addition to the relief she is seeking in federal court, Ms. Charleston and other victims like her are hopeful that the State of Nevada will agree with the points, authorities, arguments and evidence set forth in her Complaint and take this opportunity to repeal the laws that sanction sexual exploitation. In support of victims of sex trafficking, Mr. Guinasso believes this is the right time to bring these issues to the attention of the courts and lawmakers. "We appear to have a Governor, an Attorney General, a Legislature and a Court system in Nevada that care about protecting women and ending sex trafficking and prostitution.  Perhaps they will take the initiative to strike down and change current Nevada law given the clear conflict with federal law and the harms inflicted upon countless numbers of women."

The complaint and exhibits to the complaint can be made available upon request. Please email bfrancis@hutchlegal.com, or call (775) 853-8746.

*Hutchison & Steffen is a solution-driven, client-centric law firm employing over 40 experienced attorneys and serving clients across Nevada from our offices in Las Vegas, Reno, and Lake Tahoe. For more information, please visit hutchlegal.com.*

###



# Press Release Distribution

Specially Syndicated for **Premium, Premium Pro & Premium Concierge PR Distribution**

PLTFS0004

# LAWSUIT FILED TO END STATE-SANCTIONED SEX TRAFFICKING IN NEVADA









**CROSSROADSTODAY**
VICTORIATX



**DOUBLET**
LUBBOCKTX



**EAGLE**
LUBBOCKTX



**FOX34**
LUBBOCKTX



**KAKE**
WICHITA-HUTCHINSON
PLUSKS



**KEYC**
MANKATOMN



**KFMB**
SAN DIEGOCA



**KFMBAM**
SAN DIEGOCA



**KFMBFM**
SAN DIEGOCA



**KFVE**
HONOLULUHI



**KITV**
HONOLULUCA



**KLKN**
LINCOLN & HASTINGS-
KRNNYE



**KOTV**
TULSAOK



**KQCW**
TULSAOK



**KTVN**
RENONV



**KUAM**
GUAMGU



**KWTV**
OKLAHOMA CITYOK



**KXXV**
WACO-TEMPLE-BRYANTX



**LUBBOCK CW**
LUBBOCKTX



**MAGIC**
LUBBOCKTX

PLTFS0005



**MYLUBBOCKTV**
LUBBOCKTX



**OLDIES**
LUBBOCKTX



**RFDTV**
NASHVILLENE



**ROCK**
LUBBOCKTX



**TELEMUNDOLUBBOCK**
LUBBOCKTX



**WBBH**
FT. MYERS-NAPLESFL



**WBCB**
YOUNGSTOWNOH



**WBOC**
SALISBURYMD



**WENY**
ELMIRA, NY



**WFMJ**
YOUNGSTOWNOH



**WGTA**
ATLANTAGA



**WICZ**
BINGHAMTONNY



**WLNE**
PROVIDENCE-NEW
BEDFORDRI



**WRCB**
CHATTANOOGATN



**WSIL**
PADUCAH-CAPE GIRARD-
HARSBGIL



**WVIR**
CHARLOTTESVILLEVA



**WZVN**
FT. MYERS-NAPLESFL



**YES FM**
LUBBOCKTX



**AM950**
LUBBOCKTX



**KFMBCW**
SAN DIEGOCA



**SNN TV**
LINCOLNNE



**TELEMUNDO NEW
MEXICO**
SANTA FE-
ALBUQUERQUENM



**CAROLINA REPORTERS
& NEWS**
COLUMBIASC



**WICU/WSEE**
ERIEPA

PLTFS0006

**azcentral.**

THE ARIZONA REPUBLIC
PHOENIX, AZ

**Pittsburgh Post-Gazette**

PITTSBURGH POST-GAZETTE
PITTSBURGH, PA

**NEWSOK**

NEWS OK
OKLAHOMA CITY, OK


MARKETPLACE

THE MARKETPLACE
LOS ANGELES, CA

**Daily Herald**

DAILY HERALD
ARLINGTON HEIGHTS, IL

**The Buffalo News**

THE BUFFALO NEWS
BUFFALO, NY

**MINYANVILLE**

MINYANVILLE
NEW YORK, NY


**Ask**

ASK.COM
OAKLAND, CA

**myMOTHERLODE.com**

MY MOTHER LODE
MOTHER LODE, CA

**STARKVILLE DAILY NEWS**

STARKVILLE DAILY NEWS
STARKVILLE, MS

**BIG SPRING HERALD**

BIG SPRING HERALD
BIG SPRING, TX


**THE PunxsutawneySpirit**

THE PUNXSUTAWNEY SPIRIT
PUNXSUTAWNEY, PA


WAPAKONETA DAILY NEWS

WAPAKONETA DAILY NEWS
WAPAKONETA, OH

**THE SALINE COURIER**

THE SALINE COURIER
BENTON, AR


**DAILYPRESS.COM**

SM DAILY EXPRESS
ST. MARYS, PA


**Mammoth Times**

MAMMOTH TIMES
