UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| REBEKAH CHARLESTON; ANGELA DELGADO-WILLIAMS; and LEAH ALBRIGHT-BYRD,<br><br>Plaintiffs,<br>v.<br><br>STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada; and the LEGISLATURE OF THE STATE OF NEVADA,<br><br>Defendants. | Case No. 3:19-cv-00107-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

This case is brought by women who have been profoundly harmed by sexual violence as victims of sex trafficking in Nevada and other states. Sex trafficking of course is illegal, and Plaintiffs seek to halt sex trafficking by challenging Nevada's statutes allowing for certain counties to legalize prostitution. In gist, Plaintiffs' lawsuit is premised on the contention that the existence of legal prostitution in certain counties and localities in Nevada allows for sex trafficking to flourish and thus conflicts with federal laws. While the Court empathizes with Plaintiffs for their lived experiences, the Court cannot adjudicate Plaintiffs' claims because Plaintiffs fail to establish standing to confer jurisdiction upon this Court. Accordingly, the Court will grant Defendants' motions to dismiss (ECF Nos. 22, 31).

///
///
///
///
///

## II. BACKGROUND

The following facts are taken from the First Amended Complaint ("FAC"),[1] unless otherwise noted.

Plaintiffs Rebekah Charleston, Angela Delgado-Williams, and Leah Albright-Byrd are all from states other than Nevada and currently reside in Texas. Charleston alleges that she was sexually exploited mostly in Nevada's legal brothels until she was trafficked into Las Vegas's illegal sex trade. Delgado-Williams makes allegations of being forced by a pimp into illegal prostitution in Texas, later trafficked into Las Vegas where she was enticed through fraud to engage in the illegal sex trade. She was also trafficked to perform sex acts for money in other large cities such as Los Angeles, California, Chicago, Illinois and Boston, Massachusetts before being trafficked back to Las Vegas. Albright-Byrd claims that she was trafficked from Sacramento, California to Reno, Nevada and was then trafficked by pimps from Reno to Las Vegas and in various cities across Nevada, and in the "Bay Area" of California.

In the FAC, Plaintiffs plead federal constitutional claims pursuant to 42 U.S.C. § 1983 for alleged violations of their civil rights (claims one and two) and a third claim for declaratory/injunctive relief. Plaintiffs named as defendants the State of Nevada ("State"), Steve Sisolak—in his official capacity as Governor of Nevada ("Governor")—and the Legislature of the State of Nevada ("Legislature") (collectively, "Defendants"). (ECF No. 12.)

Plaintiffs rely on federal criminal statutes that generally prohibit individuals from engaging in travel or acts affecting interstate or foreign commerce and that relate to illegal prostitution or sex trafficking. These laws include the Victims of Trafficking and Violence Protection Act of 2000, codified as 22 U.S.C. §§ 7101–7114 (2018), The Mann Act, codified as 18 U.S.C. § 2422 (2018), and 18 U.S.C. § 1591 (2018), which prohibits sex

///

---

[1]Charleston was the only plaintiff bringing the original complaint. (ECF No. 1.) Plaintiffs subsequently amended the complaint to include Delgado-Williams and Albright-Byrd. (ECF No. 12.)

trafficking of children or by force, fraud, or coercion. Plaintiffs assert that, per the Supremacy Clause of Article VI of the United States Constitution, these statutes preempt Nevada statutes—NRS §§ 201.354(1) and 244.345(8)—that give less populated counties in Nevada the local option of allowing businesses to operate "a licensed house of prostitution" and similarly preempt the local ordinances that have exercised the option. In particular, Plaintiffs assert that:

> Because the brothel industry in Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to commit acts of prostitution, [Nevada's statutes and local ordinances licensing and regulating legal brothels] cannot exist simultaneously with [the federal criminal laws] and thereby [are] preempted and in violation of the Supremacy Clause of the U.S. Constitution.

(ECF No. 12 at 38–39.)

In their prayer for relief, Plaintiffs ask for declaratory judgment that Nevada's statutes and local ordinances licensing and regulating legal brothels are "unconstitutional [and] null and void as preempted by federal law," and a preliminary and permanent injunction "prohibiting the [State] and all of its political subdivisions from implementing, enforcing, or putting into force and effect" its statutes and local ordinances licensing and regulating legal brothels. (*Id.* at 39.) Plaintiffs also ask for an order requiring the State to allocate funds in an amount not less than $2,000,000 per year to the State Contingency Account for deposit to a special fund, designated as the "Nevada Sex Trade Exit Fund," to be used for specified reasons by persons who prove certain requirements. (*Id.*)

Defendants have moved to dismiss the FAC under, *inter alia*, Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs lack standing to bring this action. (ECF Nos. 22, 31).[2] Because the Court will dismiss this case for lack of standing, the Court does not address Defendants' other asserted grounds for dismissal.