MAMMOTH LAKES, CA

**DECATUR DAILY DEMOCRAT**

DECATUR DAILY DEMOCRAT
DECATUR, IN

**The Inyo Register**

THE INYO REGISTER
BISHOP, CA

**Evening LEADER**
theeveningleader.com

THE EVENING LEADER
ST. MARYS, OH

**The Kane Republican**

THE KANE REPUBLICAN
KANE, PA


**ONE** Observer News Enterprise

THE ONE OBSERVER NEWS
NEWTON, NC

**MALVERN DAILY RECORD**

MALVERN DAILY RECORD
MALVERN, AR


**Sweetwater Reporter**

SWEET WATER REPORTER
SWEETWATER, TX


**Statesman**

STATESMAN EXAMINER
COLVILLE, WA

PLTFS0007



**THE POST AND MAIL**
COLUMBIA CITY, IN



**TIMES RECORD**
VALLEY CITY, ND



**THE RIDGWAY RECORD**
RIDGWAY, PA



**GUYMON DAILY HERALD**
GUYMON, OK



**POTEAU DAILY NEWS**
POTEAU, OK



**ANTLERS AMERICAN**
ANTLERS, OK



**THE COMMUNITY POST**
MINSTER, OH



**RENEWABLE ENERGY WORLD**
NASHUA, NH



**WEDBUSH**
LOS ANGELES, CA



**FAT PITCH FINANCIAL**
NEW YORK, NY

**VALUE INVESTING NEWS**
NEW YORK, NY



**MY MOTHER LODE**
SONORA, CA

**THE BUFFALO NEWS**
BUFFALO, NY



**NEWS OK**
OKLAHOMA CITY, OK



**AZ CENTRAL**
PHOENIX, AZ



**DAILY HERALD**
ARLINGTON HEIGHTS, IL



**SWEET WATER REPORTER**
SWEETWATER, TX



**BIG SPRING HERALD**
BIG SPRING, TX



**THE RIDGWAY RECORD**
RIDGWAY, PA



**THE PUNXSUTAWNEY SPIRIT**
PUNXSUTAWNEY, PA

**SM DAILY EXPRESS**
ST. MARYS, PA



**THE ANTLERS AMERICAN**
ANTLERS, OK

**THE COMMUNITY POST**
MINSTER, OH

**POTEAU DAILY NEWS**
POTEAU, OK

PLTFS0008



**THE EVENING LEADER**

ST. MARYS, OH



**WAPAKONETA DAILY NEWS**

WAPAKONETA, OH



**THE ONE OBSERVER NEWS**

NEWTON, NC



**TIMES RECORD**

VALLEY CITY, ND

STARKVILLE DAILY NEWS

**STARKVILLE DAILY NEWS**

STARKVILLE, MS



**THE POST AND MAIL**

COLUMBIA CITY, IN



**DECATUR DAILY DEMOCRAT**

DECATUR, IN



**MORNING NEWS**

BLACKFOOT, ID

Mammoth Times

**MAMMOTH TIMES**

MAMMOTH LAKES, CA



**MALVERN DAILY RECORD**

MALVERN, AR



**THE INYO REGISTER**

BISHOP, CA



**THE SALINE COURIER**

BENTON, AR

Penticton Herald

**PENTICTON HERALD**

PENTICTON, BC, CANADA

The Daily Courier

**KELOWNA DAILY COURIER**

KELOWNA, BC, CANADA

Deer Park Tribune

**DEER PARK TRIBUNE**

DEER PARK, WA



**THE LETHBRIDGE HERALD**

LETHBRIDGE, AL, CANADA



**THE BORGER NEWS-HERALD**

BORGER, TX

The Chronicle Journal

**THE CHRONICLE-JOURNAL**

THUNDER BAY, ON, CANADA



**WINSLOW, EVANS & CROCKER**

BOSTON, MA

**STOCK ENEWS**

ATLANTA, GE

**STOCK FILING**

ATLANTA, GE



**AMORTIZATION NEWS**

NEW YORK, NY



**ANGEL INVESTOR NEWS**

NEW YORK, NY

AVERAGES NEWS

**AVERAGES NEWS**

NEW YORK, NY

PLTFS0009



**BEAR MARKET NEWS**
NEW YORK, NY



**BLUE CHIP STOCK NEWS**
NEW YORK, NY



**BROKERAGE FIRM NEWS**
NEW YORK, NY



**BUY BACK NEWS**
NEW YORK, NY



**CASH DIVIDEND NEWS**
NEW YORK, NY



**COLLATERAL NEWS**
NEW YORK, NY



**DIVERGENCE NEWS**
NEW YORK, NY



**DIVERSIFICATION NEWS**
NEW YORK, NY



**DIVIDEND YIELD NEWS**
NEW YORK, NY



**EUROBOND NEWS**
NEW YORK, NY



**INDICES NEWS**
NEW YORK, NY



**INVESTMENT FUND NEWS**
NEW YORK, NY



**JUNK BOND NEWS**
NEW YORK, NY



**LEVERAGE NEWS**
NEW YORK, NY



**LIABILITY NEWS**
NEW YORK, NY



**LIQUIDITY NEWS**
NEW YORK, NY



**MARGIN NEWS**
NEW YORK, NY



**MARKET CAPITALIZATION NEWS**
NEW YORK, NY



**MARKET RISK NEWS**
NEW YORK, NY



**MEGA FUND NEWS**
NEW YORK, NY



**MOVING AVERAGE NEWS**
NEW YORK, NY



**NET INCOME NEWS**
NEW YORK, NY



**PREMIUM BOND NEWS**
NEW YORK, NY



**SHORT SELLING NEWS**
NEW YORK, NY

PLTFS0010