///

///

---

[2] The Court has reviewed Plaintiffs' responses (ECF Nos. 38, 39) and Defendants' replies (ECF Nos. 40, 41).

3

### III. 12(B)(1) LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

Defendants bring a facial attack on the complaint—with the State and Governor focusing on the FAC, while the Legislature's arguments go to the original complaint. (*E.g.*, ECF No. 22 at 7–9; ECF No. 31 at 5–9.) "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Myer ("Safe Air")*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court assumes the factual allegations of a complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).[3]

///

---

[3]"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

**IV.     DISCUSSION**

Article III standing limits this Court's power to cases and controversies. *See* U.S. Const., Art. III, § 2. Accordingly, "[t]he party invoking federal jurisdiction, [here Plaintiffs], bears the burden of establishing [the constitutional minimum of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 61 (1992). Three elements must be met to establish standing— the plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61). These elements are an indispensable part of a plaintiff's case and therefore "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561(citations omitted). The Court finds that Plaintiffs have not sufficiently established the three elements of standing.

**A.     Injury in Fact[4]**

A plaintiff establishes an injury in fact only where she has shown that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). An injury is particularized where it "affect[s] the plaintiff in a personal and individual way." *Id.* (collecting cases). In addition to alleging a particularized injury, plaintiffs must assert injury that is "concrete." *Id.*

Generally, where a plaintiff seeks prospective relief such as a declaration and injunction, as here, concreteness is strictly construed. For example, in *Spokeo,* the Supreme Court most recently explained that "[a] concrete injury must be *de facto*; that is,

///

---

[4]"Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S. Ct. at 1547–48 (citations omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *see also Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima").

it must actually exist." *Id.* (internal quotations and citation omitted). Concreteness requires a plaintiff's injury be *real*—not abstract—but is not synonymous with "tangible." *Id.* "[I]ntangible injuries can . . . be concrete." *Id.* (citations omitted). That is, the "risk of real harm" may satisfy the concreteness requirement where a sufficient "degree of risk" is alleged. *Id.* at 1550. Similarly, in the *City of Los Angeles v. Lyons*, the Supreme Court held that a victim of a police chokehold seeking injunctive relief was unable to show sufficient likelihood of recurrence as to him to establish standing for the requested relief. 461 U.S. 95, 110–112 (1983). And, in *O'Shea v. Littleton*, the Court found no "sufficient immediacy and reality" to allegations of future injury that would result from the likelihood that plaintiffs will again be subjected to racially discriminatory enforcement and administration of justice. 414 U.S. 488, 497 (1974).

Here, Plaintiffs fail to plead any allegations—whether in the original complaint or FAC[5]—from which this Court could conclude that Plaintiffs face a sufficient articulated risk that is "real and immediate" to confer standing upon this Court. Plaintiffs claim that because of the conduct of Defendants' unspecified agents and employees they continue to suffer potential unspecified injury to their health and safety.[6] (*E.g.*, ECF No. 12 at 35.) This is entirely too abstract to establish standing. At most, Plaintiffs—who all presently reside in Texas—allege that they continue to suffer severe and dehumanizing emotional consequences from being victims of sex-trafficking (*e.g.*, *id.* at 29 (asserting Delgado-Williams' post-traumatic stress disorder)) and contend that they have "'reasonable
///

---

[5]Although the Legislature's facial attack is premised on the contention that Charleston—the only party to original complaint—lacked standing and standing is ordinarily established at the time a complaint is filed, *see Lujan*, 504 U.S. at 570 n.4, the Court concludes that the same findings are merited whether it focuses on the original complaint or the FAC. The Court therefore does not specifically address the issue of whether standing *may only be assessed based on the original complaint* despite amendment adding new parties. *Cf. Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, n.3 (Fed. Cir. 2005) ("The initial standing of the *original plaintiff* is assessed at the time of the original complaint, even if the complaint is later amended.") (emphasis added)

[6]Sex trafficking is also illegal in Nevada. *See* NRS §201.300(2)(a)(1)–(2).

expectation' . . . that they would be subjected to revictimization" (ECF No. 38 at 13). *But see Lyons*, 461 U.S. at 107 n.8 ("The emotional consequences of a prior act simply are not sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."). Plaintiffs also appear to seek to redress unspecified-*continued* harms by others "similarly situated" (*e.g.*, ECF No. 12 at 30, 34, 36). However, Plaintiffs' "past injuries do not give them standing to obtain injunctive relief to protect third parties from similar harms."[7] *Gratz v. Bollinger*, 539 U.S. 244, 284 (2003). The Court therefore finds that Plaintiffs fail to demonstrate injury in fact to establish constitutional standing in this case.

## B. Traceability

The Court additionally questions whether Plaintiffs have established causation. To survive a motion to dismiss for lack of Article III standing, "plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citing *Allen v. Wright*, 468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). "In cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit Court of Appeals] have found the causal chain too weak to support standing at the pleading stage." *Id.* (citations omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (explaining causation as "a fairly traceable connection between the plaintiff's injury and the complained-of-conduct of the defendant").

---

[7]Plaintiffs posit that the involuntary servitude nature of sex trafficking effectively prohibits victims like them from seeking legal protections and access to the courts while they are being trafficked. (ECF No. 38 at 13.) But this inherent challenge cannot be resolved by the Court when Article III limits its power to resolve only cases brought by those with standing. Plaintiffs also maintain that to the extent Defendants argue their claims are moot, a mootness exception—capable of repetition yet evading review—applies. (*Id.* at 12–13.) *But see Renne v. Geary,* 501 U.S. 312, 320 (1991) ("[T]he mootness exception for disputes capable of repetition yet evading review . . . will not revive a dispute which became moot before the action commenced.").

1 | Here, Plaintiffs argue that but for Nevada's laws permitting legal prostitution, Plaintiffs would not have been trafficked through interstate commerce into the State to engage in commercialized sex in Nevada brothels. (*E.g.*, ECF No. 38 at 13.) Plaintiffs specifically allege, among other things: (1) that third-party sex traffickers take advantage of the "misconception" that prostitution is legal in all of Nevada, (2) that the "advertising and marketing from legal brothels . . . persuade, induce and entice people to travel in from across the country and all over the world to purchase prostituted persons in Nevada," and (3) that sex buyers travel to Nevada for the sole purpose of purchasing sex. (ECF No. 12 at 7, 20, 25–27, 30–31, 33.) Ultimately, the Court is not convinced that legal prostitution in Nevada's counties which Plaintiffs challenge here is anything more than the attenuated cause of Plaintiffs' alleged injuries. This is evidenced by the fact that Plaintiffs—except Charleston—specifically assert they were sex trafficked in other states aside from Nevada (*see generally id.* at 19–34). Moreover, that Plaintiffs were unlawfully forced into prostitution and sex trafficked in Nevada and other states is not sufficiently traceable to Nevada laws permitting legal prostitution as opposed to other factors, namely the illicit behaviors of private bad actors.

The Court therefore finds that Plaintiffs' suit is barred by their additional failure to establish the requisite level of causation.

### C.  Redressability

The Court's conclusion regarding causation also leads the Court to conclude that Plaintiffs fail to show redressability. That is, the facts Plaintiffs allege do not demonstrate a likelihood that the primary relief Plaintiffs request—declaratory relief and injunction concerning legal prostitution in Nevada—will redress their alleged injuries as a result of being illegally forced into prostitution and being sex trafficked. *Steel Co.*, 523 U.S. at 103–04 (defining redressability).

In sum, the Court concludes that Plaintiffs fail to establish standing to invoke this Court's jurisdiction over this case. The Court therefore grants Defendants' motions to

///

1 dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction (ECF Nos. 22, 31).[8] The pending motions to intervene (ECF Nos. 11, 45) will be denied as moot.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' motions to dismiss (ECF No. 22, 31) are granted under Fed. R. Civ. P. 12(b)(1) because Plaintiffs fail to demonstrate that the Court has standing to exercise jurisdiction over this matter. The Court does not address any other grounds upon which Defendants sought dismissal.

It is further ordered that the pending motions to intervene (ECF Nos. 11, 45) are denied as moot.

It is further ordered that the Clerk of Court enter judgment in accordance with this order and close this case.

DATED THIS 29th day of October 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]The Court also notes that the Eleventh Amendment precludes suit against the State and Legislature absent waiver. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 668–70 (1999) (recognizing only two exceptions in which an individual may sue a state—based on congressional authorization and the state's own consent); *Romano v. Bible*, 169 F.3d 1182, 1185–86 (9th Cir. 1999) (finding state agencies immune from suit). Nevada has not waived its Eleventh Amendment immunity. *See* NRS 41.031(3); *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir. 1991). Nor has Congress abrogated such immunity for section 1983 claims. *Quern v. Jordan*, 440 U.S. 332, 345 (1979), *overruled on other grounds by Hafer v. Melo*, 502 U.S. 21, 27 (1991).

The Eleventh Amendment also bars claims for damages against a state official—like the Governor here—as such claims are essentially against the state. *Romano*, 169 F.3d at 1186.